UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUUL LABS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION,<br><br>*Defendant*. | Civil Action No. 1:22-cv-02853 |

**NOTICE OF THE ANTICIPATED BASES FOR DEFENDANT'S PROPOSED MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case concerns Plaintiff Juul Labs, Inc.'s Freedom of Information Act (FOIA) requests to the Food & Drug Administration (FDA), seeking documents related to the agency's June 2022 decision to deny Plaintiff's premarket tobacco applications (PMTAs) for certain e-cigarette products. FDA produced in full responsive documents that set forth the agency's reasons for denying Plaintiff's PMTAs—in short, due to unaddressed deficiencies regarding potential toxicological risks—but properly withheld documents containing the agency's preliminary assessment of other issues that FDA did not rely on, and expressly declined to adopt, in reaching its decision. Because those documents are predecisional and deliberative, and were not adopted, FDA will argue that they are exempt from disclosure under FOIA's Exemption 5, pursuant to the deliberative process privilege, and that FDA is entitled to summary judgment.

**BACKGROUND**

**I.     The Tobacco Control Act and FDA's Scientific Review of PMTAs**

Plaintiff's PMTAs were submitted to FDA pursuant to the requirements of the Family Smoking Prevention and Tobacco Control Act 2009 (TCA or Act), Pub. L. No. 111-31, 123. Stat. 1776 (June 22, 2009), which established a comprehensive scheme for the regulation of tobacco products. The Act requires, *inter alia*, manufacturers to obtain FDA authorization to market any "new tobacco product"—defined as a tobacco product that was not on the market as of February 15, 2007, 21 U.S.C. § 387j(a)(1)-(2). As relevant here, a manufacturer may seek such premarket authorization by submitting a PMTA demonstrating that the new product would be "appropriate for the protection of the public health," taking into account the impact on both nonusers and existing users of tobacco products. *Id.* § 387j(b)-(c).

*Discipline Review Memos.* PMTAs contain information regarding a wide range of scientific disciplines—*e.g.*, toxicology, engineering, and microbiology—and are evaluated by experts in FDA's Center for Tobacco Products (CTP or Center). Scientific review is conducted by CTP's subcomponent, the Office of Science (OS). During OS's review, FDA staff scientists in each applicable scientific discipline draft what are known as Discipline Review Memos. These memos are limited to the individual discipline reviewer's area of expertise, and evaluate the available data and information in accordance with the principles of that scientific discipline. They discuss, *inter alia*, how the available data and information inform and support the reviewer's opinion regarding the strengths and weaknesses of the PMTA with regard to the discipline in question.

*TPL Review Memos.* OS further designates an experienced staff member as the Technical Project Lead (TPL) for each application. The TPL assesses and aggregates the contents of the various Discipline Review Memos provided by the individual discipline reviewers. The TPL then makes a recommendation, set forth in a "TPL Review Memo," regarding the action the TPL believes FDA should take on the application.

*Final FDA Marketing Decisions.* Both the Director and Deputy Director of CTP and the Director of OS are authorized to issue final decisions on PMTAs, although the Center Director retains supervisory authority over OS, which regularly consults with the Office of the Center Director (OCD), particularly when a review raises novel or complex regulatory questions, as was the case with Plaintiff's PMTAs.

II. **Plaintiff's PMTAs**

Plaintiff submitted a bundle of PMTAs for numerous products in July 2020. OCD advised OS that it would review any conclusions reached by OS for this application bundle before those conclusions became a final agency decision. The OS TPL recommended that a decision denying Plaintiff's application bundle should issue based on toxicological deficiencies described in the "TPL

2

Review [Memo] (Toxicology)." OCD reviewed the TPL Review Memo (Toxicology) and concurred with its conclusions. It specifically agreed with OS that Plaintiff's application bundle should be denied on the basis of the toxicological deficiencies alone.

The TPL also prepared a second Review Memo, called "TPL Review (Additional Disciplines)," which analyzed the non-toxicology discipline reviews for Plaintiff's application bundle. But because OCD agreed that the toxicological issues were dispositive of the applications, it was not necessary for OCD to review and resolve any other aspects of the applications. Therefore, FDA did not adopt the recomendations in the TPL Review (Additional Disciplines), nor the discipline reviews discussed in that memo, and was explicit that that memo did not reflect any final agency decision.

Consistent with OCD's concurrence, on June 23, 2022, the Director of OS signed and FDA issued a Marketing Denial Order (MDO) based solely on the applications' toxicological deficiencies as outlined in the TPL Review Memo (Toxicology). Subsequently, however, FDA administratively stayed the MDO in order to conduct supervisory review of the applications. *See* Compl. ¶ 25; Ex. 1 thereto; 21 C.F.R. §§ 10.35(a), 10.75. As of the date of this filing, this further review remains ongoing.

### III.   Plaintiff's FOIA Requests

Also on June 23, 2022, Plaintiff submitted two FOIA requests to FDA. The first of these requests sought "the" TPL "and any related documents for the mid-cycle review of" Plaintiff's PMTAs. *See* Compl. Ex. 3. The second FOIA request sought "the disciplinary review documents for" Plaintiff's applications. *See* Compl. Ex. 4. FDA sent Plaintiff a partial response to its requests on July 8, 2022, and a final response on July 21, 2022. *See* Compl. ¶ 28 and Ex. 2 thereto (July 21, 2022 letter).

The responsive records for Plaintiff's FOIA Requests consist of (1) the Toxicology TPL Review Memo; (2) the Additional Disciplines TPL Review Memo; and (3) 25 underlying scientific Discipline Review Memos. FDA released in full the Toxicology TPL Review Memo that provides the basis for the Marketing Denial Order, as well as six Discipline Review Memos that were reviewed and

3

considered, or relied on, within the Toxicology TPL Review Memo—specifically, the First and Second Cycle Toxicology Reviews, the First and Second Cycle Environmental Science Reviews, and the First and Second Cycle Chemistry Reviews. The remaining 20 documents—consisting of the Additional Disciplines TPL Review Memo, and the 19 scientific Discipline Review Memos associated with that second memo—were withheld in full pursuant to FOIA Exemption 5 and the deliberative process privilege. These 20 documents, and FDA's basis for withholding them, will be the subject of FDA's motion for summary judgment.

## ARGUMENT

FDA will argue in its motion that the 20 withheld-in-full documents are properly exempt from disclosure under the deliberative process privilege incorporated in FOIA's Exemption 5. To come within the scope of the deliberative process privilege, a document must be both predecisional and deliberative. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if "it was generated before the adoption of an agency policy," and it is deliberative if "it reflects the give-and-take of the consultative process." *Id.* The withheld documents meet both of these requirements.

The documents are predecisional because they preceded FDA's decision whether to grant or deny Plaintiff's PMTAs. The Additional Disciplines TPL Review Memo and the associated scientific Discipline Review Memos were indisputably prepared as part of the agency's process of reviewing Plaintiff's application bundle and preceded any decision on it. *Id.*

The withheld documents are also deliberative because they reflect the give-and-take of the consultative process and, given OCD's exercise of supervisory authority to review any conclusions reached by OS before they became a final agency decision, consist only of recommendations. Recommendations are quintessentially deliberative. *See, e.g.*, *Worldnetdaily.com, Inc. v. DOJ*, 215 F. Supp. 3d 81, 84 (D.D.C. 2016) (finding that a memorandum to supervisors, authored by two Assistant U.S.

Attorneys recommending declination of certain potential prosecutions, was protected by the deliberative process privilege because it did "not reflect a *determination* to decline to prosecute, but a *recommendation* that the United States Attorney decline to do so, along with the evidence and analysis supporting that recommendation"). The Discipline Review Memos contain individual scientists' recommendations to the TPL concerning particular disciplines. The Additional Disciplines TPL Review Memo contains the TPL's synthesis of the applicable Discipline Review Memos and his or her recommendation whether the statutory standard for marketing authorization is met. And while the Additional Disciplines TPL reflects that the Director of OS concurred with the TPL's conclusions, it specifically explains that "OCD advised OS that OCD would review any conclusions reached by OS for this bundle before those conclusions became a final agency decision," and that "OCD has not reviewed the findings and conclusions in this TPL Review (Additional Disciplines)."

Thus, the views expressed in these documents are the recommendations of agency subordinates, and the documents are deliberative because they "reveal[] what the agency is considering" with respect to the applicable decision. *Pub. Emps. for Envtl. Responsibility v. Off. of Sci. & Tech. Policy*, 881 F. Supp. 2d 8, 17 (D.D.C. 2012); *see also, e.g.*, *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (noting that Exemption 5 covers "not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency. For example . . . [w]here . . . disclosure of even purely factual material would reveal an agency's decision-making process[,] Exemption (b)(5) applies."). Indeed, the Additional Disciplines TPL Review Memo states in the footer of every page: "Deliberative – Internal – Not reviewed by CTP/OCD"—a designation consistent with the other features of the memo and its role in the agency's review process.

Nor do the withheld documents lose their protection under the deliberative process privilege by virtue of adoption by the agency. *Cf. Coastal States Gas Corp.*, 617 F.2d at 866 ("[E]ven if the

5

document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). Here, as noted, the agency was explicit that it was *not* adopting the conclusions in the Additional Disciplines TPL Review Memo and supporting scientific Discipline Review Memos. And it did not rely on the analysis or conclusions in those documents. Rather, FDA's decision to deny Plaintiff's application bundle was based solely on the documents it has already produced in full.

Under the circumstances, release of the withheld records would cause foreseeable harm, particularly in light of the agency's ongoing supervisory review of Plaintiff's applications. *See* 5 U.S.C. § 552(a)(8)(A)(i). For example, knowing that the applicant has seen an individual reviewer's earlier analysis could discourage that reviewer or others from appropriately refining or revising that analysis based on further discussion and deliberation. It is also reasonably foreseeable that revealing the substance of staff scientist-level deliberations about non-toxicology issues would cause confusion regarding the basis of the agency's decision on Plaintiff's applications, which was the toxicology deficiencies. Disclosure of these sorts of preliminary scientific reviews might also have the effect of chilling future agency deliberations and prevent the candid exchange of ideas within the agency as scientists and others consider the merits of individual applications.

## CONCLUSION

For these reasons, the records at issue were properly withheld as deliberative under FOIA Exemption 5, as Defendants will show in their forthcoming motion for summary judgment.

Dated: January 6, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN

6

        Assistant Branch Director

        /s/ *Antonia Konkoly*
        Antonia Konkoly
        Trial Attorney
        U.S. Department of Justice
        Civil Division, Federal Programs Branch
        1100 L St. NW
        Washington, DC 20005
        (202) 514-2395 (direct)
        (202) 616-8470
        antonia.konkoly@usdoj.gov
        *Counsel for the Defendant*