**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUUL LABS, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No. 1:22-cv-02853-RDM |
| FOOD AND DRUG ADMINISTRATION, | |
| *Defendant.* | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT</u>**

### TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................1

I.      The Tobacco Control Act and FDA's Scientific Review of PMTAs ...............................1

II.     Plaintiff's PMTAs .........................................................................................................4

III.    Plaintiff's FOIA Requests ............................................................................................5

LEGAL STANDARD ........................................................................................................6

ARGUMENT .....................................................................................................................8

I.      FDA Properly Withheld Records Subject to the Deliberative Process Privilege .....................8

     A.    The Withheld Records Are Predecisional .................................................................10

     B.    The Withheld Records Are Deliberative ..................................................................11

     C.    Requiring FDA to Disclose the Withheld Records Would Frustrate the Purpose of the Deliberative Process Privilege and Cause Foreseeable Harm ...............................16

II.     FDA Processed and Released All Reasonably Segregable Information ...................................18

CONCLUSION ................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*100Reporters v. United States Dep't of State,*
  602 F. Supp. 3d 41 (D.D.C. 2022) ................................................................ 9

*Abtew v. U.S. Dep't of Homeland Sec.,*
  808 F.3d 895 (D.C. Cir. 2015) ..................................................................... 10

*Ancient Coin Collectors Guild v. U.S. Dep't of State,*
  641 F.3d 504 (D.C. Cir. 2011) ..................................................................... 14

*August v. FBI,*
  328 F.3d 697 (D.C. Cir. 2003) ....................................................................... 6

*Brayton v. Off. of the U.S. Trade Rep.,*
  641 F.3d 521 (D.C. Cir. 2011) ....................................................................... 7

*Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.,*
  697 F.3d 184 (2d Cir. 2012) ........................................................... 11, 12, 13

*Campaign Legal Center v. U.S. Dep't of Justice,*
  34 F.4th 14 (D.C. Cir. 2022) ......................................................................... 9

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,*
  600 F. Supp. 114 (D.D.C. 1984) .................................................................. 12

*Coastal States Gas Corp. v. U.S. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ........................................................... 9, 11, 16

*Dep't of Interior v. Klamath Water Users Protective Assn.,*
  532 U.S. 1 (2001) .......................................................................................... 8

*Encino Motorcars, LLC v. Navarro,*
  138 S. Ct. 1134 (2018) .................................................................................. 7

*EPA v. Mink,*
  410 U.S. 73 (1973) ........................................................................................ 8

*FBI v. Abramson,*
  456 U.S. 615 (1981) ...................................................................................... 7

*Food Mktg. Inst. v. Argus Leader Media,*
  139 S. Ct. 2356 (2019) .................................................................................. 7

*Formaldehyde Inst. v. HHS,*
  889 F.2d 1118 (D.C. Cir. 1989) ................................................................... 10

*Gilliam v. U.S. Dep't of Justice,*
  128 F. Supp. 3d 134 (D.D.C. 2015) ............................................................... 7

*Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
    762 F. Supp. 2d 123 (D.D.C. 2011) ............................................................. 10, 11

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ................................................................................... 6

*Juarez v. U.S. Dep't of Just.*,
    518 F.3d 54 (D.C. Cir. 2008) ..................................................................... 19

*Judicial Watch of Fla., Inc. v. U.S. Dept. of Justice*,
    102 F. Supp. 2d 6 (D.D.C. 2000) ............................................................... 15

*Judicial Watch v. Dep't of Treasury*,
    802 F. Supp. 2d 185 (D.D.C. 2011) ...................................................... 13, 15

*Judicial Watch v. Exp.-Imp. Bank*,
    108 F. Supp. 2d 19 (D.D.C. 2000) ............................................................. 10

*Judicial Watch v. Food & Drug Admin.*,
    449 F.3d 141 (D.C. Cir. 2006) ..................................................................... 9

*Judicial Watch v. U.S. Dep't of Def.*,
    715 F.3d 937 (D.C. Cir. 2013) (per curiam) ................................................ 8

*Judicial Watch v. U.S. Dep't of Def.*,
    847 F.3d 735 (D.C. Cir. 2017) ................................................... 8, 9, 12, 13

*Leopold v. U.S. Dep't of Just.*,
    No. CV 19-2796 (JEB), 2021 WL 3128866 (D.D.C. July 23, 2021) .............. 18

*Light v. U.S. Dep't of Justice*,
    968 F. Supp. 2d 11 (D.D.C. 2013) ............................................................... 7

*Mil. Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ..................................................................... 7

*Montrose Chem. Corp. of California v. Train*,
    491 F.2d 63 (D.C. Cir. 1974) .............................................................. 13, 14, 15

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
    402 F. Supp. 2d 211 (D.D.C. 2005) ............................................................. 18

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
    861 F.2d 1114 (9th Cir. 1988) ..................................................................... 15

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ............................................................................... *passim*

*Nova Oculus Partners, LLC v. U.S. Sec. & Exch. Comm'n*,
    486 F. Supp. 3d 280 (D.D.C. 2020) .......................................................... 7, 8

*Petrol. Info. Corp. v. U.S. Dep't of the Interior*,

976 F.2d 1429 (D.C. Cir. 1992) ............................................................................ 9

*Pfeiffer v. CIA*,
721 F. Supp. 337 (D.D.C. 1989) ........................................................................ 12

*Pub. Emps. for Envtl. Responsibility v. Off. of Sci. & Tech. Policy*,
881 F. Supp. 2d 8 (D.D.C. 2012) ....................................................................... 13

*Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*,
575 F. Supp. 3d 34 (D.D.C. 2021) ..................................................................... 18

*Quarles v. Dep't of Navy*,
893 F.2d 390 (D.C. Cir. 1990) ........................................................................... 14

*Reporters Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) ................................................................................ 7

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
421 U.S. 168 (1975) ........................................................................................... 13

*Rockwell Int'l Corp. v. U.S. Dep't of Justice*,
235 F.3d 598 (D.C. Cir. 2001) ............................................................................. 8

*Russell v. Dep't of Air Force*,
682 F.2d 1045 (D.C. Cir. 1982) ................................................................. 9, 14, 16

*Shapiro v. U.S. Dep't of Justice*,
893 F.3d 796 (D.C. Cir. 2018) ............................................................................. 8

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) ......................................................................... 18

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
141 S. Ct. 777 (2021) ............................................................................... 8, 10, 11

*Worldnetdaily.com, Inc. v. U.S. Dep't of Just.*,
215 F. Supp. 3d 81 (D.D.C. 2016) ..................................................................... 13

## United States Code

5 U.S.C. § 552 ...................................................................................... 7, 8, 9, 18
21 U.S.C. § 387a ...................................................................................................... 1
21 U.S.C. § 387j .................................................................................................. 1, 2

## Rules

Fed. R. Civ. P. 56 .................................................................................................... 7

## Regulations

21 C.F.R. §§ 10.35(a), 10.75 ..................................................................... 5, 6, 16, 17
81 Fed. Reg. 28,973 (May 10, 2016) ..................................................................... 1

**INTRODUCTION**

This case concerns Plaintiff Juul Labs, Inc.'s Freedom of Information Act (FOIA) requests to the Food & Drug Administration (FDA), seeking documents related to the agency's June 2022 decision to deny Plaintiff's premarket tobacco applications (PMTAs) for certain e-cigarette products. FDA produced in full seven responsive documents that set forth the agency's reasons for denying Plaintiff's PMTAs—in short, due to unaddressed deficiencies regarding potential toxicological risks—but properly withheld documents containing the agency's preliminary assessment of other issues that FDA did not rely on, and expressly declined to adopt, in reaching its decision. Thus, as explained in detail below, all of the withheld documents were properly withheld under the deliberative process privilege because they: (1) preceded the agency's decision on Plaintiff's PMTAs; (2) reflect the agency's deliberations on those applications; and (3) would cause foreseeable harm if released. FDA is thus entitled to summary judgment.

**BACKGROUND**

**I.      The Tobacco Control Act and FDA's Scientific Review of PMTAs**

Plaintiff's PMTAs were submitted to FDA pursuant to the requirements of the Family Smoking Prevention and Tobacco Control Act 2009 (TCA or Act), Pub. L. No. 111-31, 123. Stat. 1776 (June 22, 2009), which establishes a comprehensive scheme for the regulation of tobacco products. The Act requires, *inter alia*, manufacturers to obtain FDA authorization to market any "new tobacco product"—defined as a tobacco product that was not on the market as of February 15, 2007, 21 U.S.C. § 387j(a)(1)-(2).[1] As relevant here, a manufacturer may seek such premarket authorization by submitting a PMTA demonstrating that the new product would be "appropriate for

---

[1] As originally enacted, the TCA applied to "cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco." 21 U.S.C. § 387a(b). In 2016, the FDA exercised delegated regulatory authority to extend the TCA's provisions to a variety of additional tobacco products, including electronic nicotine delivery systems (ENDS) products (colloquially known as e-cigarettes), such as those manufactured by Plaintiff. *See* 81 Fed. Reg. 28973 (May 10, 2016).

the protection of the public health," taking into account the impact on both nonusers and existing users of tobacco products. *Id.* § 387j(b)-(c).

Section 910 of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 387j, provides the Secretary of Health and Human Services (HHS) with premarket review authority regarding tobacco products, and provides that the Secretary shall deny a PMTA unless the substantive statutory standard for approval has been met. 21 U.S.C. § 387j(c)(1)(A). The Secretary of HHS has delegated this authority to the Commissioner of Food and Drugs (Commissioner), with authority to further redelegate it. *See* FDA Staff Manual Guides (SMG) 1410.10, at 1.A.1 (delegating to the Commissioner "[f]unctions vested in the Secretary under the Federal Food, Drug, and Cosmetic Act"), *available at* https://www.fda.gov/media/81983/download; Declaration of Michele Mital (Mital Decl.) ¶ 6 & Exh. 1. The Commissioner has, in turn, redelegated to multiple officials within FDA's Center for Tobacco Products (CTP or Center) the authority "to issue orders to approve or deny applications under Section 910(c)(1)(A) of the [FDCA]," and "to deny applications and to provide information about the measures required to remove the application from deniable form under Sections 910(c)(2) and (c)(3) of the [FDCA]," including (as relevant to this case) the Center Director and Deputy Director, and the Director of the Office of Science (OS), a component office of CTP. *See* SMG 1410.1103, at 1.F and 1.G, *available at* https://www.fda.gov/media/83160/download; Mital Decl.¶ 7 & Exh. 2.

The Center Director and his/her office, the Office of the Center Director (OCD), is the head of CTP and has supervisory authority over all of the offices in CTP, including OS. *See* CTP Organization Chart, *available at* https://www.fda.gov/media/131220/download; Mital Decl. ¶ 8 & Exh. 3. Thus, within FDA, responsibility for the assessment and ultimate adjudication of PMTAs belongs to CTP and its component OS—the latter of which conducts the scientific review of PMTAs and regularly consults with supervisory personnel in OCD, particularly when a review raises

novel or complex regulatory questions, as was the case with Plaintiff's PMTAs. Mital Decl. ¶ 9; Declaration of Jennifer German (German Decl.) ¶ 17.

PMTAs contain information regarding a wide range of scientific disciplines—*e.g.*, toxicology, engineering, and microbiology. During OS's scientific review of PMTAs, FDA staff scientists in each applicable scientific discipline draft what are known as Discipline Review Memos. Mital Decl. ¶ 10. These memos are limited to the individual discipline reviewer's area of expertise, and evaluate the available data and information in accordance with the principles of the specific scientific discipline at issue. *Id.* They discuss, *inter alia*, how the available data informs and supports the reviewer's opinion regarding the strengths and weaknesses of the PMTA with regard to the discipline in question. *Id.* The OS staff-level scientists who draft the Discipline Review Memos do not have authority to make the final decision on whether to grant or deny marketing authorization. *Id.*

OS designates an experienced staff member as the Technical Project Lead (TPL) for each application. *Id.* ¶ 11. The TPL aggregates and assesses the contents of the various Discipline Review Memos provided by the individual discipline reviewers, and on the basis of this composite assessment makes a recommendation to the Director of OS regarding the action the TPL believes FDA should take on the application. *Id.* The document setting forth the TPL's aggregation and analysis of the underlying Discipline Review Memos—and containing the TPL's recommendation for the outcome of the PMTA—is called the "TPL Review Memo." *Id.*

The Director of OS considers the TPL's evaluations and recommendations and often makes the final FDA decision as to whether to grant or deny marketing authorization, with (depending on the relevant circumstances) input as requested from—or oversight invoked by—OCD. *Id.* ¶ 12. A final FDA decision to authorize a PMTA is known as a Marketing Granted Order (MGO), and a final decision to deny is known as a Marketing Denial Order (MDO). *Id.*

## II.    Plaintiff's PMTAs

Plaintiff submitted a bundle of PMTAs for numerous products in July 2020. *Id.* ¶ 13. Consistent with its supervisory role over OS, OCD advised OS that it would review any proposed conclusions reached by OS for this application bundle before any of those conclusions became a final agency decision. *Id.* ¶ 14 & Exh. 4 (June 23, 2022 OCD Memo to File (OCD Memo)).

As it neared the end of its scientific review, OS proposed to OCD that a decision denying Plaintiff's application bundle should issue based solely on identified toxicological deficiencies. *Id.* ¶ 15. Consistent with this approach, the OS TPL for Plaintiff's PMTAs prepared two separate TPL Review Memos. *Id.* The first of these memos—the "Toxicology TPL Review Memo"—focused solely on the PMTAs' toxicological deficiencies, and recommended that Plaintiff's PMTAs be denied on these deficiencies alone. *Id.* ¶ 15; OCD Memo at 1 ("The "TPL . . . advised OCD that an MDO should be issued because of toxicological deficiencies, which are described in the [Toxicology TPL Review Memo] and the relevant disciplinary reviews."). OCD reviewed the Toxicology TPL Review Memo and concurred with its conclusions—including, specifically, that Plaintiff's application bundle should be denied solely on the basis of the toxicological deficiencies. Mital Decl. ¶ 16; OCD Memo at 1 ("OCD completed review of the [Toxicology TPL Review Memo] and hereby concurs with its conclusions . . . OS and OCD agree that CTP should issue an MDO for the application bundle on the basis of the toxicological deficiencies alone").

The second of the TPL Review Memos, called the "Additional Disciplines TPL Review Memo," analyzed the remaining, non-toxicological discipline reviews for Plaintiff's application bundle. Mital Decl. ¶ 15. But because OCD agreed that the toxicological issues were dispositive of the applications, OCD specifically explained in a contemporaneous memorandum to file that "it [was] not necessary for OCD to review and resolve (and thus CTP has not resolved) any other aspects of the applications." OCD Memo at 1; *see* Mital Decl. ¶ 17. Thus, as the memorandum to file

further expressly explained, "the discipline reviews and related conclusions in the separate

[Additional Disciplines TPL Review Memo] have not been adopted by OCD and do not reflect

complete agency consideration or a final agency decision." OCD Memo at 1-2; *see* Mital Decl. ¶ 17.

The memorandum to file also explicitly contemplated the possibility that, if OCD were to assess

information in Plaintiff's PMTAs related to scientific disciplines other than toxicology, "further

deficiencies may be found." OCD Memo at 2; Mital Decl. ¶ 20. Any such potential further

deficiencies "would not," of course, "change the current conclusion" denying the applications. *Id.*

Consistent with OCD's concurrence, on June 23, 2022, the Director of OS signed and FDA

issued an MDO, which was based solely on the applications' toxicological deficiencies as outlined in

the Toxicology TPL Review Memo—and thus adopted the reasoning and factual analysis set forth

in that memo. Mital Decl. ¶ 22 & Exh. 5 (MDO). Subsequently, FDA administratively stayed the

MDO in order to conduct supervisory review of the applications. *See* Compl. ¶ 25, ECF No. 1; Ex. 1

thereto; 21 C.F.R. §§ 10.35(a), 10.75. As of the date of this filing, this further review remains

ongoing.

### III.    Plaintiff's FOIA Requests

On the same day the agency issued the MDO, Plaintiff submitted two FOIA requests to

FDA. German Decl. ¶ 9. The first of these requests sought "the" TPL "and any related documents

for the mid-cycle review of" Plaintiff's PMTAs. *Id.* ¶ 10; Compl. Ex. 3 (Dkt. No. 1 at 25-26) (first

FOIA request). The second FOIA request sought "the disciplinary review documents for" Plaintiff's

applications. German Decl. ¶ 10; Compl. Ex. 4 (Dkt. No. 1 at 27-28) (second FOIA request). FDA

sent Plaintiff a partial response to its requests on July 8, 2022, and a final response on July 21, 2022.

German Decl. ¶ 13 & Exhs. 1 & 2 thereto; *see* Compl. ¶ 28.

The responsive records for Plaintiff's FOIA requests consist of (1) the Toxicology TPL

Review Memo; (2) the Additional Disciplines TPL Review Memo; and (3) 25 underlying scientific

Discipline Review Memos. German Decl. ¶ 20. FDA released in full seven of these documents, specifically: the Toxicology TPL Review Memo, as well as six Discipline Review Memos that were reviewed and considered, or relied on, in the Toxicology TPL Review Memo—*i.e.*, the First and Second Cycle Toxicology Reviews, the First and Second Cycle Environmental Science Reviews, and the First and Second Cycle Chemistry Reviews. *Id.* ¶ 21.[2] Thus, FDA released in full the Toxicology TPL Review Memo—which provided the basis for, and was adopted by, FDA in the MDO, Mital Decl. ¶ 22—as well as every one of the six underlying Discipline Review memos that were relevant to that memo.

The remaining 20 documents, consisting of the Additional Disciplines TPL Review Memo and the 19 scientific Discipline Review Memos associated with that second memo (collectively, the "withheld Discipline Review Memos"), were withheld in full pursuant to FOIA Exemption 5 and the deliberative process privilege. German Decl. ¶ 22. Plaintiff challenges the withholding of these 20 documents, and they are therefore the subject of this motion.

## LEGAL STANDARD

Although FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part

---

[2] The First and Second Cycle Toxicology Discipline Review Memos were the primary memos considered and discussed in the Toxicology TPL Review Memo and included all of the deficiencies ultimately cited as reasons for the MDO. German Decl. ¶ 21. The First and Second Cycle Environmental Science Discipline Review Memos were also reviewed and considered, and cited in, the Toxicology TPL Review Memo. *Id.* And although the First and Second Cycle Chemistry Discipline Review Memos were not directly considered or referenced in the Toxicology TPL Review Memo, they were also released because the Toxicology Discipline Review Memos relied on them, in part. *Id.*

of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up) (quoting *FBI v. Abramson*, 456 U.S. 615, 630-31 (1981) and *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)). The agency bears the burden of justifying its withholdings of materials responsive to Plaintiff's FOIA request, and this Court reviews the agency's response to that request de novo. *See* 5 U.S.C. § 552(a)(4)(B).

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. U.S. Dep't of Justice*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The defendant in a FOIA case must show . . . that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013). "To carry its burden at summary judgment" in a case involving the deliberative process privilege, the agency must demonstrate that "the materials at issue are covered by" that privilege, and that "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)).

A court may properly award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail," that "demonstrate that the information withheld logically falls within the claimed exemption[s]," and that are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted); *see also Nova Oculus Partners, LLC v. U.S. Sec. & Exch. Comm'n*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020) ("Agency affidavits are entitled to a

presumption of good faith."). "Typically, the agency demonstrates the applicability of

a FOIA exemption by providing affidavits regarding the claimed exemptions." *Shapiro v. U.S. Dep't of*

*Justice*, 893 F.3d 796, 799 (D.C. Cir. 2018). "Ultimately, an agency's justification for invoking

a FOIA exemption is sufficient if it appears logical or plausible." *Judicial Watch v. U.S. Dep't of Def.*,

715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted).

<u>ARGUMENT</u>

**I.    FDA Properly Withheld Records Subject to the Deliberative Process Privilege**

Each of the 20 documents at issue were properly withheld, in full, on the basis of FOIA

Exemption 5—and specifically, the deliberative process privilege. Exemption 5 exempts from

disclosure "inter-agency or intra-agency memorandums or letters [which] would not be available by

law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Among the privileges protected

by Exemption 5 is the deliberative process privilege, *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235

F.3d 598, 601 (D.C. Cir. 2001), which protects from disclosure "documents reflecting advisory

opinions, recommendations and deliberations comprising part of a process by which governmental

decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)

(citation omitted).

The deliberative process privilege exists to "protect agencies from being 'forced to operate in

a fishbowl' . . . [and] is rooted in 'the obvious realization that officials will not communicate candidly

among themselves if each remark is a potential item of discovery and front page news.'" *U.S. Fish &*

*Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *EPA v. Mink*, 410 U.S. 73, 87

(1973) and *Dep't of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001)). The privilege

"reflects the commonsense notion that agencies craft better rules when their employees can spell out

in writing the pitfalls as well as strengths of policy options" and the concern that agency employees

"would be chilled from such rigorous deliberation if they feared it might become public." *Judicial*

*Watch v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017). The privilege also "protects the public from the confusion that would result from premature exposure to discussions occurring before" a final decision has been made, and ensures "the integrity of the decision-making process itself by confirming that officials should be judged by what they decided, not for matters they considered before making up their minds." *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (citation omitted); *see also, e.g., Sears*, 421 U.S. at 151 ("Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions.").

To come within the scope of the deliberative process privilege, a document must qualify as an "inter-agency or intra-agency memorandum[] or letter[]," 5 U.S.C. § 552(b)(5), and also be both predecisional and deliberative. *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "A record is predecisional if it was 'generated before the adoption of agency policy,' and 'if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made.'" *100Reporters v. United States Dep't of State*, 602 F. Supp. 3d 41, 60-61 (D.D.C. 2022) (Moss, J.) (quoting *Coastal States*, 617 F.2d at 866, and *Petrol. Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992), respectively). A document is deliberative when it is "prepared to help the agency formulate its position," *Campaign Legal Center v. U.S. Dep't of Justice*, 34 F.4th 14, 23 (D.C. Cir. 2022), and it "reflects the give-and-take of the consultative process," *Judicial Watch v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (cleaned up).

As detailed below, the records at issue satisfy all parts of this standard. All of the withheld records indisputably constitute "inter-agency or intra-agency memorandums or letters," within the meaning of 5 U.S.C. § 552(b)(5). *See* German Decl. ¶ 23 (explaining that all of these records were "drafted by CTP scientists and addressed to other CTP employees," and are thus "purely internal" to FDA). And the content, timing, and role of the withheld records within the relevant FDA decision-making process—whether to grant or deny Plaintiff's PMTAs—clearly demonstrate that

these records are both predecisional and deliberative. Finally, disclosure of the records would foreseeably harm the interests that the deliberative process privilege is designed to protect. Accordingly, the Court should uphold the propriety of FDA's determination to withhold these documents in full.

### A. The Withheld Records Are Predecisional

Fundamentally, "[a] document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates," *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (citation omitted); *see also, e.g., U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785 ("Documents are 'predecisional' if they were generated before the agency's final decision on the matter" in question). However, "[t]o establish that a document is predecisional, the agency need not point to an agency final decision" that the document in question *per se* underlies or supports, but rather "merely establish what deliberative process is involved, and the role . . . that the documents at issue played in that process." *Judicial Watch v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)). Accordingly, "even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process." *Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) (citation omitted).

The withheld records—*i.e.*, the Additional Disciplines TPL Review Memo, and the 19 corresponding withheld Discipline Review Memos—are manifestly predecisional, because they were created and finalized prior to the FDA decision that was then under consideration: whether to grant or deny Plaintiff's PMTAs.[3] While the documents were not ultimately considered or relied on in

---

[3] FDA does not contend that this decision was not final, for purposes of the deliberative process privilege, due to the subsequent staying of the decision pending a supervisory review.

making that decision, they were indisputably generated as part of the agency's decision-making process on Plaintiff's PMTAs. *See Gold Anti-Tr. Action Comm., Inc.*, 762 F. Supp. 2d at 136.

Nor do the withheld documents "communicate[] a policy on which the agency has settled," and FDA has not treated them as the agency's "final view" on the subjects they address. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786. Given OCD's exercise of supervisory authority to review any conclusions reached by OS before they became agency decisions, the withheld documents consist only of the recommendations of certain FDA staff members, not the decision of the agency. OCD confirmed that "the discipline reviews and related conclusions in the [Additional Disciplines TPL Review Memo] have not been adopted by OCD and do not reflect complete agency consideration or a final agency decision." OCD Memo at 1-2. Indeed, because OCD concurred that "the toxicological issues" summarized in the Toxicology TPL Review Memo (and associated Discipline Review Memos) were "dispositive" of Plaintiff's PMTAs, OCD found it "not necessary … to review and resolve" "any other aspects of the applications." *Id.* at 1. Thus, the agency has not made a decision on the subjects discussed in the withheld records. German Decl. ¶ 27; Mital Decl. ¶ 17. "A document is not final solely because nothing else follows it." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786. The withheld documents were clearly not final and preceded the agency decision to which they relate.

### B.   The Withheld Records Are Deliberative

The withheld documents are also deliberative, because they reflect the give-and-take of the consultative process and consist only of the recommendations of certain FDA staff members. Recommendations are quintessentially deliberative. *See Coastal States*, 617 F.2d at 866 (the privilege applies to "recommendations," "proposals," and "suggestions"); *Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.*, 697 F.3d 184, 202 (2d Cir. 2012) ("A predecisional document will qualify as deliberative provided it formed an essential link in a specified consultative process, reflects

the personal opinions of the writer rather than the policy of the agency, and if released, would inaccurately reflect or prematurely disclose the views of the agency.") (cleaned up). And because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions,'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151), courts "must give considerable deference to the agency's explanation of its decisional process" and "expertise in determining what confidentiality is needed . . . while the decisionmaking process is in progress." *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (citation omitted).

The Discipline Review Memos contain recommendations of individual FDA staff scientists—none of whom had any authority as to FDA's ultimate decision on whether to grant or deny marketing authorization—to the TPL concerning particular disciplines. *See* Mital Decl. ¶ 10. The Additional Disciplines TPL Review Memo contains the TPL's synthesis of the applicable Discipline Review Memos and the TPL's recommendation as to whether the statutory standard for marketing authorization is met. *Id.* ¶¶ 11, 15. And while the Additional Disciplines TPL Review Memo reflects that the Director of OS "concur[red] with [the] TPL['s] findings and conclusion," it specifically explains that "OCD advised OS that OCD would review any conclusions reached by OS for this bundle before those conclusions became a final agency decision," and that "OCD has not reviewed the findings and conclusions in this TPL Review (Additional Disciplines)." Mital Dec. ¶ 18. Further—and in direct contrast to the Toxicology TPL Review Memo, which provided the basis for, and was adopted by, the MDO, Mital Decl. ¶ 22— "the discipline reviews and related conclusions in the [Additional Disciplines TPL Review Memo] [were] not . . . adopted by OCD and do not reflect complete agency consideration or a final agency decision." OCD Memo at 1-2; *see* Mital Decl. ¶¶ 17-22; *cf. Jud. Watch, Inc.*, 847 F.3d at 739 (explaining that an otherwise deliberative document may lose its protection when it is adopted as the formal agency position or outcome, but *only* when the agency

has made "an '*express*[]' choice to use a deliberative document as a source of agency guidance")
(quoting *Sears*, 421 U.S. at 161); *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184
(1975) ("agree[ment]" by the agency decisionmaker "with the conclusion[s]" of agency reports is
not, alone, enough to establish "that the reasoning in the reports [was] adopted by the [agency] as *its*
reasoning").

 Thus, where OCD expressly disavowed any formal consideration—much less ratification or
adoption—of the Additional Disciplines TPL Review Memo (and its underlying Discipline Review
Memos), these documents reflect only "the personal opinions of the writer rather than the policy of
the agency." *Brennan Ctr. for Just.*, 697 F.3d at 202. The views expressed in the withheld documents
are merely *recommendations* of agency subordinates, and the documents are deliberative because
they "reveal[] [only] what the agency [wa]s considering" with respect to the applicable decision. *Pub.
Emps. for Envtl. Responsibility v. Off. of Sci. & Tech. Policy*, 881 F. Supp. 2d 8, 17 (D.D.C. 2012); *see also,
e.g.*, *Worldnetdaily.com, Inc. v. U.S. Dep't of Just.*, 215 F. Supp. 3d 81, 84 (D.D.C. 2016) (finding that a
memorandum to supervisors, authored by two Assistant U.S. Attorneys recommending declination
of certain potential prosecutions, was protected by the deliberative process privilege because it did
"not reflect a *determination* to decline to prosecute, but a *recommendation* that the United States
Attorney decline to do so, along with the evidence and analysis supporting that recommendation").

 Furthermore, in both the Additional Disciplines TPL Review Memo and the underlying
Discipline Review Memos that were aggregated and analyzed in that memo, the authors' respective
"selection[s] and presentation[s] of factual data and information to include [within the memos] is
itself deliberative, in that it outlines the staff scientists' internal thought processes in analyzing
Plaintiff's applications." German Decl. ¶ 33. "Exemption 5 was intended to protect not simply
deliberative *material*, but also the deliberative *process* of agencies." *Judicial Watch, Inc. v. Dep't of Treasury*,
802 F. Supp. 2d 185, 198 (D.D.C. 2011) (emphasis added) (*quoting Montrose Chem. Corp. of California v.

*Train*, 491 F.2d 63, 71 (D.C. Cir. 1974)). Thus, even factual material is exempt under Exemption 5 if "disclosure would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* (quoting *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)); *see also Russell*, 682 F.2d at 1048 (explaining that the deliberative process privilege covers "not only communications which are themselves deliberative in nature, but [also] all communications which, if revealed, would expose to public view the deliberative process of an agency"—and thus protects against the "disclosure of even purely factual material," where such disclosure "would reveal an agency's decision-making process"). At bottom, then, the "legitimacy of withholding does not turn on whether the material is purely factual in nature . . . , but rather on whether the selection or organization of facts is part of an agency's deliberative process" or involves an "exercise in judgment." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (citing *Montrose Chem. Corp.*, 491 F.2d at 71).

Here, and as explained in detail in the German Declaration, the factual portions of the withheld documents fall squarely within the parameters of this rule and thus qualify for the protections of the privilege. The 19 withheld Discipline Review Memos "contain summaries of studies submitted by Plaintiff and other information available to FDA." German Decl. ¶ 33. These summaries "describe, in an intertwined fashion, the design of various studies and their key features; the strengths, weaknesses, and limitations of the studies; comparisons among and across studies; study outcomes and the scientists' assessment of those outcomes, and data or information that was *not* submitted or otherwise available to the staff scientists that could have been relevant if present." *Id.* Thus, these documents "intertwine fact and opinion, simultaneously explaining and supporting the discipline reviewers' [respective] recommendations to the TPL regarding their individual scientific disciplines, to aid the TPL in making more-comprehensive recommendations to the agency

decisionmaker." *Id.* Similarly, the Additional Disciplines TPL Review Memo "does the same thing but at a higher level," *id.* ¶ 34, "proceed[ing] through multiple topics by first summarizing . . . 'Discipline key findings,' including the relevant discipline reviewers' recommendations and their underlying factual bases, and then proceeding to the TPL's own 'Synthesis,' explaining whether and why the TPL agrees with the discipline reviewers," *id.*

Thus, for all of the withheld records, disclosure of any factual portions thereof would directly reveal how the FDA staff scientists who authored them "prioritized different facts and considerations in deliberating" about the PMTAs. *Judicial Watch of Fla., Inc. v. U.S. Dept. of Justice*, 102 F. Supp. 2d 6, 14 (D.D.C. 2000). Their "[o]pinions on facts and the[] consequences of those facts" on various potential outcomes for the PMTAs was at the very heart of FDA's deliberative process respecting the adjudication of those applications. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1120 (9th Cir. 1988). But—as discussed at length above—FDA has not reached a final assessment of the way in which the subjects addressed in the Additional Disciplines TPL Review Memo and its underlying Discipline Review Memos bear on whether the marketing of Juul products would be consistent with the statutory standard. "Subjecting a[n] [agency] to public criticism on the basis of such tentative assessments"—including factual ones—"is precisely what the deliberative process privilege is intended to prevent." *Id.* Thus, even if, *arguendo*, the factual portions of the withheld records could reasonably be segregated—which they cannot be, *see infra* § II—disclosure of these portions of the documents would expose FDA's decision-making process "in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Judicial Watch, Inc.*, 802 F. Supp. 2d at 198 (citation omitted). The withheld documents accordingly qualify in their entirety for the protections of the deliberative process privilege.

**C.**     **Requiring FDA to Disclose the Withheld Records Would Frustrate the Purpose of the Deliberative Process Privilege and Cause Foreseeable Harm**

Additionally, requiring FDA to disclose the withheld records would frustrate the purpose of the deliberative process privilege and cause concrete and foreseeable harm. As explained above, the deliberative process privilege

> serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States*, 617 F.2d at 866; *see also, e.g.*, *Russell*, 682 F.2d at 1048 (the privilege protects "the integrity of the decision-making process itself by confirming that officials should be judged by what they decided, not for matters they considered before making up their minds") (citation omitted).

In direct contravention of these salutary purposes of the deliberative process privilege, the compelled disclosure of the withheld records would foreseeably engender precisely these harms, in a least two specific ways. First, the "premature" disclosure of the withheld records, *Coastal States*, 617 F.2d at 866, could foreseeably chill the FDA's actively ongoing deliberations pertaining to its further supervisory review of Plaintiff's PMTAs. *See* Compl. ¶ 25; Ex. 1 thereto; 21 C.F.R. §§ 10.35(a), 10.75. As the Mital Declaration explains, "[t]his [further supervisory] review may entail active reconsideration of th[e] very subjects" of the various withheld records, "including deliberations by the same individuals who drafted the earlier review memos, or by different individuals exercising their own independent judgment and expertise." Mital Decl. ¶ 23. "For example, knowing that the applicant has seen an individual reviewer's earlier analysis could discourage that reviewer or others from appropriately refining or revising that analysis based on further discussion and deliberation." *Id.* Thus, "[t]he release of the agency's unfinished deliberations, including the opinions of individuals

who could be involved in current or future deliberations on the exact same data and information, could adversely affect those current or future deliberations[.]" *Id.*; *see also* German Decl. ¶¶ 28-30 (similar).

In other words, and as explained at length above, *see supra* §§ I.A-B, the withheld documents do not reflect what any FDA decision-maker concluded in any ultimate analysis. Rather, the 19 withheld Discipline Review Memos reflect only what individual staff scientists (lacking any decision making-authority) preliminarily assessed with respect to the portion(s) of Plaintiff's PMTAs corresponding to various specific disciplinary areas (epidemiology, engineering, etc.). Regardless of whether the exact same staff scientists who prepared the 19 withheld Discipline Review Memos, or others with similar qualifications, participate in the ongoing supervisory review, they should be permitted to operate free of any improper pressure that could, foreseeably, be created by the premature disclosure of the preliminary analyses reflected in the withheld Discipline Review Memos. And the same goes for the TPL—again, regardless of whether that is same person as before, or someone with similar qualifications—who may be required to re-aggregate and re-assess the contents of the withheld Discipline Review Memos. *Cf. Sears*, 421 U.S. at 151 ("Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions.").

Second, even if FDA had not stayed the MDO in order to conduct further supervisory review, disclosure "of unfinished staff scientist-level deliberations would cause confusion regarding the basis of FDA's MDO." Mital Decl. ¶ 24; *see also* German Decl. ¶ 31. As the Mital Declaration explains in detail:

> [Plaintiff's] MDO was not based in any way upon the subjects discussed in the Additional Disciplines TPL Review Memo and the associated Discipline Review Memos. However, because FDA typically releases TPL Review Memos and Discipline Review Memos that *do* provide the basis for its decisions, and because the records at issue here did not serve that purpose but otherwise appear very similar to the types of records FDA typically releases in such circumstances, these records are

21

very likely to be misconstrued outside of the agency. The public, and Plaintiff, might
be led to believe that these records reflect CTP's position on topics for which it has
not yet reached a conclusion …

Mital Decl. ¶ 24.

Because disclosure of the withheld records would—not just generically, but quite

specifically—implicate precisely the concerns that undergird the deliberative process privilege,

FDA's decision to withhold them should be affirmed. *See, e.g. Pub. Emps. for Env't Resp. v. Dep't of*

*Homeland Sec.*, 575 F. Supp. 3d 34, 51 (D.D.C. 2021) (finding agency's burden to demonstrate

foreseeable harm was met by "the agency's … articulat[ion of] a specific link between the specified

harm—public confusion—and the nature of the withheld documents"); *Leopold v. U.S. Dep't of Just.*,

No. CV 19-2796 (JEB), 2021 WL 3128866, at *5 (D.D.C. July 23, 2021) (same, where the agency had

"carefully outline[d] the specific foreseeable harm[s]"—including "public confusion"—that would

be caused by release of [a] particular document").

## II.   FDA Processed and Released All Reasonably Segregable Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any

person requesting such record after deletion of the portions which are exempt under this

subsection." 5 U.S.C. § 552(b)(9). But an agency need not disclose records in which the remaining

nonexempt information is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211,

220-21 (D.D.C. 2005) (concluding that no reasonably segregable information existed, where "the

non-exempt information would produce only incomplete, fragmented, unintelligible sentences

composed of isolated, meaningless words."). "Agencies are entitled to a presumption that they

complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals*

*Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). And as with other aspects of its review under FOIA, a

court "may rely on government affidavits that show with reasonable specificity why documents

withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. U.S. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Here, FDA has specifically—and reasonably—determined that "because the withheld records contain detailed analyses of the factual data and information presented in the [PMTAs], and the factual data and information are inextricably intertwined with the analysis of the staff scientists who drafted the reviews," "it is not possible to segregate and release only factual portions of the records[.]" German Decl. ¶ 32; *see also id.* ¶ 35 (further explaining that because the withheld records "extensively intertwine the facts with their evaluations in the deliberative recommendations, and because these recommendations are a critical part of the agency's unfinished decisionmaking process regarding the scientific disciplines addressed in these records," the purely factual portions of the records" could not be segregated and released "without effectively revealing the substance of the deliberations themselves."). As there are no facts rebutting the presumption that FDA complied with its segregability obligations—and indeed, FDA does not understand Plaintiff to be disputing this issue—FDA is entitled to summary judgment on that issue as well.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion for summary judgment and enter judgment in its favor on all claims.


Dated: March 2, 2023                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        MARCIA BERMAN
                                        Assistant Branch Director


                                        */s/ Antonia Konkoly*
                                        Antonia Konkoly
                                        Trial Attorney

23

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
(202) 514-2395 (direct)
antonia.konkoly@usdoj.gov
*Counsel for the Defendant*

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
Dep't of Health and Human Services

MARK RAZA
Chief Counsel
Food and Drug Administration

WENDY S. VICENTE
Deputy Chief Counsel for Litigation
Food and Drug Administration

JULIE B. LOVAS
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration