UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUUL LABS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION,<br><br>*Defendant.* | Civil Action No. 1:22-cv-02853-RDM |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO ISSUE**

Pursuant to Local Civil Rule 7(h)(1), Defendant U.S. Food and Drug Administration (FDA) respectfully submits the following statement of material facts as to which there is no genuine dispute.

### I. FDA's Scientific Review of PMTAs

1. Section 910 of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 387j, provides the Secretary of Health and Human Services (HHS) with premarket review authority regarding tobacco products, and provides that the Secretary shall deny a premarket tobacco application (PMTA) unless the substantive statutory standard for approval has been met. 21 U.S.C. § 387j(c)(1)(A).

2. The Secretary of HHS has delegated this authority to the Commissioner of Food and Drugs (Commissioner), with authority to further redelegate it. *See* FDA Staff Manual Guides (SMG) 1410.10, at 1.A.1 (delegating to the Commissioner "[f]unctions vested in the Secretary under the Federal Food, Drug, and Cosmetic Act"), *available at* https://www.fda.gov/media/81983/download; Declaration of Michele Mital (Mital Decl.) ¶ 6 & Exh. 1.

1

3. The Commissioner has, in turn, redelegated to multiple officials within FDA's Center for Tobacco Products (CTP or Center) the authority "to issue orders to approve or deny applications under Section 910(c)(1)(A) of the [FDCA]," and "to deny applications and to provide information about the measures required to remove the application from deniable form under Sections 910(c)(2) and (c)(3) of the [FDCA]," including (as relevant to this case) the Center Director and Deputy Director, and the Director of the Office of Science (OS), a component office of CTP. *See* SMG 1410.1103, at 1.F and 1.G, *available at* https://www.fda.gov/media/83160/download; Mital Decl.¶ 7 & Exh. 2.

4. The Center Director and his/her office, the Office of the Center Director (OCD), is the head of CTP and has supervisory authority over all of the offices in CTP, including OS. *See* CTP Organization Chart, *available at* https://www.fda.gov/media/131220/download; Mital Decl. ¶ 8 & Exh. 3.

5. Thus, within FDA, responsibility for the assessment and ultimate adjudication of PMTAs belongs to CTP and its component OS—the latter of which conducts the scientific review of PMTAs and regularly consults with supervisory personnel in OCD, particularly when a review raises novel or complex regulatory questions, as was the case with Plaintiff's PMTAs. Mital Decl. ¶ 9; Declaration of Jennifer German (German Decl.) ¶ 17.

6. During OS's scientific review of PMTAs, FDA staff scientists in each applicable scientific discipline draft what are known as Discipline Review Memos. Mital Decl. ¶ 10.

7. Discipline Review Memos are limited to the individual discipline reviewer's area of expertise, and evaluate the available data and information in accordance with the principles of the specific scientific discipline at issue. *Id.* They discuss, *inter alia*, how the available data informs and supports the reviewer's opinion regarding the strengths and weaknesses of the PMTA with regard to the discipline in question. *Id.*

8. The OS staff-level scientists who draft the Discipline Review Memos do not have authority to make the final decision on whether to grant or deny marketing authorization. *Id.*

9. OS designates an experienced staff member as the Technical Project Lead (TPL) for each application. *Id.* ¶ 11.

10. The TPL aggregates and assesses the contents of the various Discipline Review Memos provided by the individual discipline reviewers, and on the basis of this composite assessment makes a recommendation to the Director of OS regarding the action the TPL believes FDA should take on the application. *Id.*

11. The document setting forth the TPL's aggregation and analysis of the underlying Discipline Review Memos—and containing the TPL's recommendation for the outcome of the PMTA—is called the "TPL Review Memo." *Id.*

12. The Director of OS considers the TPL's evaluations and recommendations and often makes the final FDA decision as to whether to grant or deny marketing authorization, with (depending on the relevant circumstances) input as requested from—or oversight invoked by—OCD. *Id.* ¶ 12.

13. A final FDA decision to authorize a PMTA is known as a Marketing Granted Order (MGO), and a final decision to deny is known as a Marketing Denial Order (MDO). *Id.*

## II. Plaintiff's PMTAs

14. Plaintiff submitted a bundle of PMTAs for numerous products in July 2020. *Id.* ¶ 13.

15. Consistent with its supervisory role over OS, OCD advised OS that it would review any proposed conclusions reached by OS for this application bundle before any of those conclusions became a final agency decision. *Id.* ¶ 14 & Exh. 4 (June 23, 2022 OCD Memo to File (OCD Memo)).

16. As it neared the end of its scientific review, OS proposed to OCD that a decision denying Plaintiff's application bundle should issue based solely on identified toxicological deficiencies. *Id.* ¶ 15.

17. Consistent with this approach, the OS TPL for Plaintiff's PMTAs prepared two separate TPL Review Memos. *Id.*

18. The first of these memos—the "Toxicology TPL Review Memo"—focused solely on the PMTAs' toxicological deficiencies, and recommended that Plaintiff's PMTAs be denied on these deficiencies alone. *Id.* ¶ 15; OCD Memo at 1 ("The "TPL . . . advised OCD that an MDO should be issued because of toxicological deficiencies, which are described in the [Toxicology TPL Review Memo] and the relevant disciplinary reviews.").

19. OCD reviewed the Toxicology TPL Review Memo and concurred with its conclusions—including, specifically, that Plaintiff's application bundle should be denied solely on the basis of the toxicological deficiencies. Mital Decl. ¶ 16; OCD Memo at 1 ("OCD completed review of the [Toxicology TPL Review Memo] and hereby concurs with its conclusions . . . OS and OCD agree that CTP should issue an MDO for the application bundle on the basis of the toxicological deficiencies alone").

20. The second of the TPL Review Memos, called the "Additional Disciplines TPL Review Memo," analyzed the remaining, non-toxicological discipline reviews for Plaintiff's application bundle. Mital Decl. ¶ 15.

21. Because OCD agreed that the toxicological issues were dispositive of the applications, OCD specifically explained in a contemporaneous memorandum to file that "it [was] not necessary for OCD to review and resolve (and thus CTP has not resolved) any other aspects of the applications." OCD Memo at 1; *see* Mital Decl. ¶ 17.

22.     The memorandum to file further expressly explained, "the discipline reviews and related conclusions in the separate [Additional Disciplines TPL Review Memo] have not been adopted by OCD and do not reflect complete agency consideration or a final agency decision." OCD Memo at 1-2; *see* Mital Decl. ¶ 17.

23.     The memorandum to file also explicitly contemplated the possibility that, if OCD were to assess information in Plaintiff's PMTAs related to scientific disciplines other than toxicology, "further deficiencies may be found." OCD Memo at 2; Mital Decl. ¶ 20. Any such potential further deficiencies "would not," of course, "change the current conclusion" denying the applications. *Id.*

24.     Consistent with OCD's concurrence, on June 23, 2022, the Director of OS signed and FDA issued an MDO, which was based solely on the applications' toxicological deficiencies as outlined in the Toxicology TPL Review Memo—and thus adopted the reasoning and factual analysis set forth in that memo. Mital Decl. ¶ 22 & Exh. 5 (MDO).

25.     Subsequently, FDA administratively stayed the MDO in order to conduct supervisory review of the applications. *See* Compl. ¶ 25, ECF No. 1; Ex. 1 thereto; 21 C.F.R. §§ 10.35(a), 10.75.

**III.    Plaintiff's FOIA Requests**

26.     On the same day the agency issued the MDO, Plaintiff submitted two FOIA requests to FDA. German Decl. ¶ 9.

27.     Plaintiff's first FOIA request sought "the" TPL "and any related documents for the mid-cycle review of" Plaintiff's PMTAs. *Id.* ¶ 10; Compl. Ex. 3 (Dkt. No. 1 at 25-26) (first FOIA request).

28. Plaintiff's second FOIA request sought "the disciplinary review documents for" Plaintiff's applications. German Decl. ¶ 10; Compl. Ex. 4 (Dkt. No. 1 at 27-28) (second FOIA request).

29. FDA sent Plaintiff a partial response to its requests on July 8, 2022, and a final response on July 21, 2022. German Decl. ¶ 13 & Exhs. 1 & 2 thereto; *see* Compl. ¶ 28.

30. The responsive records for Plaintiff's FOIA requests consist of (1) the Toxicology TPL Review Memo; (2) the Additional Disciplines TPL Review Memo; and (3) 25 underlying scientific Discipline Review Memos. German Decl. ¶ 20.

31. FDA released in full seven of these documents, specifically: the Toxicology TPL Review Memo, as well as six Discipline Review Memos that were reviewed and considered, or relied on, in the Toxicology TPL Review Memo—*i.e.*, the First and Second Cycle Toxicology Reviews, the First and Second Cycle Environmental Science Reviews, and the First and Second Cycle Chemistry Reviews. *Id.* ¶ 21.

32. The First and Second Cycle Toxicology Discipline Review Memos were the primary memos considered and discussed in the Toxicology TPL Review Memo and included all of the deficiencies ultimately cited as reasons for the MDO. German Decl. ¶ 21.

33. The First and Second Cycle Environmental Science Discipline Review Memos were also reviewed and considered, and cited in, the Toxicology TPL Review Memo. *Id.*

34. Although the First and Second Cycle Chemistry Discipline Review Memos were not directly considered or referenced in the Toxicology TPL Review Memo, they were also released because the Toxicology Discipline Review Memos relied on them, in part. *Id.*

35. Thus, FDA released in full the Toxicology TPL Review Memo—which provided the basis for, and was adopted by, FDA in the MDO, Mital Decl. ¶ 22—as well as every one of the six underlying Discipline Review memos that were relevant to that memo.

6

36.     The remaining 20 documents, consisting of the Additional Disciplines TPL Review Memo and the 19 scientific Discipline Review Memos associated with that second memo (collectively, the "withheld Discipline Review Memos"), were withheld in full pursuant to FOIA Exemption 5 and the deliberative process privilege. German Decl. ¶ 22.

Dated: March 2, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ Antonia Konkoly
Antonia Konkoly
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
(202) 514-2395 (direct)
antonia.konkoly@usdoj.gov
*Counsel for the Defendant*

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
Dep't of Health and Human Services

MARK RAZA
Chief Counsel
Food and Drug Administration

WENDY S. VICENTE
Deputy Chief Counsel for Litigation
Food and Drug Administration

JULIE B. LOVAS
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration