**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JUUL LABS, INC., | ) |
| Plaintiff, | ) ) ) ) Civil Action No. 1:22-CV-02853-RDM |
| v. | ) ) |
| FOOD & DRUG ADMINISTRATION, | ) ) |
| Defendant. | ) ) |

**PLAINTIFF JUUL LABS, INC.'S MEMORANDUM IN SUPPORT OF ITS
EMERGENCY MOTION FOR EXPEDITED BRIEFING AND *IN CAMERA* REVIEW**

# TABLE OF CONTENTS

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ............................................................................................................... 1

**BACKGROUND** ................................................................................................................. 4

    A.    FDA's Denial of JLI's Applications And Refusal To Turn Over Critical Documents. .................................................................................................. 4

    B.    The Minnesota Litigation ....................................................................... 7

**ARGUMENT** ....................................................................................................................... 8

**CONCLUSION** ................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*100Reporters LLC v. U.S. Dept. of J.*,
  248 F. Supp. 3d 115 (D.D.C. 2017) ................................................................................8

*Burka v. U.S. Dep't of Health and Human Servs.*,
  87 F.3d 508 (D.C. Cir. 1996) ..........................................................................................9

*Juul Labs, Inc. v. FDA*,
  D.C. Cir. No. 22-1123, Dkt. No. 1952074 (June 24, 2022) .....................................5, 12

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) .......................................................................................................9

*Pub. Employees for Envtl. Resp. v. Envtl. Protec. Agency*,
  288 F. Supp. 3d 15 (D.D.C. 2017) .................................................................................8

*SeeVanda Pharm., Inc., v. Food and Drug Admin.*,
  2023 WL 2645714 (D.D.C. Mar. 27, 2023) .................................................................12

*State of Minnesota v. Juul Labs, Inc.*,
  No. 27-cv-19-19888 (Hennepin County) Tr. 1680:14-16 ................................. 3, 7, 10

**Statutes**

5 U.S.C.S § 552 ....................................................................................................................8

21 U.S.C. § 387j(c)(4)-(5) ....................................................................................................9

28 U.S.C. § 1657(a) .............................................................................................................8

**Other Authorities**

21 C.F.R. § 10.75 .................................................................................................................5

## INTRODUCTION

This is an emergency request for expedited briefing on the parties' pending motions for summary judgment and an immediate *in camera* review of a potentially explosive document FDA refuses to make available despite JLI's urgent need to know its contents. The Court should order FDA to make available a single document—the "Technical Project Lead (TPL) Review of PMTAs (Additional Disciplines)," Ex. 2 at 7—for immediate in camera review.[1] After reviewing the document, the Court can decide whether to order the document immediately produced based on the summary judgment briefing the parties have already filed. Either way, the Court should order the parties to file their respective summary judgment replies on an expedited schedule given the exigent circumstances described below.

This request stems from a troubling series of agency actions. Scientists within FDA's Center for Tobacco Products ("CTP") drafted and signed two different final decision memos (known as TPL Review memos) for JLI's applications to market its electronic nicotine delivery systems ("ENDS")—"one focused only on" purported "toxicology deficiencies" and "a second discussing the same [applications] through the lenses of other scientific disciplines" in addition to toxicology. Declaration of Michele Mital ("Mital Decl.") ¶ 15, Doc. 16-2 (Mar. 2, 2023). Bureaucrats at CTP with no scientific training then told the scientists which of the two TPL Review memos to issue. The bureaucrats chose the memo that denied JLI's applications "on the basis of the toxicological deficiencies alone." Mital Decl. ¶ 16 & Ex. 4, at 1. FDA made that TPL Review memo available to JLI but refused to provide the other TPL Review memo and even excluded it

---

[1] Exhibits in this memorandum use the same numbering as those filed with JLI's Opposition to FDA's Motion For Summary Judgment and Cross Motion For Summary Judgment, filed on April 12, 2023.

from the agency's usual document repository ostensibly to "prevent […] confusion." Mital Decl. ¶ 19. The existence of a second decision was thus a secret for almost six months, and even FDA's own FOIA officers were unaware the memo existed when responding to JLI's FOIA requests.

It is difficult to imagine a more arbitrary agency proceeding or one less deserving of secrecy under the deliberative process privilege. FDA will not tell JLI whether the second TPL Review memo recommended granting or denying JLI's applications, or share any information about the second memo's contents. But the fact the agency authored not one, but two final decision memos is itself a highly unorthodox step that experienced FDA observers have never seen before. Ex. 18 at 3. The very existence of a second memo that surveys all the relevant disciplines raises its own serious questions about the accuracy of FDA's statement in the marketing denial order that the agency "cannot conduct a full evaluation of the overall risks and benefits of JLI's products" or the statutorily required balancing of those risks and benefits. Ex. 6 at 2. Those questions become fatal flaws in FDA's marketing denial order if—as JLI believes the known facts strongly suggest—the second memo performed the required balancing and recommended granting JLI's applications. An agency cannot truncate the statutorily required analysis to reach a politically desired outcome, and it should not be resisting disclosure that may conceal pretextual agency decision-making.

The Court should immediately review *in camera* the withheld TPL Review memo, so the Court can decide as expeditiously as possible whether FDA can continue to withhold that document based on the deliberative process privilege. As explained in JLI's cross-motion for summary judgment, the memo is not protected by that privilege. And the prejudice from withholding that memo—especially if it recommends granting the applications—is difficult to overstate. JLI has an administrative appeal of FDA's decision pending right now, and FDA's marketing denial order is stayed during the appeal process. The revelation that FDA scientists

internally recommended granting JLI's application would fundamentally alter the appeal and dramatically increase the chances that the outcome of an appeal is an outright grant of JLI's applications rather than simply remanding the company's applications for further scientific review. The circumstances surrounding FDA's decision suggest that is what happened here, but the Court can determine whether that is what occurred through a quick *in camera* review. Even if the withheld memo recommended denying the applications, JLI deserves the opportunity to respond to all of FDA's concerns at the same time—even if those concerns are, as FDA claims, only preliminary—and to convince the agency it can and should perform the statutorily required balancing using the full set of scientific reviews it already conducted. The company cannot remain in limbo forever.

Extraordinary events in related litigation have added to JLI's urgent need for the withheld memo. Withholding the memo exposes JLI to prejudice in other courts—where plaintiffs bringing claims against JLI have introduced the MDO into evidence. On April 3, 2023, in a trial happening right now, the State of Minnesota used the MDO to argue that "that [JUUL products] may be more harmful to our genes than combustible cigarettes," and is leveraging FDA's non-final decision to tell the court and the jury that JLI's products are unsafe and lack public-health benefits. *See State of Minnesota v. Juul Labs, Inc.*, No. 27-cv-19-19888 (Hennepin County) Tr. 1680:14-16. The resulting prejudice is extreme and ongoing. JLI must quickly gain access to the wrongly withheld materials so that it can correct this one-sided presentation and provide a complete picture of what FDA reviewers thought about its applications. The Minnesota trial, moreover, will have a second phase in to decide additional issues, where the prejudicial effect will only be further compounded. Plaintiffs in other cases are already lining up to use the marketing denial order in trials later this month and later this year.

The Court should immediately review *in camera* the withheld TPL Review memo, and after that review, either order its immediate release or expedite the remaining briefing schedule. If further briefing is necessary, JLI proposes the following deadlines for the remaining briefing:

- FDA's Response & Reply Brief:  **April 20**
- JLI's Reply:  **April 24**

JLI also requests that the Court order FDA to file any opposition to this motion for emergency relief by April 13.

## BACKGROUND

### A.  FDA's Denial of JLI's Applications And Refusal To Turn Over Critical Documents.

A full background to this case is provided in JLI's contemporaneously-filed cross-motion for summary judgment. In brief: in July 2020, JLI submitted premarket tobacco product applications ("PMTAs") seeking FDA approval to market two electronic nicotine delivery systems ("ENDS") devices, as well as four types of JUULpods (Virginia Tobacco and Menthol flavors in 5.0% and 3.0% nicotine concentrations). *See* Ex. 4 at 24. JLI supported its application with more than 75 nonclinical and 13 clinical studies to evaluate the potential health risks among users of its JUUL products. *Id.* at 25. The research showed that among adult smokers who started using JUUL products, over 50% completely switched from combustible cigarettes—a level far higher than other ENDS products. Id. at 5-6. As even FDA acknowledges, "exposure to carcinogens and other toxicants present in cigarette smoke were greatly reduced with exclusive use of the new products compared to [cigarette] smoking." Ex. 3 at 13.

On June 22, 2022, almost two years after JLI's initial submission, *The Wall Street Journal* reported that FDA was planning to deny its application and order all JUUL products off the U.S. market based on a leak from officials with knowledge of FDA's decision. Ex. 5 at 1. FDA issued

4

its formal order the next day through a letter addressed to JLI.  Ex. 6 at 1.  The letter focused on purported "toxicological" shortcomings in JLI's PMTAs and asserted that "[w]ithout sufficient evidence of a product's toxicology risks," the agency "cannot conduct a full evaluation of the overall risks and benefits of JLI's products."  Ex. 6 at 2.  After the D.C. Circuit granted an emergency administrative stay of the marketing denial order, however, FDA stayed its own decision to conduct a further internal review, known as "supervisory review."  Ex. 7 at 1; *Juul Labs, Inc. v. FDA*, D.C. Cir. No. 22-1123, Dkt. No. 1952074 (June 24, 2022); *see also* 21 C.F.R. § 10.75.  This agency-initiated supervisory review was later combined with a separate supervisory review proceeding stemming from an administrative appeal filed by JLI.  Ex. 4 at 1.  Those reviews have now been pending for over nine months.

Other developments cast a troubling shadow over the agency's process.  The Technical Project Lead authored two different TPL Review memos, Mital Decl. at 1.  The first memo, the TPL Review (Toxicology), exclusively discusses the "toxicological risks posed by" JLI's products.  Ex. 3 at 4.  FDA labeled the other memo the "TPL Review of PMTAs (Additional Disciplines)," but it covers all relevant scientific disciplines including toxicology.  Ex. 2 at 7.  The CTP Director also exercised an unusual oversight over JLI's application.  At some point in the review process, the Office of the Center Director "advised" the Office of Science that the CTP Director "would review any conclusions reached by OS for" JLI's products "before those conclusions became a final agency decision."  Mital Decl. at 1.  The Office of Science sent the CTP Director both TPL Review memos, and the Director instructed the Office of Science to issue a marketing denial order based on the TPL Review (Toxicology).  *Id.*  Despite the CTP Director dictating the outcome for JLI's applications, the marketing denial order issued under the signature of Matthew Holman, the Director of the Office of Science.  Ex. 6 at 13.

5

Dr. Holman signed the marketing denial order, the TPL Review (Toxicology) and the TPL Review (Additional Disciplines) on June 23, 2022.  *Id*.; Ex. 3 at 1; Ex. 2 at 7.  That same day, the Acting CTP Director at the time, Michele Mital, signed a memo to file documenting the Office of the Center Director's oversight and instructions.  Mital Decl. Ex. 4, at 1-2.  As part of those instructions, CTP decided that the TPL Review (Additional Disciplines) "should not be stored in [CTP's] Image database" where CTP typically stores its TPL Review memos and scientific discipline reviews.  Mital Decl. ¶ 19; German Decl. ¶ 11.

FDA took these unusual actions against a backdrop of immense political pressure.  Members of Congress through letters and at hearings pressed FDA officials to commit that JUUL products would not be authorized.  Ex. 11.  After FDA's decision, Representative Krishnamoorthi boasted about the congressional pressure placed "on the FDA to deny JUUL's PMTA applications."  Ex. 35 at 1-2.  Senator Durbin for years pushed FDA to "finally do the right thing" and take "JUUL off the market."  Ex. 13.  Commentators observed that JLI had been "singled out": there had been "so much opposition to Juul" from "legislators in state legislatures and Congress," that "FDA simply could not have authorized the sale of JUUL" without provoking a "fierce" backlash and jeopardizing its funding.  Ex. 14 at 3.  It now appears those political considerations influenced how FDA approached JLI's applications.

The same day FDA issued its marketing denial order, JLI submitted two FOIA requests seeking "technical project lead review ('TPL') and any related documents" as well as "disciplinary review documents for" JLI's PMTAs.  Ex. 15; Ex. 16.  FDA responded to JLI's requests in two letters, dated July 8, 2022 and July 21, 2022.  On July 8, FDA provided a partial response that included the "Technical Project Lead Review (Toxicology)," as well as the "First and Second Cycle Toxicology Reviews," but not documents related to topics other than toxicology.  Ex. 17 at

6

1. On July 21, FDA stated that, in addition to the toxicology documents it had provided earlier, it would also "releas[e] the First and Second Cycle Environmental Science and Chemistry Reviews" because the TPL Review (Toxicology) "considered" or "relied in part on" those reviews. Ex. 1 at 1-2. FDA refused to make available nineteen other discipline reviews discussing JLI's applications. *Id.*; Ex. 2; German Decl. ¶ 14.

### B.     The Minnesota Litigation

In addition to this case, JLI is also involved in litigation around the country related to the marketing and sale of JUUL products. JLI strongly denied the allegations against it, and evidence produced in those cases shows that JLI intended its products to be appropriately marketed to existing adult smokers. Regardless, since the MDO was issued, plaintiffs in some cases have sought to introduce it as evidence, contending that FDA's stayed, non-final, and under-review decision is evidence that JUUL products are toxic or lack public-health benefits.

No court had yet admitted the MDO into evidence against JLI, however, until recently—when a Minnesota state court admitted the marketing denial order into evidence in the middle of a jury trial over JLI's objections. *See State of Minnesota v. Juul Labs, Inc.*, No. 27-cv-19-19888 (4th Dist.). JLI had, as in other cases, filed a motion *in limine* seeking to exclude the MDO as reflecting conclusions that were still under review (and subject change) and extremely prejudicial. The court initially reserved judgment on this issue, and the jury trial began on March 27, 2023. Ex. 36 at 12. But despite JLI's continuing objections that FDA had itself "determined that there were scientific issues unique to Juul's application [that] warrant additional review," and that FDA could still "ultimately determine[] that the MDO was wrong," *See* Ex. 37 at 1395:13–1397:3, the court on April 3, 2023 admitted the marketing order, *see* Ex. 38 at 1677:4-16.

Minnesota immediately began leveraging the marketing denial order in front of the jury. Its experts told the jury, among other things, that the marketing denial order is "consistent with my

7

opinion of worry that [JUUL] was a harmful product," and that JUUL products "may be relatively more genotoxic than the combustible cigarette byproduct." *Id.* at 1678:6–9, 1680:4–7. JLI expects that Minnesota will continue to leverage the marketing denial order in prejudicial ways for the remainder of the Minnesota trial. The first phase of the Minnesota trial will conclude on April 17, 2023. But the Minnesota court is planning on holding a further "Phase II" of trial to discuss equitable public nuisance claims and remedies, with that phase likely to begin later this year. Ex. 39 at 122:7-21. JLI expects Minnesota to take the position that the marketing denial order remains relevant to the Phase II issues.

## ARGUMENT

The recent extraordinary revelations about how FDA handled JLI's applications underscores the need for an expedited decision, *in camera* review, and ultimately transparency. *See* 28 U.S.C. § 1657(a); *see also 100Reporters LLC v. U.S. Dept. of J.*, 248 F. Supp. 3d 115, 166–67 (D.D.C. 2017) (courts have "broad discretion" to order *in camera* review); *Pub. Employees for Envtl. Resp. v. Envtl. Protec. Agency*, 288 F. Supp. 3d 15, 25 (D.D.C. 2017) (similar). The agency authored not one, but two TPL Review memos, *see* Mital Decl.—an unusual step even experienced FDA observers have never seen before, ("[W]e have never seen FDA bifurcate and compartmentalize TPLs."). FDA then successfully concealed the existence of one of those memos for months, still will not make that memo available to JLI, and is apparently attempting to pass off a political decision ultimately made by non-scientists as a decision by CTP's Office of Science under the signature of its chief scientist. *See* Mital Decl. Ex. 4, at 1-2. "The basic purpose of Freedom of Information Act 5 U.S.C.S § 552, is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). That public accountability is urgently needed here.

8

FDA's wrongful withholding of responsive materials is causing JLI ongoing and extreme prejudice. FOIA requires that agencies follow a "strong presumption in favor of disclosure," *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996), and yet here, FDA has refused to provide critically important documents to JLI. The more fulsome analysis in the withheld TPL Review memo calls into question the accuracy of FDA's statement in the marketing denial order that the agency "cannot conduct a full evaluation of the overall risks and benefits of a new tobacco product" or the statutorily required balancing of those risks and benefits. Ex. 6 at 2. And the more fulsome discussion in the memo proves FDA's statement last June that it "did not assess whether there might be additional deficiencies relating to initiation, switching, and cessation" is at best misleading. The agency's scientists did assess those issues. FDA simply decided not to share what the scientists concluded. The withheld TPL Review may even recommend granting JLI's applications after performing the statutorily required balancing, *see* 21 U.S.C. § 387j(c)(4)-(5). This is not a far-fetched assumption, as the CTP Director has on at least one other occasion overruled FDA's scientists and instructed them to deny an application they originally recommended granting. *See* Ex. 24; Ex. 25. The circumstances here certainly suggest the withheld TPL Review memo here is another recommendation to grant marketing authorization by FDA's scientists that non-scientists within CTP overruled. *See* Mital Decl. ¶¶ 13-18 & Ex. 4 at 1-2. But JLI cannot know for sure until it sees the withheld TPL Review memo, and the Court will not know until it reviews that memo *in camera*.

The prejudice from FDA not immediately turning over the memo is undeniable. FDA's refusal to turn over the withheld documents undermines JLI's ongoing efforts to overturn FDA's denial decision in the supervisory review process. A revelation that FDA scientists internally recommended granting JLI's application would fundamentally alter the supervisory review

9

proceeding and dramatically increase the chances that the outcome of that review is an outright grant of JLI's applications rather than simply remanding the company's applications for further scientific review. Even if the withheld memo recommended denying the applications, JLI deserves the opportunity to respond to all of FDA's concerns at the same time—even if those concerns are, as FDA claims, only preliminary—and to convince the agency it can grant JLI's application *right now* without any further scientific review. The supervisory review process has already dragged on for nine months. The company should not face multiple rounds of supervisory review, where FDA serially unveils new deficiencies one-at-a-time.

If that were not bad enough, JLI urgently needs the withheld documents to mitigate ongoing prejudice in the Minnesota litigation. The State of Minnesota has already used the MDO to argue that "that [JUUL products] may be more harmful to our genes than combustible cigarettes," and is leveraging FDA's non-final decision to tell the court and the jury that JLI's products are unsafe and lack public-health benefits. *See* Ex. 38, *State of Minnesota v. Juul Labs, Inc.*, No. 27-cv-19-19888 (Hennepin County) Tr. 1680:13-16. JLI must quickly gain access to the wrongly withheld materials so that it can correct this one-sided presentation and provide a complete picture of what FDA reviewers thought about its applications. The phase I jury trial in that case ends next Monday, April 17. Even if too late to present to a jury, the withheld materials will play a pivotal role in the upcoming Phase II of the Minnesota proceedings. The State will no doubt seek to leverage the marketing denial order to support its nuisance and statutory-penalty arguments in that phase as well.

In contrast, *in camera* review and an expedited decision will not unduly prejudice FDA. The agency has already developed the record in support of its assertion of the deliberative process privilege by filing its own motion for summary judgment, two declarations in support of that

motion, and 7 exhibits. The Court thus has the information it needs to act quickly without prejudicing the agency. And having already developed its record, FDA should not need more than a week to file its reply. Thus, JLI proposes the following deadlines for the remaining briefing:

- FDA's Response & Reply Brief:   **April 20**
- JLI's Reply:   **April 24**

These deadlines ensure that this matter can be speedily resolved with minimum ongoing harm to JLI, and without requiring extraordinary efforts by FDA.

Finally, it is in the public interest to make the second TPL Review memo and the other withheld documents publicly available as expeditiously as possible. None of the withheld documents are protected by the deliberative process privilege for the reasons discussed in JLI's cross-motion for summary judgment. The withheld TPL Review memo is a document approved and signed by Dr. Holman under his delegated authority from the Secretary of Health and Human Services, just like the marketing denial order and the other TPL Review memo FDA concedes are final agency decisions. Officials with final decision-making authority do not sign predecisional drafts, and no memo from the CTP Director can strip away the finality of a signature by an agency official exercising authority delegated by the Secretary. The scientific discipline reviews, in turn, are not deliberative policymaking documents, but are instead scientific documents rife with facts that the deliberative process privilege does not protect.

Even if the privilege applied, disclosing the withheld materials will not harm the agency's deliberative process—a separate and independent reason why FDA cannot withhold those documents. In fact, the recent decision in *Vanda Pharmaceuticals, Inc. v. FDA* rejected remarkably similar deliberative process arguments and ordered FDA to produce its clinical and statistical reviews for a supplemental new drug application that the agency did not approve. *See* *Vanda Pharm., Inc., v. Food and Drug Admin.*, 2023 WL 2645714, *1 (D.D.C. Mar. 27, 2023).

11

Advancing the same arguments it presses here, FDA asserted turning over those reviews would "chill agency discourse" and "caus[e] consumer confusion." *Id.* at *3. Judge Cooper was "not convinced" because "FDA currently discloses clinical and scientific reviews to the public in a variety of circumstances" and its concerns about confusion were simply "conjecture." *Id.* at *3-4.

The same is true here. Turning over the second TPL Review memo will not chill agency discourse. Dr. Holman signed that memo exercising his delegated authority and he was prepared to make it public. As for the withheld scientific discipline reviews, FDA routinely makes all reviews available when it grants marketing authorization, and even when it denies authorization, FDA makes available the reviews the agency "considered," "reviewed," or "relied in part on" in reaching its decision. Ex. 1 at 2. If FDA had based its decision on the second TPL Review memo, that would have included all nineteen discipline reviews the agency refuses to produce. Ex. 2 at 7. In these circumstances, disclosure will not chill agency deliberations. Scientific reviewers should reasonably expect that their reviews will become public after FDA issues its decision and the scientific reviews here were remarkably close to becoming public last June; those reviews would have become public if the CTP Director had directed that the marketing denial order invoke the withheld TPL Review memo—a memo that was fully drafted and finalized—rather than the less comprehensive TPL Review memo that actually issued.

JLI could not reasonably have sought expedited review sooner. In its recently filed summary judgment motion, FDA for the first time revealed the CTP Director's extraordinary oversight over JLI's application and that she told the Office of Science what the grounds for its decision should be. Mital Decl. at ¶ 16-18 & Ex. 4. The Minnesota court did not decide the marketing denial order is admissible evidence until just last week. Ex. 36 at 12. After that unexpected development, on April 6, JLI asked FDA to voluntarily turn over the withheld

12

materials to mitigate the prejudice from admitting that document. FDA informed JLI it would not make available the withheld materials on April 11, and on April 12, asked JLI to include the following statement:

> In the FDA's view, Plaintiff has not identified a basis to expedite the schedule that was entered following the pre-motion conference on January 19. Plaintiff is welcome to file its reply sooner than June 8, but the FDA believes that the deadline for its response/reply brief should continue to be May 11. If the Court disagrees, however, the FDA would ask in the alternative that its brief be due on April 28, as its lead counsel, who is responsible for drafting the brief, is on pre-scheduled leave until April 17. The FDA also reserves the right to respond to Plaintiff's motion, including its request for in camera review, through a separate filing.

JLI filed this motion the same day.

## CONCLUSION

For the foregoing reasons, the Court should grant JLI's emergency motion for *in camera review* and expedited briefing.

Dated: April 12, 2023                                         Respectfully submitted,

By:  */s/ Jason M. Wilcox*
Peter A. Farrell (DC Bar No. 53608)
Jason M. Wilcox (DC Bar No. 1011415)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
(202) 389-5000

Steven J. Lindsay (DC Bar No. 1708507)
KIRKLAND & ELLIS LLP
300 N LaSalle
Chicago, IL 60654
(312) 862-2000

*Attorneys for Plaintiff Juul Labs, Inc.*