# Exhibit 37

STATE OF MINNESOTA DISTRICT COURT
COUNTY OF HENNEPIN FOURTH JUDICIAL DISTRICT
CASE TYPE: OTHER CIVIL

---

STATE OF MINNESOTA, by its Attorney General, Keith Ellison,

Plaintiff,

vs.

JUUL LABS, INC., a Delaware corporation, f/k/a PAX LABS, INC., f/k/a PLOOM PRODUCTS, INC.; ALTRIA GROUP, INC. f/k/a PHILIP MORRIS USA, INC.; PHILIP MORRIS USA INC. f/k/a PHILIP MORRIS INC.; ALTRIA CLIENT SERVICES LLC; ALTRIA GROUP DISTRIBUTION COMPANY; ALTRIA ENTERPRISES, LLC,

Defendants.

Case No. 27-CV-19-19888

---

The above-entitled matter came duly on for court trial before the Honorable Laurie J. Miller, one of the judges in the above-named court.

APRIL 3, 2023

VOLUME 10

Reported By: Christine K. Herman, RPR, CRR

happened.

THE COURT: All right. Who's going to respond for Juul? Good morning, Mr. Bernick.

MR. BERNICK: Good morning. Could I bring this up to the Court here?

THE COURT: You can. Have you shared it with Plaintiffs' counsel?

MR. BERNICK: Yes. They have it.

THE COURT: Thank you.

MR. BERNICK: A number of moving parts here, but I'll try to do my best to sort it out.

First, with respect to -- if you take a look down the page, the paragraph that begins with "you have heard statements," is our proposal for a simple statement to tell the jury what the current status is. It's entirely consistent with Your Honor's suggestion to the parties for trying to reach a stipulation, which is to have just a very simple statement that captures the state at play. And I think, if we went back to the transcript -- although I know Your Honor will recall, all we're saying is the application is still pending and FDA's review is ongoing, all which is entirely accurate.

Taking up, then, what they say below, which is what they want to have the jury told, the

specific reference to the MDO. It is just -- it's a mess. They really completely misapprehended the facts on the ground.

As soon as the FDA entered the MDO, the company appealed to the D.C. Circuit and asked to stay the -- asked to stay the MDO, citing abuse of discretion. The company was contacted by the FDA, and the FDA said that they wanted to stay the appeal. And so what they said that they would do -- and this is exactly in their words -- in the course of reviewing the briefing materials in JUUL, et cetera, et cetera. The D.C. court -- the FDA determined that there were scientific issues unique to Juul's application and warrant additional review.

So at that point, by virtue of that statement alone, the MDO became non-final and potentially moot. For purposes of this trial, it is moot, because the MDO has been agreed to be stayed. The FDA has an ongoing review, really pursuant to the matters that were before the Court. The MDO is a very technical document, which I'm going to get to in a minute. But what the MDO essentially said is that the company had not -- had not provided the data the company had provided indicating that there was an unresolved issue, with cytotoxicity and any

of the other matters that were required to issue a marketing approval, and because of that, the PMTA had to be denied. So it was a very, very technical issue.

The FDA took that position. And after receiving our submission -- which was a significant submission, including the data that the FDA had overlooked -- they decided that there was enough merit in what we had raised to say, we need to look more at this data. And so the idea that this is part of the 1075 review is not true. The 1075 review was an additional review that we asked for and the FDA agreed was appropriate.

So now you have two FDA agreements. One is to further look into the basis for the MDO data there, and the second is the 1075 review, which actually is a very broad review of what the FDA has done. And the two are ongoing.

So it is the MDO today that is effectively moot for purposes of the trial, because the FDA agreed to review the additional data that it hadn't focused on before. You then get into a position where, what if the FDA ultimately decides that they're going to approve the PMTA? At that point, Your Honor will have instructed the jury on the

basis of a stayed and underreviewed process, where the process ultimately determines that the MDO was wrong.

It's kind of like what happened in the plywood case many, many years ago, where the jury was told about a determination that had been made. I think it was by the -- by the FTC, but I'm not sure, and later was reversed on appeal. And the jury had been instructed with respect to initial determination, and as a result the case -- the verdict was reversed. And that was 30 years ago.

So that is the current status.

Moreover, if the MDO comes in, the only thing that the jury will be getting from it, that it can't get from the underlying material -- Dr. Griffiths has full access -- the only thing that will be coming in is incremental to what her testimony would otherwise be. It is a fact of a regulatory process. That regulatory process then becomes an issue. It is hugely complex.

I wanted to bring today all of the materials that have been submitted to the FDA since that time in connection with the 1075 review, as well as the proceedings that the -- the materials that were supplied to the D.C. Circuit, because all

of it bears upon what happened. And the jury's going to figure all that out? They don't need that. They have the underlying data, cytotoxicity data. They can use that cytotoxicity data. Nothing stops them from offering the same opinions with respect to the underlying data, saying there's a cytotoxicity problem. Nothing stops them from doing that. This witness will essentially go through cytotoxicity. They will hear that.

What she can't do is to talk about the regulatory overlay, which is entirely collateral. It is a regulatory determination that doesn't change the science. And it's hugely prejudicial. So we just, frankly, think that, were the Court to allow this to occur, it would taint the entire trial and would open the door to a huge controversy, and be clearly reversible error, given the actual status of the facts on the ground which counsel has misstated.

I want to come back to the first point, which is they now want an instruction to the jury about the fact that, well, all the stuff that you've heard is about the balancing under the tobacco control contact, what's all really an issue of law, and the Court will determine the issue of law. Well, and I want to talk about Altria's statement