# Exhibit 38

Page 1606

```
 1  STATE OF MINNESOTA                      DISTRICT COURT
 2  COUNTY OF HENNEPIN          FOURTH JUDICIAL DISTRICT
 3                              CASE TYPE:  OTHER CIVIL
    _____
 4
    STATE OF MINNESOTA, by its
 5  Attorney General Keith Ellison,
 6              Plaintiff,
 7  vs.                                COURT FILE NO.
                                       27-CV-19-19888
 8  JUUL LABS, INC., a Delaware
    corporation f/k/a PAX LABS,
 9  INC. f/k/a PLOOM PRODUCTS,
    INC.; ALTRIA GROUP, INC. f/k/a
10  PHILIP MORRIS COMPANIES, INC.;
    PHILIP MORRIS USA INC. f/k/a
11  PHILIP MORRIS INC.; ALTRIA
    CLIENT SERVICES LLC; ALTRIA
12  GROUP DISTRIBUTION COMPANY;
    ALTRIA ENTERPRISES LLC,
13
                Defendants.
14
    _____
15
16
17          The above-entitled matter came duly on for
18  remote court trial before the Honorable Laurie J. Miller,
19  one of the judges of the above-named court.
20                       4/4/23
21              VOL. 13 - P.M. SESSION
22              (Pages 1606 - 1775)
23
24
25  REPORTED BY: Dawn Workman Bounds, CSR
```

1  to the FDA for approval to market their products.
2      Q.   So after you completed your expert report, the
3  FDA issued some findings on the application.  Are you
4  aware of that?
5      A.   Yes.
6      Q.   Let me have you look in your book at
7  Plaintiff's Exhibit 1417.
8      A.   Yes.
9      Q.   What is this document?
10     A.   This is a letter from the FDA to Juul Labs,
11 Incorporated that denies marketing.  It's a marketing
12 denial order.
13          MS. SMITH:  Your Honor, we renew our
14 objection to this document.  We respect that Your Honor
15 has overruled that objection and request if Your Honor
16 could please give an instruction.
17          MS. GATES CALDERON:  Your Honor, the
18 Altria defendants object to this document as well as
19 Dr. Griffiths's testimony on it on relevance grounds, 403
20 grounds.  This document is hearsay and Dr. Griffiths is
21 not qualified under 702 to discuss this document.
22          THE COURT:  All right.  And this is
23 something that we've previously discussed, and I respect
24 the defendant is making the record of their objections.
25 The Court has determined that this document can come into

1  evidence, but the Court is going to read you an
2  instruction to set a little context for you as to the
3  regulatory process with the FDA.
4              Members of the jury, you have heard
5  statements during this trial about JUUL's premarket
6  tobacco product application, or PMTA, that JUUL filed
7  with the FDA in 2020.  On June 23, 2022, the FDA issued
8  an order denying JUUL's request for a PMTA called a
9  marketing denial order.  Several events unfolded
10 immediately thereafter, including a jointly requested
11 stay order from a federal court of appeals.  The FDA stay
12 of its order so that it could review scientific issues
13 relating to the JUUL PMTA and a further review requested
14 by JUUL and accepted by the FDA.  These FDA reviews are
15 ongoing today.  JUUL remains on the market and you will
16 hear evidence on these matters.
17             And that concludes the Court's interim
18 instruction.  We can get back to the examination.  Next
19 question, Mr. Meghjee.
20             MR. MEGHJEE:  I formally move for its
21 introduction.
22             (Exhibit No. 1417 offered.)
23             THE COURT:  Yes, and I have overruled the
24 objection, so Exhibit 1417 will be received into
25 evidence.

Page 1678

1           (Exhibit No. 1417 received.)

2  BY MR. MEGHJEE:

3       Q.   All right.  Dr. Griffiths, did you review this

4  after your report?

5       A.   Yes, I did.

6       Q.   And how did it -- how did it -- what did you

7  find in relationship to your opinions?

8       A.   I found that it confirmed and was consistent

9  with my opinion of worry that it was a harmful product.

10      Q.   Well, let me just take you straight to page 9

11 of this document and heading number 3 regarding the

12 genotoxic potential of the products.

13           Do you see that?

14      A.   Yes, I do.

15      Q.   So remind the jury again what is meant by

16 genotoxic.

17      A.   Genotoxic means toxicity or damage to the genes

18 in our cells.

19      Q.   So what is your understanding, based on

20 reviewing this, what the FDA was referring to here?

21           MS. GATES CALDERON:  Your Honor, I object

22 again.  Dr. Griffiths is not qualified to opine on the

23 meaning of a regulatory document other than 702.

24           MS. SMITH:  Join in the objection.

25           THE COURT:  Can you rephrase your

1       THE COURT:  Objection is overruled.  The
2  witness can answer.  And Altria joins in the objection?
3       MS. GATES CALDERON:  We do, Your Honor.
4       THE COURT:  Objection is duly noted.  You
5  can answer.
6       THE WITNESS:  Thank you, Your Honor.
7    A.  These results indicate that menthol 5 percent,
8  Virginia tobacco 3 percent, Virginia tobacco 5 percent,
9  and JUUL devices 878 and 879 may be relatively more
10 genotoxic than the combustible cigarette comparison
11 product.
12 BY MR. MEGHJEE:
13   Q.  So how did this impact your opinion?
14   A.  The FDA findings demonstrate their concern that
15 this may be more harmful to our genes than combustible
16 cigarettes.
17   Q.  So as part of your review, did you look at the
18 underlying data that JUUL had submitted?
19   A.  No, I did not.
20   Q.  Why not?
21   A.  Because I rely on the findings of the FDA.  I
22 don't review the data of applications for medications as
23 they go through approval process and the FDA.
24   Q.  What is your understanding, if you have one, of
25 where things now stand with the PMTA?