IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUUL LABS, INC., </br></br>　　　　　Plaintiff, </br></br>v. </br></br>FOOD & DRUG ADMINISTRATION, </br></br>　　　　　Defendant. | Civil Action No. 1:22-CV-2853 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACT**

Pursuant to Local Civil Rule 7(h)(1), Plaintiff Juul Labs, Inc. respectfully submits the following response to Defendant Food and Drug Administration's statement of undisputed material fact.

**I. FDA's Scientific Review of PMTAs**

1.　Section 910 of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 387j, provides the Secretary of Health and Human Services (HHS) with premarket review authority regarding tobacco products, and provides that the Secretary shall deny a premarket tobacco application (PMTA) unless the substantive statutory standard for approval has been met. 21 U.S.C. § 387j(c)(1)(A).

　　Plaintiff's Response: Admitted.

2.　The Secretary of HHS has delegated this authority to the Commissioner of Food and Drugs (Commissioner), with authority to further redelegate it. *See* FDA Staff Manual Guides (SMG) 1410.10, at 1.A.1 (delegating to the Commissioner "[f]unctions vested in the Secretary under the Federal Food, Drug, and Cosmetic Act"), *available at*

https://www.fda.gov/media/81983/download; Declaration of Michele Mital (Mital Decl.) ¶ 6 & Exh. 1.

Plaintiff's Response: Admitted.

3. The Commissioner has, in turn, redelegated to multiple officials within FDA's Center for Tobacco Products (CTP or Center) the authority "to issue orders to approve or deny applications under Section 910(c)(1)(A) of the [FDCA]," and "to deny applications and to provide information about the measures required to remove the application from deniable form under Sections 910(c)(2) and (c)(3) of the [FDCA]," including (as relevant to this case) the Center Director and Deputy Director, and the Director of the Office of Science (OS), a component office of CTP. *See* SMG 1410.1103, at 1.F and 1.G, *available at* https://www.fda.gov/media/83160/download; Mital Decl. ¶ 7 & Exh. 2.

Plaintiff's Response: Admitted.

4. The Center Director and his/her office, the Office of the Center Director (OCD), is the head of CTP and has supervisory authority over all of the offices in CTP, including OS. *See* CTP Organization Chart, *available at* https://www.fda.gov/media/131220/download; Mital Decl. ¶ 8 & Exh. 3.

Plaintiff's Response: Denied to the extent that FDA implies that OCD's alleged "supervisory authority" means that a TPL Review Memo by another officer within CTP with delegated authority to make that decision, including the Director of the Office of Science, is not also a decision of CTP or that the Director of the Office of Science needs approval from OCD to exercise the authority delegated by the Commissioner. *See* SMG 1410.1103, at 1.F, 1.G (showing the FDA Commissioner delegated authority to the Director of the Office of Science to approve or deny marketing authorization without mentioning any OCD veto power).

5. Thus, within FDA, responsibility for the assessment and ultimate adjudication of PMTAs belongs to CTP and its component OS—the latter of which conducts the scientific review of PMTAs and regularly consults with supervisory personnel in OCD, particularly when a review raises novel or complex regulatory questions, as was the case with Plaintiff's PMTAs. Mital Decl. ¶ 9; Declaration of Jennifer German (German Decl.) ¶ 17.

Plaintiff's Response: Denied to the extent that JLI cannot know how "regularly" officials in OS consult with OCD personnel, nor what FDA considers "novel or complex regulatory questions," or why FDA believes such questions were implicated by JLI's PMTAs. Further discovery would be required to assess the accuracy of those statements. *See* Fed. R. Civ. P. 56(d). Moreover, the Director of the Office of Science does not need approval from "supervisory personnel in OCD" to exercise the authority delegated by the Commissioner to the Director of the Office of Science. *See* SMG 1410.1103, at 1.F, 1.G.

6. During OS's scientific review of PMTAs, FDA staff scientists in each applicable scientific discipline draft what are known as Discipline Review Memos. Mital Decl. ¶ 10.

Plaintiff's Response: Admitted.

7. Discipline Review Memos are limited to the individual discipline reviewer's area of expertise, and evaluate the available data and information in accordance with the principles of the specific scientific discipline at issue. *Id.* They discuss, *inter alia*, how the available data informs and supports the reviewer's opinion regarding the strengths and weaknesses of the PMTA with regard to the discipline in question. *Id.*

Plaintiff's Response: Admitted this is how the discipline review process is supposed to work, except that the Discipline Review Memos are supposed to reflect the reviewer's scientific

judgment, not opinions. JLI cannot admit or deny whether this is how the reviews of JLI's applications were conducted without discovery from FDA. *See* Fed. R. Civ. P. 56(d).

8. The OS staff-level scientists who draft the Discipline Review Memos do not have authority to make the final decision on whether to grant or deny marketing authorization. *Id.*

Plaintiff's Response: Denied. There is no evidence all Discipline Review Memos are drafted by FDA scientists who do not have authority to make the final decision on whether to grant or deny authorization. *See* Ex. 2 (*Vaughn* Index) at 1-7; SMG 1410.1103, at 1.F, 1.G; Fed. R. Civ. P. 56(d).

9. OS designates an experienced staff member as the Technical Project Lead (TPL) for each application. *Id.* ¶ 11.

Plaintiff's Response: Admitted.

10. The TPL aggregates and assesses the contents of the various Discipline Review Memos provided by the individual discipline reviewers, and on the basis of this composite assessment makes a recommendation to the Director of OS regarding the action the TPL believes FDA should take on the application. *Id.*

Plaintiff's Response: Admitted.

11. The document setting forth the TPL's aggregation and analysis of the underlying Discipline Review Memos—and containing the TPL's recommendation for the outcome of the PMTA—is called the "TPL Review Memo." *Id.*

Plaintiff's Response: Admitted.

12. The Director of OS considers the TPL's evaluations and recommendations and often makes the final FDA decision as to whether to grant or deny marketing authorization, with

(depending on the relevant circumstances) input as requested from—or oversight invoked by—OCD. *Id.* ¶ 12.

Plaintiff's Response: Admitted that OS often makes the final FDA decision on whether to grant or deny marketing authorization and that nothing prevents OS from requesting input from OCD. Denied to the extent that FDA here suggests that OCD could "invoke" "oversight" sufficient to render a TPL Review Memo signed by the Director of the Office of Science a non-final decision. *See* SMG 1410.1103, at 1.F and 1.G; Ex. 2 (*Vaughn* Index) at 7.

13. A final FDA decision to authorize a PMTA is known as a Marketing Granted Order (MGO), and a final decision to deny is known as a Marketing Denial Order (MDO). *Id.*

Plaintiff's Response: Admitted.

**II. Plaintiff's PMTAs**

14. Plaintiff submitted a bundle of PMTAs for numerous products in July 2020. *Id.* ¶ 13.

Plaintiff's Response: Admitted.

15. Consistent with its supervisory role over OS, OCD advised OS that it would review any proposed conclusions reached by OS for this application bundle before any of those conclusions became a final agency decision. *Id.* ¶ 14 & Exh. 4 (June 23, 2022 OCD Memo to File (OCD Memo)).

Plaintiff's Response: Denied to the extent that JLI cannot know when OCD became involved in JLI's PMTAs; the only documentary evidence of OCD's involvement is dated June 23, 2023, *see* Mital Decl. ¶14 & Ex. 4—the day FDA's MDO issued, *see* Mital Decl. ¶22; Ex. 6 (MDO). Further discovery would be required to assess the accuracy of those statements. *See* Fed. R. Civ. P. 56(d).

16. As it neared the end of its scientific review, OS proposed to OCD that a decision denying Plaintiff's application bundle should issue based solely on identified toxicological deficiencies. *Id.* ¶ 15.

Plaintiff's Response: Denied to the extent that JLI has no way of knowing OS's true recommendations in this case, especially given that OS produced two TPL Review Memos signed by Director Holman, *see* Mital Decl. ¶¶ 15, 17-18, one of which was subsequently stored apart from FDA's ordinary database, *see* Mital Decl. ¶ 19; German Decl. ¶ 15, and as officials at FDA were subject to unusual outside political pressure, *see* Ex. 11. Further discovery would be required to assess the accuracy of those statements. *See* Fed. R. Civ. P. 56(d).

17. Consistent with this approach, the OS TPL for Plaintiff's PMTAs prepared two separate TPL Review Memos. *Id.*

Plaintiff's Response: Admitted that the OS TPL for JLI's PMTAs prepared two separate TPL Review Memos. Denied that OS prepared the two TPL Review memos "consistent" with the approach described in paragraph 16. FDA is withholding the documents JLI would need to admit or deny that claim; if OS truly recommended denying the PMTAs on the basis of toxicological deficiencies alone, then it is unclear why OS would have created two TPL Review Memos rather than one (FDA's assertion that two TPLs are "consistent" with that recommendation is puzzling). Further discovery would be required to assess the accuracy of those statements. *See* Fed. R. Civ. P. 56(d).

18. The first of these memos—the "Toxicology TPL Review Memo"—focused solely on the PMTAs' toxicological deficiencies, and recommended that Plaintiff's PMTAs be denied on these deficiencies alone. *Id.* ¶ 15; OCD Memo at 1 ("The "TPL . . . advised OCD that an MDO

6

should be issued because of toxicological deficiencies, which are described in the [Toxicology TPL Review Memo] and the relevant disciplinary reviews.").

Plaintiff's Response: Admitted except to the extent that Defendant implies JLI's PMTAs were actually deficient.

20. OCD reviewed the Toxicology TPL Review Memo and concurred with its conclusions—including, specifically, that Plaintiff's application bundle should be denied solely on the basis of the toxicological deficiencies. Mital Decl. ¶ 16; OCD Memo at 1 ("OCD completed review of the [Toxicology TPL Review Memo] and hereby concurs with its conclusions . . . OS and OCD agree that CTP should issue an MDO for the application bundle on the basis of the toxicological deficiencies alone").

Plaintiff's Response: Admitted that OCD's memo includes the statement identified above. Denied that OCD concluded "that Plaintiff's application bundle should be denied solely on the basis of the toxicological deficiencies." The fact that FDA created multiple TPL Review Memos signed by officials with decision-making authority and was subject to unusual external political pressure makes it unclear whether toxicological reasons were actually the only basis for FDA's decision. Ex. 2 (*Vaughn* Index) 7; Ex. 24; Ex. 25; Mital Decl. ¶ 18. Further discovery would be required to assess the accuracy of these statements. *See* Fed. R. Civ. P. 56(d).

20. The second of the TPL Review Memos, called the "Additional Disciplines TPL Review Memo," analyzed the remaining, non-toxicological discipline reviews for Plaintiff's application bundle. Mital Decl. ¶ 15.

Plaintiff's Response: Denied. This statement of fact contradicts FDA's *Vaughn* index, which states that the second TPL Review Memo included a table listing the "Disciplines reviewed" including not only the nineteenth discipline reviews at issue here, but also "the first and second

7

cycle discipline reviews for Chemistry, Toxicology, and Environmental Science." Ex. 2 (*Vaughn* index) at 7.  Moreover, JLI cannot admit or deny anything about the content of a document FDA will not make available.  *See* Fed. R. Civ. P. 56(d).

21.   Because OCD agreed that the toxicological issues were dispositive of the applications, OCD specifically explained in a contemporaneous memorandum to file that "it [was] not necessary for OCD to review and resolve (and thus CTP has not resolved) any other aspects of the applications." OCD Memo at 1; *see* Mital Decl. ¶ 17.

Plaintiff's Response: Admitted that the OCD memorandum contains the statement above. Denied that it was not necessary to consider other aspects of the applications.  The Tobacco Control Act requires a holistic analysis of all aspects of a party's PMTA, so FDA could not have validly reached a decision only by considering the toxicological aspects of the party's application.  *See* 21 U.S.C. §§ 387j(c)(4)-(5).  In addition, further discovery would be required to assess the accuracy of these statements.  *See* Fed. R. Civ. P. 56(d).

22.   The memorandum to file further expressly explained, "the discipline reviews and related conclusions in the separate [Additional Disciplines TPL Review Memo] have not been adopted by OCD and do not reflect complete agency consideration or a final agency decision." OCD Memo at 1-2; *see* Mital Decl. ¶ 17.

Plaintiff's Response: Admitted that the OCD Memo contained this language.  Further discovery would be required to assess the accuracy of those statements.  *See* Fed. R. Civ. P. 56(d). Denied that the discipline reviews and related conclusions in the separate Additional Disciplines TPL Review Memo did not reflect a final agency decision.

23.   The memorandum to file also explicitly contemplated the possibility that, if OCD were to assess information in Plaintiff's PMTAs related to scientific disciplines other than

toxicology, "further deficiencies may be found." OCD Memo at 2; Mital Decl. ¶ 20. Any such potential further deficiencies "would not," of course, "change the current conclusion" denying the applications. *Id*.

Plaintiff's Response: Admitted that the OCD memo contained this language. Further discovery would be required to assess the accuracy of those statements. *See* Fed. R. Civ. P. 56(d). Denied that considering the other disciplines would not have changed FDA's decision to deny JLI's PMTAs. The Tobacco Control Act requires that FDA's review of PMTAs be holistic, making it impossible for the agency to lawfully assert that its conclusions based on only one discipline could not be changed by the recommendations of reviewers of other disciplines. *See* 21 U.S.C. §§ 387j(c)(4)-(5).

24. Consistent with OCD's concurrence, on June 23, 2022, the Director of OS signed and FDA issued an MDO, which was based solely on the applications' toxicological deficiencies as outlined in the Toxicology TPL Review Memo—and thus adopted the reasoning and factual analysis set forth in that memo. Mital Decl. ¶ 22 & Exh. 5 (MDO).

Plaintiff's Response: Admitted that the Director of OS signed and FDA issued an MDO, which was based solely on the applications' purported toxicological deficiencies. Denied to the extent that Defendant means to imply that "OCD's concurrence" was in any way necessary for FDA to issue an MDO that already contained OS Director Holman's signature. Further discovery would be required to assess whether "the Director of OS" took any actions "[c]onsistent with OCD's concurrence." *See* Fed. R. Civ. P. 56(d).

25. Subsequently, FDA administratively stayed the MDO in order to conduct supervisory review of the applications. *See* Compl. ¶ 25, ECF No. 1; Ex. 1 thereto; 21 C.F.R. §§ 10.35(a), 10.75.

9

Plaintiff's Response: Admitted.

### III. Plaintiff's FOIA Requests

26. On the same day the agency issued the MDO, Plaintiff submitted two FOIA requests to FDA. German Decl. ¶ 9.

Plaintiff's Response: Admitted.

27. Plaintiff's first FOIA request sought "the" TPL "and any related documents for the mid-cycle review of" Plaintiff's PMTAs. *Id*. ¶ 10; Compl. Ex. 3 (Dkt. No. 1 at 25-26) (first FOIA request).

Plaintiff's Response: Admitted. At the time JLI served its FOIA request, JLI did not know FDA took the unusual step of finalizing and signing two different TPL Review memos. Mital Decl. ¶¶ 15, 18; Ex. 2 (*Vaughn* Index) at 7; Ex. 18 (Blog Post).

28. Plaintiff's second FOIA request sought "the disciplinary review documents for" Plaintiff's applications. German Decl. ¶ 10; Compl. Ex. 4 (Dkt. No. 1 at 27-28) (second FOIA request).

Plaintiff's Response: Admitted.

29. FDA sent Plaintiff a partial response to its requests on July 8, 2022, and a final response on July 21, 2022. German Decl. ¶ 13 & Exhs. 1 & 2 thereto; *see* Compl. ¶ 28.

Plaintiff's Response: Admitted.

30. The responsive records for Plaintiff's FOIA requests consist of (1) the Toxicology TPL Review Memo; (2) the Additional Disciplines TPL Review Memo; and (3) 25 underlying scientific Discipline Review Memos. German Decl. ¶ 20.

Plaintiff's Response: Admitted that these records are responsive. Denied to the extent that JLI does not know whether any additional records might also be responsive to its FOIA requests.

10

Further discovery would be required to assess the accuracy of that statement. *See* Fed. R. Civ. P. 56(d).

31. FDA released in full seven of these documents, specifically: the Toxicology TPL Review Memo, as well as six Discipline Review Memos that were reviewed and considered, or relied on, in the Toxicology TPL Review Memo—*i.e.*, the First and Second Cycle Toxicology Reviews, the First and Second Cycle Environmental Science Reviews, and the First and Second Cycle Chemistry Reviews. *Id.* ¶ 21.

   Plaintiff's Response: Admitted.

32. The First and Second Cycle Toxicology Discipline Review Memos were the primary memos considered and discussed in the Toxicology TPL Review Memo and included all of the deficiencies ultimately cited as reasons for the MDO. German Decl. ¶ 21.

   Plaintiff's Response: Admitted except to the extent that Defendant implies JLI's PMTAs were actually deficient.

33. The First and Second Cycle Environmental Science Discipline Review Memos were also reviewed and considered, and cited in, the Toxicology TPL Review Memo. *Id.*

   Plaintiff's Response:  Admitted.

34. Although the First and Second Cycle Chemistry Discipline Review Memos were not directly considered or referenced in the Toxicology TPL Review Memo, they were also released because the Toxicology Discipline Review Memos relied on them, in part. *Id.*

   Plaintiff's Response: Admitted that the First and Second Cycle Chemistry Discipline Review Memos were released. Further discovery would be required to assess whether those memos were "considered" when drafting the Toxicology TPL Review Memo. *See* Fed. R. Civ. P. 56(d).

35. Thus, FDA released in full the Toxicology TPL Review Memo—which provided the basis for, and was adopted by, FDA in the MDO, Mital Decl. ¶ 22—as well as every one of the six underlying Discipline Review memos that were relevant to that memo.

Plaintiff's Response: Admitted that FDA adopted the Toxicology TPL Review Memo as the stated basis for its decision in the MDO, and that FDA released these documents in full. Denied to the extent that this paragraph suggests other considerations or disciplines were not also relevant to the agency's final decision. Further discovery would be required to assess the accuracy of that statement. *See* Fed. R. Civ. P. 56(d).

36. The remaining 20 documents, consisting of the Additional Disciplines TPL Review Memo and the 19 scientific Discipline Review Memos associated with that second memo (collectively, the "withheld Discipline Review Memos"), were withheld in full pursuant to FOIA Exemption 5 and the deliberative process privilege. German Decl. ¶ 22.

Plaintiff's Response: Admitted that FDA withheld these documents. Denied to the extent that FDA implies these documents are covered by Exemption 5 and the deliberative process privilege.

Dated:  April 12, 2023                                    Respectfully submitted,

                                                          */s/ Jason M. Wilcox*
                                                          Peter A. Farrell (DC Bar No. 53608)
                                                          Jason M. Wilcox (DC Bar No. 1011415)
                                                          KIRKLAND & ELLIS LLP
                                                          1301 Pennsylvania Ave, NW
                                                          Washington, D.C. 20004
                                                          (202) 389-5000

                                                          Steven J. Lindsay (DC Bar No. 1708507)
                                                          KIRKLAND & ELLIS LLP
                                                          300 N LaSalle
                                                          Chicago, IL 60654
                                                          (312) 862-2000

                                                          *Attorneys for Plaintiff Juul Labs, Inc.*