**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JUUL LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOOD & DRUG ADMINISTRATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:22-CV-02853-RDM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF JUUL LABS, INC.'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR EXPEDITED BRIEFING AND *IN CAMERA* REVIEW**

**REPLY**

The recent settlement in Minnesota does not eliminate the need for immediate *in camera* review of the second TPL review memo, a potentially crucial document the FDA has withheld inappropriately from Juul Labs, Inc ("JLI") and the public for no good reason. Just as in the Minnesota proceeding, the plaintiff in a pending bellwether trial against Altria, a former minority investor in JLI, is already urging a federal court in California to allow them to use the MDO—divorced from the context of the withheld TPL Review memo—in a trial scheduled to start later this week. *See In re Juul Labs, Inc. Marketing, Sales Practices, and Products Liability Litig.*, Case No. 3:19-md-2913 (N.D. Cal.), Dkt. Nos. 3803 at 1-2, 3901 at 3. That will not be the last trial or arbitration in which plaintiffs try to present a one-sided story based on the marketing denial order without a complete picture of what FDA reviewers concluded about JLI's applications.

If that were not bad enough, FDA's refusal to turn over this TPL Review memo undermines JLI's ongoing efforts to address FDA's marketing denial decision in the ongoing supervisory review process. Making available the second TPL Review memo that canvasses the scientific evidence across all the relevant scientific disciplines would significantly streamline the supervisory review process and any subsequent appellate review, regardless of whether it recommends granting or denying JLI's applications. It makes no difference that the "ongoing supervisory review process does not involve imminent deadlines for Plaintiff or FDA." FDA Br. 5. The fact that the process is ongoing and JLI's applications remain in limbo while FDA withholds undisclosed analysis that could again sway the outcome is prejudicial in itself and limits JLI's ability to expedite those proceedings. Until the supervisory review concludes, JLI faces ongoing uncertainty that harms its business.

The prejudice is even worse if the second TPL Review memo recommends granting JLI's applications. FDA does not dispute that making available a recommendation from its own

scientists to grant JLI's application would fundamentally alter the supervisory review process or that it would likely force the agency to quickly rescind its current, truncated decision based solely on an incomplete analysis of JLI's toxicological data. The circumstances surrounding FDA's troubling administrative process suggest that is what happened here, but the Court can determine that is what in fact occurred through a quick *in camera* review.

FDA's suggestion that JLI "has known about the two TPL memos since" December and before JLI "agree[d] to the existing briefing schedule" misses the point. FDA Br. 4. The existence of a second, secret TPL Review memo is concerning by itself, but revelations in FDA's recent summary judgment motion and the use by third parties of FDA's incomplete analysis made JLI's need for that memo more urgent. In declarations accompanying that motion, FDA for the first time revealed the CTP's Director's extraordinary oversight over JLI's applications, that she told the Office of Science what the grounds for its decision should be, and that FDA officials decided that the second memo "should not be stored in [CTP's] Image database" where CTP typically stores its TPL Review memos and scientific discipline reviews. Mital Decl. ¶¶ 14-19 & Ex. 4; German Decl. ¶ 11. Those same declarations are also the first time FDA confirmed Dr. Holman signed the second TPL Review memo and that his signature reflected his "concur[rence] with [the] TPL['s] findings and conclusion." Mital Decl. ¶ 18. Before learning those new facts, JLI knew there were two memos but not the surrounding context that strongly suggests the second memo recommends granting JLI's applications.

JLI's request is ultimately narrow and will not impose any burden on FDA. JLI simply asks the Court to review a single document *in camera*. After reviewing the document, the Court can decide whether to order it immediately produced, whether to expedite the briefing schedule, or whether JLI is wrong about the document's contents and there is no need for an expedited

2

decision.  That review would not affect FDA's legitimate interests in any way but could address the significant harm JLI faces and serve the broader public interest in transparent agency decisionmaking.

    The Court should accordingly grant JLI's emergency motion.

Dated:  April 18, 2023

Respectfully submitted,

By:  */s/ Jason M. Wilcox*
Peter A. Farrell (DC Bar No. 53608)
Jason M. Wilcox (DC Bar No. 1011415)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
(202) 389-5000

Steven J. Lindsay (DC Bar No. 1708507)
KIRKLAND & ELLIS LLP
300 N LaSalle
Chicago, IL 60654
(312) 862-2000

Donald B. Verrilli, Jr. (DC Bar No. 420434)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001
(213) 683-9507

*Attorneys for Plaintiff Juul Labs, Inc.*