**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUUL LABS, INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:22-cv-02853-RDM |
| FOOD AND DRUG ADMINISTRATION, | |
| *Defendant*. | |

**<u>DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT</u>**

**TABLES OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.     The Withheld Records Are Properly Subject to the Deliberative Process Privilege ...................2

     A.     The Withheld Records Are Predecisional ....................................................2

     B.     The Withheld Records Are Deliberative .......................................................5

     C.     Disclosure of the Withheld Records Would Cause Foreseeable Harm .........................7

         1.     Public Disclosure of the Withheld Records Would Engender Public Confusion ...........7

         2.     Public Disclosure of the Withheld Records Would Chill Ongoing Agency Deliberations ...........8

II.     FDA Processed and Released All Reasonably Segregable Information .....................................11

III.     The Court Has Already Denied Plaintiff's Request for *In Camera* Review, and Should Also Deny Plaintiff's Request for Discovery ...............................13

CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. U.S. Dep't of Def.,*
   Def., 628 F.3d 612 (D.C. Cir. 2011) ...............................................................................15

*Associated Press v. U.S. Dep't of Justice,*
   549 F.3d 62 (2d Cir. 2008) ...........................................................................................15

*Baker & Hostetler LLP v. Dep't of Commerce,*
   473 F.3d 312 (D.C. Cir. 2006) .....................................................................................13

*Bartko v. U.S. Dep't of Justice,*
   167 F. Supp. 3d 55 (D.D.C. 2016) ...............................................................................13

*Coastal States Gas Corp. v. Dep't of Energy,*
   617 F.2d 854 (D.C. Cir. 1980) ...................................................................................3, 8

*Convertino v. U.S. Dep't of Justice,*
   684 F.3d 93 (D.C. Cir. 2012) .......................................................................................14

*Ctr. for Biological Diversity v. EPA,*
   279 F. Supp. 3d 121 (D.D.C. 2017) ...............................................................................6

*Ctr. for Biological Diversity v. EPA,*
   369 F. Supp. 3d 1 (D.D.C. 2019) ...............................................................................6, 7

*Elec. Frontier Found. v. U.S. Dep't of Just.,*
   739 F. 3d 1, 10 (D.C. Cir. 2014) ....................................................................................3

*Freedom Watch v. Bureau of Land Mgmt.,*
   220 F. Supp. 3d 65 (D.D.C. 2016) ...............................................................................13

*Freedom Watch, Inc. v. U.S. Dep't of State,*
   179 F. Supp. 3d 121 (D.D.C. 2016) .............................................................................13

*Freeman v. Fed. Bureau of Investigation,*
   No. CV 18-2769 (RBW), 2022 WL 4365734 (D.D.C. Sept. 21, 2022) .......................12

*Frontier Found. v. U.S. Dep't of Just.,*
   739 F. 3d 1 (D.C. Cir. 2014) ..........................................................................................3

*Gellman v. Dep't of Homeland Sec.,*
   525 F. Supp. 3d 1 (D.D.C. 2021) ...............................................................................3, 5

*Ground Saucer Watch, Inc. v. CIA,*
   692 F.2d 770 (D.C. Cir. 1981) .....................................................................................13

ii

*In re Clinton,*
   973 F.3d 106 (D.C. Cir. 2020) ..................................................................................................13

*Info. Ctr. v. Dep't of Justice,*
   584 F. Supp. 2d 65 (D.D.C. 2008) ...........................................................................................3, 5

*Loving, v. Dep't of Defense,*
   550 F.3d 32 (D.C. Cir. 2008) ..................................................................................................12

*Nat. Res. Def. Council, Inc.v. Doremus,*
   No. 20-CV-1150, 2021 WL 2322349 (D.D.C. June 7, 2021) ........................................... 6, 10

*Nat'l Sec. Archive v. CIA,*
   752 F.3d 460 (D.C. Cir. 2014) ...................................................................................................6

*Ocasio v. Dep't of Justice,*
   67 F. Supp. 3d 438 (D.D.C. 2014) ...........................................................................................13

*Parker v. Hoglander,*
   No. CV 15-926 (JDB), 2016 WL 3527014 (D.D.C. June 23, 2016) .........................................14

*Petroleum Info. Corp. v. U.S. Dep't of Interior,*
   976 F.2d 1429 (D.C. Cir. 1992) ................................................................................................6

*Protect Democracy Project, Inc. v. U.S. Dep't of Just.,*
   No. CV 20-172 (RC), 2021 WL 1167094 (D.D.C. Mar. 26, 2021) .......................................3, 4

*Soto v. U.S. Dep't of State,*
   118 F. Supp. 3d 355 (D.D.C. 2015) .........................................................................................12

*Thomas v. Dep't of Health & Human Servs.,*
   587 F. Supp. 2d 114 (D.D.C. 2008) .........................................................................................13

*Vanda Pharms., Inc. v. FDA,*
   No. 22-CV-938 (CRC), 2023 WL 2645714 (D.D.C. Mar. 27, 2023) ......................................10

*Webster v. U.S. Dep't of Just.,*
   No. CV 02-603 (RC), 2020 WL 1536303 (D.D.C. Mar. 31, 2020) ........................................12

## Statutes

5 U.S.C. § 552(b) ............................................................................................................................11

## Rules

Fed. R. Civ. P. 56(d) .......................................................................................................................13

**INTRODUCTION**

Plaintiff offers little response to FDA's showing that the records withheld in this case are predecisional and deliberative, focusing primarily instead on arguments about foreseeable harm. Indeed, it is clear that the records at issue—the Additional Disciplines TPL Review Memo and 19 corresponding Discipline Review Memos—preceded the decision whether to grant or deny Plaintiff's premarket tobacco applications (PMTAs). Plaintiff's effort to deem those records final decisional documents ignores that FDA's final decision here was the Marketing Denial Order (MDO), and that that document did not adopt the preliminary assessments contained in the withheld records. Rather, the MDO was based solely on the toxicological deficiencies identified in the Toxicology TPL Review Memo. Thus, while the Toxicology TPL Review Memo lost its predecisional and deliberative status when FDA adopted it as the basis of the MDO, the Additional Disciplines TPL Review Memo (as well as its underlying Discipline Reviews) retained their predecisional and deliberative nature. Nor does the fact that the Additional Disciplines TPL Review Memo was signed change the analysis, where that memo itself acknowledged that it was subject to additional review and therefore not the agency's final decision. Plaintiff's attempts to argue that the withheld memos are not deliberative likewise fail to persuade.

Regarding foreseeable harm, Plaintiff itself confirms that disclosure of the withheld records would result in public confusion. Plaintiff's expressly stated intention is to portray these documents to other judicial tribunals and to the public as the FDA's final word on their contents, when they decidedly are not. That use of the documents would certainly (not potentially) cause confusion. Plaintiff also disputes that release of the withheld records would chill ongoing deliberations in the further administrative review by claiming that staff who prepared the withheld records would have no expectation that those records would be kept confidential. But when the withheld records were prepared, staff either did not know whether those records would form any part of the basis for the

outcome on Plaintiff's applications; or in fact understood that they would not, and would not therefore be adopted by the agency. Plaintiff's argument has no bearing on the particular chilling effect asserted here—a chilling effect on deliberations in the ongoing administrative review, not a chilling effect on the past deliberations contained in the withheld records.

<u>ARGUMENT</u>

I.      **The Withheld Records Are Properly Subject to the Deliberative Process Privilege**

A.      **The Withheld Records Are Predecisional**

As FDA demonstrated in its opening brief, the withheld records are predecisional because they were all created and finalized prior to the FDA decision to deny Plaintiff's PMTAs. That was the decision to which the withheld records related, and their predecisional nature is not negated by the fact that the agency ended up not relying on these records in making that final decision. *See* Defendant's Memorandum in Support of Its Motion for Summary Judgment (FDA MSJ), ECF 16-1, at 14-15.

In response, Plaintiff argues that the Additional Disciplines TPL Review Memo, dated June 23, 2022 (*see Vaughn* index, ECF No. 19-4 (Pl.'s Ex. 2) at 7), cannot be predecisional because it postdates FDA's decision to deny Plaintiff's PMTAs embodied in the marketing denial order. For this argument, Plaintiff relies on a story published in *The Wall Street Journal* on June 22, 2022, that reported that FDA was preparing to issue a marketing denial order "according to people familiar with the matter." Pl. Juul Labs, Inc.'s Combined Mem. In Opp'n to Def. FDA's Mot. for Summ. J. & in Supp. of its Cross-Mot. for Summ. J. (Pl.'s Mem.), ECF 19-1, at 22; ECF 19-7 (Pl.'s Ex. 5). According to Plaintiff, this article establishes that the decision to issue the marketing denial order was already made when the Additional Disciplines TPL Review Memo was finalized and signed on June 23. But Plaintiff cites no authority for dating an agency's final decision according to when a news article, citing "people familiar with this matter," alleges it was made, as opposed to the actual

date of the decision letter (here, the marketing denial order, which was signed and became operative

on the morning of June 23, 2023, *see* Decl. of Michele Mital (Mital Decl.), ECF 16-2, Ex. 5 (MDO)).

Moreover, even if the relevant decisionmaker had made up his mind sometime before the MDO was

officially signed (which would not be surprising), the Additional Disciplines TPL Review Memo was

obviously drafted before it was finalized and signed, for the very purpose of informing the decision.

Plaintiff next argues that the Additional Disciplines TPL Review Memo is not predecisional

because it is signed and therefore reflects the signatory's concurrence with the memo's findings and

conclusions. But FDA never contended the memo was in draft form. A memo need not be

unfinished to be pre-decisional; it just needs to precede the decision to which it related—in this case,

the decision whether to grant or deny Plaintiff's PMTAs. A signed TPL Review memo can lose its

predecisional status if and when a marketing order adopts its reasoning and recommendations.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also, e.g., Elec. Frontier

Found. v. U.S. Dep't of Just.*, 739 F. 3d 1, 10 (D.C. Cir. 2014)). Marketing granted or denial orders

often do that, and that in fact happened here, but with respect to a different memo: the marketing

denial order adopted the Toxicology TPL Review memo, which FDA produced to Plaintiff in this

FOIA case. But in contrast, that marketing denial order expressly did not consider, rely on, or adopt

the reasoning in the Additional Disciplines TPL Review Memo, or its underlying Discipline Review

Memos. *See* FDA's MSJ at 15. Those documents therefore remain predecisional.

"[W]hen parties dispute whether an otherwise predecisional and deliberative document has

lost its privileged status through adoption or public use, the FOIA requester—not the agency—

bears the burden of persuasion on that issue." *Gellman v. Dep't of Homeland Sec.*, 525 F. Supp. 3d 1, 7

(D.D.C. 2021) (citations omitted); *see also, e.g., Elec. Priv. Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65,

78 (D.D.C. 2008) (plaintiff must provide more than "speculation" that a document was adopted);

*Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, No. CV 20-172 (RC), 2021 WL 1167094, at *6

(D.D.C. Mar. 26, 2021) (similar). Far from meeting this burden, however, Plaintiff admits that the MDO adopted only the Toxicology TPL Review Memo. *See* Plaintiff's Response to Defendant's Statement of Undisputed Material Fact[s] ("Pl.'s Resp. to Def.'s SOF"), ECF 19-44, ¶ 24 ("[a]dmitting that the Director of OS signed and FDA issued an MDO[] which was based solely on the … toxicological deficiencies" identified in the Toxicology TPL Review Memo and assessed there to be dispositive of the applications).

Elsewhere in its brief, Plaintiff argues that FDA's deliberative process was at an end when the signatory on the Additional Disciplines TPL Review Memo, Dr. Holman, signed it. Pl.'s Mem. at 13. Plaintiff claims that by signing this TPL Review Memo, Dr. Holman "indicated he was prepared to make the [Additional Disciplines TPL Review Memo] a public part of FDA's decision and the TPL's findings the scientific basis for that decision." Id. But this claim is belied by the Additional Disciplines TPL Review Memo itself, which explains that "OCD advised OS that OCD would review any conclusions reached by OS for this bundle before those conclusions became a final agency decision," and that "OCD has not reviewed the findings and conclusions in this TPL Review (Additional Disciplines)." Mital Decl. ¶ 18; *see also* FDA MSJ at 16. In addition, while Dr. Holman signed the Toxicology TPL Review Memo next to the indicator "Signatory Decision," he signed the Additional Disciplines TPL Review Memo next to the indicator "Supervisory OS Review."  Second Declaration of Jennifer German (2d German Decl.) ¶ 5. "Signatory Decision" means a person with delegated authority to make the relevant agency decision. *Id.* By contrast, "Supervisory OS Review" does not indicate authority to make a final agency decision; it simply means a person at least one level above the document's author. *Id.*

Plaintiff further seems to claim that because the OS Director holds his delegated decisional authority to issue an MDO concurrently with the OCD Director, OCD does not in fact exercise oversight over OS. To the contrary, as the head of CTP, the Center Director holds "supervisory

authority over" all CTP components, including but not limited to OS. Mital Decl. ¶ 8 & Ex. 3.[1]
Given this undisputed supervisory role, Plaintiff's assertions that there was anything "unusual," Pl.'s
Mem. at 7, much less insidious, about OCD's role in the decision are unfounded.

B.     The Withheld Records Are Deliberative

Plaintiff's opposition brief presents no argument that the Additional Disciplines TPL Review
Memo is not deliberative. *See* Pl.'s Mem. at 25-27. Plaintiff has therefore conceded that that Memo is
deliberative. Plaintiff does, however, take the position that the withheld Discipline Review Memos
are not deliberative, arguing that they fall on the "wrong side of the fact/opinion dividing line." *Id.*
at 25.

FDA's opening brief explained that the FDA staff scientists' analyses of factual information
in the Discipline Review Memos are deliberative in nature because they reflect the give-and-take of
the consultative process and consist only of the recommendations of staff members. Specifically,
these analyses involve distilling the raw data and information submitted by Plaintiff in its PMTAs—
including by separating the significant facts from the insignificant facts—as well as weighing the
significance of various types of information against each other, and drawing conclusions therefrom.
*See* Def.'s Mem. at 16-19; German Decl. ¶ 33 (describing this process in more detail, and further
averring that these documents "intertwine fact and opinion, simultaneously explaining and
supporting the discipline reviewers' [respective] recommendations to the TPL regarding their

---

[1]  *See also* Office of the Commissioner Reorganization; Statement of Organizations, Functions, and
Delegations of Authority, 74 Fed. Reg. 41,713, 41,732 (Aug. 18, 2009) (providing that the functions
of OCD shall include, *inter alia,* to "[p]lan[], administer[], coordinate[], evaluate[] and implement[]
overall Center scientific, regulatory, compliance, enforcement and management programs, policies
and plans"); *id.* 74 Fed. Reg. at 41,734 (providing that the functions of OS shall include to "[a]dvise[]
and assist[] the Center Director, Deputy Director, and other key officials on scientific issues that
have an impact on policy, direction, and long-range goals"; "[o]rganize, plan[], and direct[] the
Center for research support in the areas of Tobacco"; and to "[c]oordinate[] and provide[] guidance
on special and overall science policy in program areas that cross major agency component lines and
scientific aspects that are critical or controversial, including agency risk assessment policies").

individual scientific disciplines, to aid the TPL in making more-comprehensive recommendations to the agency decisionmaker.").

Plaintiff largely disregards FDA's descriptions of the content of the Discipline Review Memos and instead argues that unless the agency's overall exercise is one of "discretionary policy-making," as opposed to scientific assessment, factual or largely factual materials that form part of the relevant decisional process can never qualify for the protections of the deliberative process privilege. *See* Pl.'s Mem. at 26-27. Plaintiff relies heavily on *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 150-51 (D.D.C. 2017), but the court in that case did not actually order the release of any records. Rather, it found only that, given the certain specific constraints of the Endangered Species Act (ESA), the EPA's *Vaughn* index did not, at that juncture, support its withholdings. 279 F. Supp. 3d at 153, 155-56. And in a later decision issued in that same litigation, the court expressly rejected the plaintiffs' attempt to read the earlier decision the same way Plaintiff does here—*i.e.*, as limiting the deliberative process privilege strictly to instances in which an agency is "exercis[ing] …policy-oriented judgment"; to the contrary, the court agreed that "the fact that the deliberations that form the basis for all of EPA's withholdings occurred in the context of a scientific determination does not deprive them of their pre-decisional or deliberative characteristics." *Ctr. for Biological Diversity v. EPA*, 369 F. Supp. 3d 1, 18 (D.D.C. 2019); *see also id.* 20 (noting the "well-established law in this Circuit that the deliberative process privilege operates to shield from disclosure agency decision-making reflecting the collection, culling and assessment of factual information or scientific data," *id.* at 20 (citing *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014), and collecting other cases); *see also Nat. Res. Def. Council, Inc. v. Doremus*, No. 20-CV-1150, 2021 WL 2322349, at *5 (D.D.C. June 7, 2021) (similarly rejecting the argument that *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992), also cited by Plaintiff, "impl[ies] that materials produced in the process of making a

scientific determination cannot be deliberative," and explaining that "[r]ecent cases from this district have rejected that overbroad reading") (collecting cases).

Thus, contrary to Plaintiff's assertion, the fact that the Discipline Review Memos were created "in the context of a scientific determination," *Ctr. for Biological Diversity*, 369 F. Supp. 3d at 18, does not preclude them from being deliberative.

### C.    Disclosure of the Withheld Records Would Cause Foreseeable Harm

#### 1.    Public Disclosure of the Withheld Records Would Engender Public Confusion

The bulk of Plaintiff's opposition brief is spent attempting to show that no foreseeable harm would come from the disclosure of the withheld records. But Plaintiff itself intends to use the records to cause at least one of the harms that FDA has articulated—public confusion.

As FDA explained in its opening brief, FDA's marketing denial order for Plaintiff's products was not based in any way on the subjects discussed in the Additional Disciplines TPL Review Memo or its underlying Discipline Review Memos. But FDA typically releases such memos only when they *do* provide the basis for its decision. Thus, if released, the withheld records would likely give the public the wrong impression that FDA has in fact reached a final decision on the issues contained in them. Def.'s Mem. at 21-22.

Plaintiff has made this point for FDA by all but promising to use the withheld records for such a purpose. Plaintiff has repeatedly indicated that it plans to portray the withheld documents as statements of FDA's final position on the topics that these documents address, even though FDA has not, in fact, reached any conclusions on these topics. *See* Plaintiff's Memorandum in Support of Its Emergency Motion for Expedited Briefing and In Camera Review, ECF 18-1, at 3 (representing that Plaintiff would use the documents in then-pending litigation in Minnesota to "provide a complete picture of what FDA reviewers thought about its applications"); ECF 24 (Transcript of Hearing) at 9:12-16 (after that litigation settled, averring that "[i]t's not like [the] Minnesota lawsuit is

7

the last lawsuit we're going to face. There are other pending suits, there are going to be lots more. Now that this play has been run in Minnesota, it's going to be run everywhere."); *id.* 10:9-10 ("[W]e ought to be able to tell the public" about the contents of the documents, which Plaintiff clearly views as FDA decisions). The fact that Plaintiff wishes to counter the MDO, which it first released on its own website and continues to publicize there, does not change the fact that Plaintiff intends to portray non-final documents as embodying a final agency decision. *See* Pl.'s Resp. to Def.'s SOF, ECF 19-44, ¶ 75. *See also* 2d German Decl. at ¶ 9 (describing FDA's typical practices regarding disclosure of MDOs, which the agency "does not routinely post . . . on its website").

A paradigmatic purpose of the deliberative process privilege is to "protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States*, 617 F.2d at 866. In the circumstances presented here, it is not only reasonably foreseeable, but predictable, that precisely this harm would result from disclosure of the withheld documents. Nor is it a response to this predictable confusion to tell FDA to issue a press release to correct it. *See* Pl.'s Mem. at 19.

### 2. Public Disclosure of the Withheld Records Would Chill Ongoing Agency Deliberations

The Court need go no further in determining that FDA has satisfied its burden to make a showing of foreseeable harm from disclosure. However, FDA has also articulated a second, independent harm as well—that the disclosure of these records could foreseeably chill the FDA's actively ongoing deliberations pertaining to its further supervisory review of the denial of Plaintiff's PMTAs. Specifically, FDA's administrative review process may entail a fresh consideration of the same subjects that were addressed preliminarily by the withheld documents, including deliberations by the same individuals who drafted the earlier review memos, or by different individuals exercising their own independent judgment and expertise. That process should proceed free from any

improper pressure that could be brought to bear as a result of the release of the agency's unfinished preliminary assessments. *See* FDA MSJ at 20-21.

In response, Plaintiff first argues that FDA's deliberative process ended with the signing of the Additional Disciplines TPL Review Memo, despite the ongoing supervisory review. Pl.'s Mem. at 13. That argument fails for the reasons stated above. Plaintiff next argues that future deliberations of scientific reviewers cannot be chilled by the release of the withheld records because FDA has in the past released other TPL review memos and disciplinary review memos, such as in this very case where FDA released the Toxicology TPL Review Memo and its corresponding Discipline Reviews *See* Pl.'s Mem. at 15 (arguing that the scientific reviewers "know their work will be made public."). But this argument disregards the distinction discussed above—that FDA regularly releases TPL Review Memos, as well their underlying Discipline Review Memos, when it adopts the reasoning in those documents in the course of granting or denying marketing authorization, but does not do so when no final decision has been made with respect to the topics in the withheld records. Thus, the scientific reviewers who worked on the withheld records would not know, at the time they created them, that their work would necessarily be made public. Nor does the possibility that their work could be made public depending on what final decisions were subsequently reached (a possibility that exists any time a predecisional, deliberative recommendation is made) have anything to do with whether the release of the withheld records could chill their participation in the ongoing supervisory review process—the particular "chilling effect" harm asserted by FDA here.

Regardless, the employees who worked on the Additional Disciplines TPL Review Memo, and the withheld Discipline Review Memos prepared near the end of the review process, had every reason to believe that the analysis and recommendations in those records would *not* be adopted by the agency in its final decision on Plaintiff's PMTAs. That is because it was OS—the office that prepared the withheld records—that proposed to OCD that OS should bifurcate the assessment of

Plaintiff's application into two distinct TPL Review Memos, and that the agency should deny Plaintiff's PMTAs on the basis of the dispositive toxicological deficiencies that would be addressed in the Toxicology TPL Review Memo. Mital Decl. Ex. 4 (OCD Memo). Thus, at the time the Additional Disciplines TPL Review Memo was prepared, it was not contemplated to be a document that would form any part of the basis for the outcome on Plaintiff's applications.

That fact distinguishes this case from *Vanda Pharms., Inc. v. FDA*, No. 22-CV-938 (CRC), 2023 WL 2645714, at *1 (D.D.C. Mar. 27, 2023), on which Plaintiff heavily relies. *See* Pls.' Mem. at 20-21. The court in *Vanda* rejected FDA's argument that disclosing clinical and statistical reviews prepared for the evaluation of a supplemental new drug application would have a chilling effect on staff communications. The court doubted that disclosing the reviews would lead to the claimed chilling effect because the agency is required by statute to publish underlying reviews whenever a new drug application is approved, and one study suggested that the approval rate for new drug applications was over 90%. *See Vanda*, 2023 WL 2645714, at *3. In addition, the agency released reviews associated with approved supplemental new drug applications (the type of application at issue in *Vanda*) in response to FOIA requests. *Id.* Thus, the court reasoned, staff working on the underlying reviews would not reasonably expect those reviews to remain confidential at the time they prepare them, even if they did not know whether the application would be approved or not. *Id.* at *3-4. In contrast here, staff working on the Additional Disciplines TPL Review Memo, and the withheld Discipline Review Memos prepared near the end of the review process would reasonably expect those records to not be released at the time they prepared them for the reasons discussed above.

Finally, Plaintiff argues that because the OCD Memo "already lays bare the deliberations" within OCD "about how to handle both TPL memos," the "relevant internal deliberations" have "already [been] disclosed." Pl.'s Mem. at 13. But the OCD Memo and the Additional Disciplines

TPL Review Memo are two distinct documents, that address two different subjects. The former memo documents the process by which OCD accepted and concurred in OS's proposal that it issue a marketing denial order on the sole and dispositive basis of the toxicological deficiencies found in the Toxicology TPL Review Memo. Mital Decl. Ex. 4 (OCD Memo). The latter memo aggregates and assesses the 19 underlying Discipline Review Memos that, collectively, address all of the scientific areas relevant to FDA's analysis of Plaintiff's PMTAs other than those areas already assessed in the disclosed Toxicology TPL Review Memo. That FDA has made the OCD Memo public in the course of this litigation has no bearing on whether the Additional Disciplines TPL Review Memo must also be made public under FOIA.

## II.   FDA Processed and Released All Reasonably Segregable Information

FDA has also satisfied its burden to disclose "[a]ny reasonably segregable portion" of the otherwise exempt records, 5 U.S.C. § 552(b)—or rather, in the circumstances of this case, to demonstrate that the 20 withheld documents are not, in any meaningful way, reasonably segregable.

Contrary to Plaintiff's assertions, FDA has done much more than provide a "blanket" assertion that the factual portions of the withheld documents cannot be reasonably segregated in any meaningful matter. *See* Pl.'s Mem. at 28. To the contrary, the First German Declaration explains in detail that the Discipline Review Memos "summarize both the information submitted by Plaintiff and other information available to FDA," and in so doing

> describe, in an intertwined fashion, the design of various studies and their key features; the strengths, weaknesses, and limitations of the studies; comparisons among and across studies; study outcomes and the scientists' assessment of those outcomes, and data or information that was *not* submitted or otherwise available to the staff scientists that could have been relevant if present. These summaries [thus] intertwine fact and opinion, simultaneously explaining and supporting the discipline reviewers' recommendations to the TPL regarding their individual scientific disciplines, to aid the TPL in making more-comprehensive recommendations to the agency decisionmaker.

German Decl. ¶ 33. Correspondingly, the Additional Disciplines TPL Review Memo "does the same thing but at a higher level, further summarizing the factual bases for the opinions of the reviewers across multiple scientific disciplines to benefit the agency decisionmaker in its review and consideration of the TPL's recommendations." *Id.* ¶ 34. Thus, in every one of the withheld documents, "the selection and presentation of factual data and information to include is itself deliberative, in that it outlines the staff scientists' internal thought processes in analyzing Plaintiffs' applications." *Id.* One purely factual paragraph from a different document, the disclosed Toxicology TPL Review Memo, does not undermine these assertions. *See* Pl.'s Mem. at 28-29.

Given the presumption to which FDA is entitled on this question, *i.e.* that it "complied with the obligation to disclose reasonably segregable material," *Soto v. U.S. Dep't of State*, 118 F. Supp. 3d 355, 370 (D.D.C. 2015) (citations omitted), and in combination with the detailed *Vaughn* index separately provided by the agency, these explanations suffice to entitle FDA to summary judgment on the issue of segregability. *See, e.g., id.* at 371 (agency's "detailed affidavit describing the documents coupled with its assertion that a 'line-by-line' segregability analysis was conducted for every withheld document … suffice for the Court to conclude that there is no dispute of material fact as to the [agency's] compliance with its segregability obligations," (citing *Loving, v. Dep't of Defense,* 550 F.3d 32, 41 (D.C. Cir. 2008)); *Freeman v. Fed. Bureau of Investigation*, No. CV 18-2769 (RBW), 2022 WL 4365734, at *2–3 (D.D.C. Sept. 21, 2022) (where "[n]othing in the record calls into question the good-faith presumption afforded' to the defendant's declarations," the court may properly grant summary judgment in favor of the agency on the question of segregability) (citation omitted); *Webster v. U.S. Dep't of Just.,* No. CV 02-603 (RC), 2020 WL 1536303, at *9 (D.D.C. Mar. 31, 2020) (similar).

### III.   The Court Has Already Denied Plaintiff's Request for *In Camera* Review, and Should Also Deny Plaintiff's Request for Discovery

Finally, in its cross-motion, Plaintiff asks this Court to order FDA to submit the withheld documents for *in camera* review, and/or permit discovery. The Court has already denied the former request without prejudice, *see* April 20, 2023 Minute Order, and should also deny the latter.

It is well-established that the "presumption of good faith" accorded to agency declarations in FOIA matters "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Thus, discovery is "generally inappropriate in a FOIA case," *Freedom Watch, Inc. v. U.S. Dep't of State*, 179 F. Supp. 3d 121, 127 (D.D.C. 2016), and is only to be permitted where the plaintiff has made some showing that the government's declarations submitted in support of summary judgment are inadequate or were submitted in bad faith. *Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 74 (D.D.C. 2016) (citing *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006)); *see also Thomas v. Dep't of Health & Human Servs.*, 587 F. Supp. 2d 114, 115 n.2 (D.D.C. 2008) ("[D]iscovery is an extraordinary procedure in a FOIA action ..."); *Freedom Watch v. Bureau of Land Mgmt.*, 220 F. Supp. 3d 65, 68 (D.D.C. 2016) (discovery "rare and disfavored" in FOIA cases). "The mere suspicion of bad faith on the part of the government cannot be used as a dragnet to authorize voluminous discovery that is irrelevant to the remaining issues in a case." *In re Clinton*, 973 F.3d at 144; *see also Ocasio v. Dep't of Justice*, 67 F. Supp. 3d 438, 440 n.6 (D.D.C. 2014) (discovery should not be permitted in order to "afford the plaintiff an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits" submitted by the government.) (citation omitted).

Plaintiff has not met its burden of demonstrating that it is entitled to the "extraordinary" measure of discovery in this FOIA suit. Initially, although Plaintiff's Response to Defendant's Statement of Undisputed Material Fact[s], Plaintiff references Fed. R. Civ. P. 56(d), Plaintiff has

made no effort to comply with Rule 56(d)'s requirements. "Rule 56 instructs a party ... what to do if [it] believes discovery is necessary to fend off an early summary judgment motion: 'show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *Parker v. Hoglander*, No. CV 15-926 (JDB), 2016 WL 3527014, at *4 (D.D.C. June 23, 2016) (quoting Fed. R. Civ. P. 56(d)); *see also Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99-100 (D.C. Cir. 2012) (holding that to satisfy Rule 56(d), an affidavit must (1) "outline the particular facts [the party] intends to discover and describe why those facts are necessary to the litigation"; (2) explain "why [the party] could not produce [the facts] in opposition to the motion [for summary judgment]"; and (3) demonstrate that "the information is in fact discoverable."). This failure, alone, dooms Plaintiff's request.

In any event, FDA has already clarified several misapprehensions and unfounded allegations underlying Plaintiff's request for discovery. Specifically, FDA has submitted record evidence that, contrary to Plaintiff's accusations: (1) the Additional Disciplines TPL Review Memo contains no new or additional analysis of toxicological risk, but merely cross-references the Toxicology TPL Review Memo's discussion of those issues as needed to provide context for its analysis of other disciplines, 2d German Decl. ¶ 6; (2) although the Additional Disciplines TPL Review Memo did not form any part of the basis for FDA's denial of Plaintiff's applications, its bottom-line recommendation was also to deny authorization, *id.* ¶ 7; (3) OCD did not instruct OS to issue a decision based on the Toxicology TPL Review Memo, Second Declaration of Michele Mital (2d Mital Decl.) ¶ 5; and (4) nor did OCD consider instructing OS to base the decision on the AD TPL, *Id.* ¶ 6. *See also* April 19, 2023 hearing transcript at 15, 25. Plaintiff's discovery request should thus be denied.

Finally, to the extent the Court revisits Plaintiff's request for *in camera* review following the completion of briefing, it should again deny that request. Where "the agency's affidavits provide

specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith," then it is well-established that in FOIA cases "summary judgment is appropriate without *in camera* review of the documents." *ACLU v. U.S. Dep't of Def.,* 628 F.3d 612, 626 (D.C. Cir. 2011) (emphasis added) (citations omitted); *see Associated Press v. U.S. Dep't of Justice,* 549 F.3d 62, 67 (2d Cir. 2008) (*in camera* review appropriate only when agency offers "vague or sweeping claims" to support withholding of responsive records). For all of the reasons set forth above, FDA's declarations amply support the agency's deliberative process privilege assertion here, making *in camera* review of the withheld records unnecessary.

## **CONCLUSION**

For the reasons stated above, and in FDA's opening brief, the Court should grant FDA summary judgment on all claims and deny Plaintiff's motion for summary judgment.


Dated: May 11, 2023                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Principal Deputy Assistant Attorney General

                                       MARCIA BERMAN
                                       Assistant Branch Director

                                       _____ */s/ Antonia Konkoly* _____
                                       Antonia Konkoly
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L St. NW
                                       Washington, DC 20005
                                       (202) 514-2395 (direct)

                                       *Counsel for the Defendant*

Of Counsel:

SAMUEL R. BAGENSTOS

General Counsel
Dep't of Health and Human Services

MARK RAZA
Chief Counsel
Food and Drug Administration

WENDY S. VICENTE
Deputy Chief Counsel for Litigation
Food and Drug Administration

JULIE B. LOVAS
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration