**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUUL LABS, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION,<br><br>*Defendant.* | Civil Action No. 1:22-cv-02853-RDM |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT**
**OF UNDISPUTED MATERIAL FACTS AND SUPPLEMENTAL STATEMENT OF**
**UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 7(h)(1) and this Court's Standing Order, ECF 4, ¶ 10(d)(iv), Defendant U.S. Food and Drug Administration (FDA) respectfully submits this response to the Statement of Undisputed Material Facts filed by Plaintiff Juul Labs, Inc. (JLI) in support of its cross-motion for summary judgment in the above-captioned case, ECF 19-43, and Supplemental Statement of Undisputed Material Facts.

**RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      The Tobacco Control Act assigns the Secretary of Health and Human Services (Secretary) premarket review authority for tobacco products.  21 U.S.C. § 387j(c)(1)(A).

**Defendant's Response**: Undisputed.

2.      The Secretary has delegated this authority to the Commissioner of Food and Drugs (Commissioner).  *See* FDA Staff Manual Guides 1410.10 at 1.A.1; Mital Decl. ¶ 6.

**Defendant's Response**: Undisputed.

3.      The Commissioner has delegated to multiple officials within the Food and Drug Administration's (FDA's) Center for Tobacco Products (CTP) the authority "to issue orders to

1

approve or deny applications" and "to deny [premarket tobacco product] applications and to provide information about the measures required to remove the application from deniable form." FDA Staff Manual Guides 1410.1103 at 1.F, 1.G; Mital Decl. ¶ 7.

**Defendant's Response**: Undisputed.

4.      Those officials authorized to approve or deny such applications include the CTP Director and Deputy Director, the Director of the Office of Science within CTP, and the Director of the Division of Individual Health Science within the Office of Science.  *Id.*

**Defendant's Response**: Undisputed.

5.      FDA relies on its staff of scientists to review applications submitted by ENDS manufacturers.  Mital Decl. ¶ 10.

**Defendant's Response**: Undisputed, with the clarification that the staff scientists conduct only a first-level review and do not have delegated authority to make the final agency decision on whether to grant or deny marketing authorization. Mital Decl. ¶ 10.

6.      Reviewers in each relevant scientific discipline draft what are known as scientific discipline reviews that evaluate the information in the application based on the principles of that scientific discipline.  Mital Decl. ¶ 10.

**Defendant's Response**: Undisputed.

7.      FDA also designates an experienced staff member as the Technical Project Lead for each application.  Mital Decl. ¶ 11.

**Defendant's Response**: Undisputed.

8.      The Technical Project Lead assesses the scientific discipline reviews and makes a recommendation about whether to grant or deny the application.  *Id.*

**Defendant's Response**: Undisputed.

9.      This assessment and recommendation is documented in a TPL Review memo.  *Id.*

**Defendant's Response**: Undisputed.

10.     An FDA official with delegated decision-making authority—usually the Director of the Office of Science—reviews the TPL Review memo and makes a "Signatory Decision" to either accept or reject the Technical Project Lead's recommendation.  Mital Decl. ¶ 12; Ex. 3 (Toxicology TPL).

**Defendant's Response**: Disputed in part, and with two clarifications. First, the OS Director's signature next to "Signatory Decision" on the Toxicology TPL does not say "accept" or "reject" the TPL's recommendation, but rather "Concur with TPL recommendation and basis of recommendation." Pl.'s Ex. 3 at 2. Second, the Additional Disciplines TPL Review Memo does not have a "Signatory Decision." Rather—and in contrast to the Toxicology TPL—the Additional Disciplines TPL indicates to the left of Dr. Holman's signature that his signature there represents "Supervisory OS Review." Second Declaration of Jennifer German (2d German Decl.) ¶ 5.

CTP uses "Signatory Decision" to denote the concurrence of the individual with delegated authority to make the relevant agency decision. *Id.* By contrast, "Supervisory OS Review" does not relate to delegated authority to make a final agency decision; it simply means that an individual at least one level above the document's author in the organization performed the review. *Id.*

11.     A decision approving an application is called a marketing granted order, and a decision denying an application is a marketing denial order.  Mital Decl. ¶ 12.

**Defendant's Response**: Undisputed.

12.     In July 2020, JLI submitted its PMTAs with over 125,000 pages of information, data, and analysis, seeking authorization to market two devices and four types of JUULpods (Virginia Tobacco and Menthol flavors in 5.0% and 3.0% nicotine concentrations).  Ex. 4.

**Defendant's Response**: Undisputed, except as to Plaintiff's characterization of its PMTAs

as containing "over 125,000 pages of information, data, and analysis." The evidence Plaintiff cites

does not establish as fact the number of pages of "information, data, and analysis" Plaintiff

submitted in support of its PMTAs. Plaintiff cites not the actual evidence submitted in support of its

PMTAs, but its own characterization of that evidence in its administrative appeal. FDA further

disputes the materiality of the specific number of pages of information, data, and analysis that

Plaintiff's applications contain to the instant FOIA suit. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986) ("Material facts" are those facts which, under the governing substantive law,

"might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . .

the fact is of consequence in determining the action").

13.     JLI conducted more than 75 nonclinical and 13 clinical studies to evaluate the

potential health risks among users of its JUUL products.  Ex. 4.

**Defendant's Response**: Disputed. The evidence Plaintiff cites does not establish as fact the

number of studies, types of studies, and purpose(s) of the studies in Plaintiff's PMTAs. Plaintiff cites

not the actual evidence submitted in support of its PMTAs, but its own characterization of that

evidence in its administrative appeal. FDA further disputes the materiality of the contents of the

actual evidence submitted in support of Plaintiff's PMTAs to the instant FOIA suit. *See, e.g.,*

*Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive

law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if

. . . the fact is of consequence in determining the action").

14.     The research showed that among adult smokers who started using JUUL products,

over 50% completely switched from combustible cigarettes—a level far higher than other ENDS

products.  Ex. 4.

**Defendant's Response**: Disputed. The evidence Plaintiff cites does not establish as fact

what conclusions may be drawn regarding adult switching from the studies Plaintiff submitted in

support of its PMTAs. Plaintiff cites not the actual evidence submitted in support of its PMTAs, but its own characterization of that evidence in its administrative appeal. FDA further disputes the materiality of the conclusions that may be drawn from the actual evidence submitted in support of Plaintiff's PMTAs to the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

The fact that *is* material to the instant suit is that, as FDA explained in the MDO, "In light of the unaddressed deficiencies regarding potential toxicological risks and in the interest of issuing a decision without the additional delay that further analysis would have required, FDA did not assess whether there might be additional deficiencies [in the information Plaintiff submitted in support of its applications] relating to initiation, switching, and  cessation." Mital. Decl. Ex. 5 (MDO) at 3 (emphasis added). The agency explicitly did not incorporate consideration of Plaintiff's data regarding switching into its decision on Plaintiff's applications.

15.     On or before June 22, 2022, officials with knowledge of FDA's decision to deny JLI's applications and order all JUUL products off the U.S. market leaked the decision to *The Wall Street Journal. See* Ex. 5.

**Defendant's Response**: Disputed. The source(s) on which the article attached as Plaintiff's Exhibit 5 relied were anonymous, described merely as "people familiar with the matter." In addition, their purported, paraphrased statements to the author of the article are hearsay. Accordingly, Plaintiff's assertion that these sources were "officials with knowledge of FDA's decision" lacks any arguably admissible factual basis. Plaintiff further cites no authority for dating an agency's final decision according to when a news article, citing "people familiar with this matter," alleges it was made, as opposed to the actual date of the decision letter—here, the MDO, which was signed and

became operative on the morning of June 23, 2023. Mital. Decl. Ex. 5 (MDO); *cf.* Def.'s SOF ¶ 13 (the FDA's final decision is either an MDO or MGO); *supra* ¶ 11 (same).

16.     The *Wall Street Journal* published an article revealing FDA's decision on June 22, 2022.  Ex. 5.

**Defendant's Response**: Disputed in part. FDA does not dispute that the *Wall Street Journal* published the article attached as Plaintiff's Exhibit 5, on June 22, 2022. However, the source(s) on which the article attached as Plaintiff's Exhibit 5 relied were anonymous, and their purported, paraphrased statements to the author of the article are hearsay. Plaintiff further cites no authority for dating an agency's final decision according to when a news article, citing "people familiar with this matter," alleges it was made, as opposed to the actual date of the decision letter—here, the MDO, which was signed and became operative on the morning of June 23, 2023. Mital. Decl. Ex. 5 (MDO); *cf.* Def.'s SOF ¶ 13 (the FDA's final decision is either an MDO or MGO); *supra* ¶ 11 (same).

17.     FDA issued its formal order the next day through a letter addressed to JLI.  Ex. 6.

**Defendant's Response**: Undisputed, except insofar as Plaintiff's use of the word "formal" incorrectly implies that some "informal" order or decision existed prior to Dr. Holman's execution of the MDO on June 23, 2022. *See* Def.'s SOF ¶ 13 (the FDA's final decision is either an MDO or MGO); *supra* ¶ 11 (same).

18.     FDA acknowledged that "exposure to carcinogens and other toxicants present in cigarette smoke were greatly reduced with exclusive use of the new products compared to [cigarette] smoking." Ex. 3 (TPL).

**Defendant's Response**: Undisputed, with the clarification that in context, the quoted statement reads, "In the clinical studies, significant reductions in blood and urinary BOEs indicate that exposure to carcinogens and other toxicants present in cigarette smoke were greatly reduced with exclusive use of the new products compared to CC smoking. While it is theoretically possible

for the decreased HPHC yields and reduced BOE levels to offset the risk posed by the genotoxic leachables, the applicant provided no data indicating if, and how much of, these leachables are transferred into mainstream aerosol. With unknown aerosol yields of these leachables and their disputed chemical identities, resulting in an unknown cancer potency and genotoxicity risk, it is not possible to do an offsetting evaluation for carcinogens (where decreased levels of one carcinogen potentially mitigate increased levels of another)." Pl.'s Ex. 3 (Toxicology TPL) at 13-14.

19.    FDA focused on purported "toxicological" shortcomings in JLI's PMTAs and asserted that "[w]ithout sufficient evidence of a product's toxicology risks," the agency "cannot conduct a full evaluation of the overall risks and benefits of JLI's products." Ex. 6 (MDO)

**Defendant's Response**: Undisputed, except as to Plaintiff's use of the qualifier "purported" to describe the toxicological defects in Plaintiff's PMTAs. *See* Pl.'s Ex. 6 (MDO) (describing in detail the FDA's findings and conclusions with respect to these actual toxicological defects).

20.    FDA issued a press release announcing its decision prominently featuring bold text stating that JLI "played a disproportionate role in the rise in youth vaping." Ex. 35 (6/23/22 FDA Press Release).  This statement comes before FDA first mentions "the toxicological profile of the products" or FDA's purported concerns about that profile.

**Defendant's Response**: Undisputed, except as to Plaintiff's use of the qualifier "purported" to describe FDA's concerns about the toxicological defects in Plaintiff's PMTAs. *See* Pl.'s Ex. 6 (MDO) (describing in detail the FDA's findings and conclusions with respect to these actual toxicological defects).

21.    In the June 23, 2022 press release, FDA stated that "[t]o date, the FDA has not received clinical information to suggest an immediate hazard associated with the use of the JUUL device or JUULpods." Ex. 35 (6/23/22 FDA Press Release).

**Defendant's Response**: Undisputed.

22.     After the D.C. Circuit granted an emergency administrative stay of the marketing denial order, FDA stayed its own decision to conduct a further internal review, known as "supervisory review."  Ex. 7 (July 5, 2022 FDA letter); *Juul Labs, Inc. v. FDA*, D.C. Cir. No. 22- 1123, ECF 1952074 (June 24, 2022); *see also* 21 C.F.R. § 10.75.

**Defendant's Response**: Undisputed.

23.     In its letter announcing the stay, FDA acknowledged that, after "reviewing the briefing materials" JLI had submitted to the D.C. Circuit, it found that "there are scientific issues unique to this application that warrant additional review."  Ex. 7 (July 5, 2022 FDA letter).

**Defendant's Response**: Undisputed.

24.     This agency-initiated supervisory review was combined with a separate supervisory review proceeding stemming from an administrative appeal filed by JLI.  Ex. 4.

**Defendant's Response**: Undisputed.

25.     FDA arrived at its marketing denial order through an administrative process in which the Technical Project Lead authored not one, but two, TPL Review memos.  *See* Ex. 10 (Mital Memo).

**Defendant's Response**: Undisputed.

26.     Outside observers stated that "[w]e have never seen FDA bifurcate and compartmentalize TPLs" in this way before.  *See* Ex. 18.

**Defendant's Response**: FDA is not required to respond to the statements in this paragraph because the alleged facts contained therein, regardless of whether true, are not material to the resolution of the instant FOIA suit. "Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248; Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

None of the purported "facts" in these paragraphs has any bearing on the outcome of this FOIA suit under applicable law. Since parties must identify genuine issues only with respect to "material" facts, Fed. R. Civ. P. 56(c), LCvR 7.1(h), FDA is not required to respond to this paragraph.

27.     The first memo, the TPL Review (Toxicology), discusses the "toxicological risks posed by" JLI's products. Ex. 3 (TPL) at 4.

**Defendant's Response**: Undisputed.

28.     FDA labeled the other memo the "TPL Review (Additional Disciplines)", but it covers all relevant scientific disciplines including toxicology. Ex. 2 (*Vaughn* Index) at 7.

**Defendant's Response**: Disputed in part. FDA does not dispute that the title of the document Plaintiff references is "TPL Review (Additional Disciplines)." FDA does dispute Plaintiff's characterization of the contents of the memo. The Additional Disciplines TPL Review Memo contains no new or additional analysis of toxicological risk. It cross-references the Toxicology TPL Review Memo's discussion of those issues as needed to provide context. 2d German Decl. ¶ 6.

29.     The Office of Science sent the CTP Director both TPL Review memos, and the Director instructed the Office of Science to issue a marketing denial order based on the TPL Review (Toxicology). *Id.*

**Defendant's Response**: Disputed in part. The Office of Science (OS) did send the Office of the Center Director (OCD) both memos. Mital Decl. ¶¶ 15-18 & Ex. 4 (OCD Memo). However, OCD concurred with OS's proposal that Plaintiff's PMTAs be denied on the sole and dispositive ground of the toxicological deficiencies identified in the Toxicology TPL, and thus OCD did not review the Additional Disciplines TPL Review Memo. *Id.* OCD did not "instruct" OS to issue a MDO based on the Toxicology TPL Review Memo; OCD agreed with OS's recommendation that the agency should issue an MDO based on the Toxicology TPL Review Memo. 2d Mital Decl. ¶ 4.

9

*See also* Mital Decl. ¶¶ 15-18 & Ex. 4 (OCD Memo).

30.     The marketing denial order issued under the signature of Matthew Holman, the Director of the Office of Science.  Ex. 6 (MDO).

**Defendant's Response**: Undisputed, except to clarify that Matthew Holman was the Director of the Office of Science on the date of the MDO, but has since left the agency.

31.     Dr. Holman also signed two TPL Review memos.  Ex. 3 (TPL); Ex. 2 (*Vaughn* Index) at 7.

**Defendant's Response**: Undisputed.

32.     Dr. Holman signed the marketing denial order and the TPL Review (Toxicology) on June 23, 2022.  Ex. 6 (MDO); Ex. 3 (TPL); Ex. 2 (*Vaughn* Index) at 7.

**Defendant's Response**: Undisputed.

33.     Dr. Holman signed the TPL Review (Additional Disciplines) on that same day, June 23, 2022.  Ex. 2 (*Vaughn* Index) at 7.

**Defendant's Response**: Undisputed.

34.     Dr. Holman's signature on the TPL Review (Additional Disciplines) reflected his "concur[rence] with [the] TPL['s] findings and conclusion" as one of the agency decisionmakers imbued with final decision-making authority.  Mital Decl. ¶ 18.

**Defendant's Response**: Disputed in part. Dr. Holman's signature on the Additional Disciplines TPL reflected his personal "concur[rence] with [the] TPL['s] findings and conclusion" set forth in that memo. Mital Decl. ¶ 18. However, the MDO did not rely, either in whole or in part, on the Additional Disciplines TPL Review Memo. *Id.* ¶¶ 15-18 & Ex. 4 (OCD Memo) & Ex. 5 (MDO). Further, FDA clarifies that the Toxicology TPL Review Memo indicates to the left of Dr. Holman's signature that it represents his "Signatory Decision." 2d German Decl. ¶ 5; Pl.'s Ex. 3 (Toxicology TPL) at 1. In contrast, the Additional Disciplines TPL Review Memo indicates to the

left of Dr. Holman's signature there that it represents "Supervisory OS Review." *Id.* Accordingly, Dr. Holman's signature on the Additional Disciplines TPL Review Memo was not an exercise of his delegated authority to issue final decisions on PMTAs—*i.e.*, was not "as" an "agency decisionmaker"—but rather connoted only his personal concurrence with the findings and conclusion of the Additional Disciplines TPL Review Memo.

35.     Dr. Holman has been delegated authority "to issue orders to approve or deny applications" and "to deny applications and to provide information about the measures required to remove the application from deniable form." FDA Staff Manual Guides 1410.1103 at 1.F, 1.G; Mital Decl. ¶ 7.

**Defendant's Response**: Undisputed, except to clarify that Dr. Holman was the Director of the Office of Science, and therefore had the delegated authority discussed in this paragraph, on the date of the MDO, but has since left the agency.

36.     On June 23, 2022, the Acting CTP Director at the time, Michele Mital, signed a memo to file documenting the Office of the Center Director's oversight and instructions. Ex. 10 (Mital Memo).

**Defendant's Response**: Disputed in part. FDA does not dispute that on June 23, 2022, the Acting CTP Director at the time, Michele Mital, signed a memo to file documenting CTP's decisionmaking process regarding Plaintiff's applications. FDA disputes Plaintiff's characterization of the contents of that memo, which does not use the language "oversight and instructions." *Id.*; *see* Mital Decl. Ex. 4 (OCD Memo). Further, OCD did not "instruct" OS to issue a MDO based on the Toxicology TPL Review Memo; rather, OCD agreed with OS's recommendation that the agency should issue an MDO based solely on the analysis and findings in the Toxicology TPL Review Memo. 2d Mital Decl. ¶ 5; Mital Decl. Ex. 4 (OCD Memo).

37.     As part of those instructions, CTP decided that the TPL Review (Additional

Disciplines) "should not be stored in [CTP's] Image database" where CTP typically stores its TPL Review memos and scientific discipline reviews.  Mital Decl. ¶ 19; German Decl. ¶ 11.

**Defendant's Response**: Disputed in part, and with two clarifications. First, this subject is not discussed in the June 23, 2022 OCD Memo referenced in paragraph 36 and was not an "instruction" from OCD. Mital Decl. Ex. 4 (OCD Memo). Second, FDA further clarifies that CTP elected not to store the Additional Disciplines TPL in the Image database in order "prevent internal confusion" about whether this memo provided any part of the basis for the MDO. Mital Decl. ¶ 19.

38.     Before FDA issued its MDO, Members of Congress, through letters and at hearings, pressed FDA officials to commit that JUUL products would not be authorized.  Ex. 11.

**Defendant's Response**: FDA is not required to respond to the statements in this paragraph because the alleged facts contained therein, regardless of whether true, are not material to the resolution of the instant FOIA suit. "Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248; Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").  None of the purported "facts" in these paragraphs has any bearing on the outcome of this FOIA suit under applicable law.  Since parties must identify genuine issues only with respect to "material" facts, Fed. R. Civ. P. 56(c), LCvR 7.1(h), FDA is not required to respond to this paragraph.

39.     After FDA's decision, Representative Raja Krishnamoorthi boasted about the congressional pressure placed "on the FDA to deny JUUL's PMTA applications."  Ex. 12.

**Defendant's Response**: FDA is not required to respond to the statements in this paragraph because the alleged facts contained therein, regardless of whether true, are not material to the resolution of the instant FOIA suit. "Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248; Fed.

R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action"). None of the purported "facts" in these paragraphs has any bearing on the outcome of this FOIA suit under applicable law. Since parties must identify genuine issues only with respect to "material" facts, Fed. R. Civ. P. 56(c), LCvR 7.1(h), FDA is not required to respond to this paragraph.

40.     Senator Dick Durbin for years pushed FDA to "finally do the right thing" and take "JUUL off the market." Ex. 13.

**Defendant's Response**: FDA is not required to respond to the statements in this paragraph because the alleged facts contained therein, regardless of whether true, are not material to the resolution of the instant FOIA suit. "Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248; Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action"). None of the purported "facts" in these paragraphs has any bearing on the outcome of this FOIA suit under applicable law. Since parties must identify genuine issues only with respect to "material" facts, Fed. R. Civ. P. 56(c), LCvR 7.1(h), FDA is not required to respond to this paragraph.

41.     Commentators observed that JLI had been "singled out", there had been "so much opposition to Juul" from "legislators in state legislatures and Congress," that "FDA simply could not have authorized the sale of JUUL" without provoking a "fierce" backlash and jeopardizing its funding. Ex. 14.

**Defendant's Response**: FDA is not required to respond to the statements in this paragraph because the alleged facts contained therein, regardless of whether true, are not material to the resolution of the instant FOIA suit. "Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248; Fed. R. Evid. 401

(stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

None of the purported "facts" in these paragraphs has any bearing on the outcome of this FOIA suit

under applicable law.  Since parties must identify genuine issues only with respect to "material" facts,

Fed. R. Civ. P. 56(c), LCvR 7.1(h), FDA is not required to respond to this paragraph.

42.     The same day FDA issued its marketing denial order, JLI submitted two FOIA

requests seeking "technical project lead review ('TPL') and any related documents" as well as

"disciplinary review documents for" JLI's PMTAs.  Ex. 15; Ex. 16.

**Defendant's Response**: Undisputed.

43.     FDA responded to JLI's requests in two letters, dated July 8, 2022 and July 21,

2022.

**Defendant's Response**: Undisputed.

44.     On July 8, FDA provided a partial response that included the "Technical Project

Lead Review (Toxicology)," as well as the "First and Second Cycle Toxicology Reviews," but not

documents related to topics other than toxicology.  Ex. 17.

**Defendant's Response**: Undisputed.

45.     On July 21, FDA stated that, in addition to the toxicology documents it had

provided earlier, it would also "release[e] the First and Second Cycle Environmental Science and

Chemistry Reviews" because the TPL Review (Toxicology) "considered" or "relied in part on" those

reviews.  Ex. 1.

**Defendant's Response**: Undisputed, with the clarification that FDA's letter stated "the

Environmental Science Reviews, like the Toxicology Reviews, were reviewed and considered for the

TPL Review (Toxicology), and the Toxicology Reviews relied in part on analysis in the Chemistry

Reviews." Pl.'s Ex. 1 at 3.

46.     FDA refused to make available nineteen other discipline reviews discussing JLI's

applications.  *Id.*; Ex. 2 (*Vaughn* Index); German Decl. ¶ 14.

**Defendant's Response**: Disputed in part. FDA does not dispute that it has withheld the 19 other discipline reviews, pursuant to FOIA Exemption 5 and the deliberative process privilege. Pl.'s Ex. 2 (*Vaughn* Index); German Decl. ¶ 14. FDA disputes any implication from Plaintiff's phrasing to the effect these lawful withholdings were improper—or that either the *Vaughn* index or the German Declaration contain any evidence of impropriety in these withholdings.

47.     At that time, FDA's FOIA office did not know a second TPL Review memo—the TPL Review (Additional Disciplines)—existed.  German Decl. ¶ 15.

**Defendant's Response**: Undisputed, with the clarification that Plaintiff's use of "at that time" appears to refer to July 21, 2022.

48.     Nor did the FOIA office know that the Office of the Center Director instructed agency officials not to store this second TPL Review memo in the typical repository.  *Id.* ¶¶ 11, 15.

**Defendant's Response**: Disputed in part, and with two clarifications. First, the storage of the Additional Disciplines TPL Review memo was not "instructed" by OCD in the June 23, 2022 OCD Memo, or otherwise. Mital Decl. Ex. 4 (OCD Memo); Mital Decl. ¶ 18. Second, FDA further clarifies that CTP elected not to store the Additional Disciplines TPL in the Image database in order to "prevent internal confusion" about whether this memo provided any part of the basis for the MDO. Mital Decl. ¶ 19.

49.     The FOIA office "became aware" of this second memo only after JLI filed this FOIA action.  *Id.* ¶ 15.

**Defendant's Response**: Undisputed.

50.     JLI first learned FDA had authored a second TPL Review Memo when FDA provided its *Vaughn* index on December 14, 2022. Ex. 2 (*Vaughn* Index) at 7.

**Defendant's Response**: Disputed in part. FDA disputes Plaintiff's characterization that

"FDA . . . authored a second TPL Review Memo" to the extent it suggests that the memo constituted an FDA decision. The Additional Disciplines TPL Review Memo was not adopted by FDA as an agency decision and did not reflect complete agency consideration or a final agency decision. Mital Decl. Ex. 4 (OCD Memo). It was the recommendation of the individual TPL, and its reasoning was not adopted by the agency's MDO. Mital Decl. ¶¶ 15-18; German Decl. ¶ 25.

51.     The withheld TPL Review memo relies on each of the discipline reviews (including the nineteen withheld reviews). Ex. 2 (*Vaughn* Index) at 7.

**Defendant's Response**: Undisputed, with the clarification that the Additional Disciplines TPL Review Memo contains no new or additional analysis of toxicological risk. It cross-references the Toxicology TPL Review Memo's discussion of those issues as needed to provide context. 2d German Decl. ¶ 6.

52.     The CTP Director considered instructing Dr. Holman to make that memo the basis for FDA's marketing order. Ex. 10 (Mital Memo).

**Defendant's Response**: Disputed. The OCD Memo provides no support for this assertion, but instead explains—directly to the contrary—that it was "not necessary" for OCD to "review and resolve . . . any other aspects of the applications." Mital Decl. Ex. 4 (OCD Memo); *see also* Mital Decl. ¶¶ 15-18. Because OS recommended, and OCD agreed, that the toxicological deficiencies were dispositive of Plaintiff's applications, it was not necessary to review and resolve other aspects of the applications beyond toxicology. See Mital Decl. Ex. 4 (OCD Memo) ("Because OCD concurs that the toxicological issues are dispositive of the applications, it is not necessary for OCD to review and resolve (and thus CTP has not resolved) any other aspects of the applications."); 2d Mital Decl. ¶ 6. Doing so would have entailed additional delay before the agency could issue a decision. *See* Mital Decl. Ex. 5 (MDO) at 3 ("In light of the unaddressed deficiencies regarding potential toxicological risks and in the interest of issuing a decision without the additional delay that further analysis would

have required, FDA did not assess whether there might be additional deficiencies relating to initiation, switching, and cessation."); 2d Mital Decl. ¶ 6. Further, as FDA explains *supra* ¶ 37, OCD did not "instruct" OS to issue a MDO based on the Toxicology TPL Review Memo; rather, OCD agreed with OS's recommendation that the agency should issue an MDO based solely on the analysis and findings in the Toxicology TPL Review Memo. 2d Mital Decl. ¶ 5; Mital Decl. Ex. 4 (OCD Memo).

53.     FDA routinely makes all reviews available when it grants marketing authorization. 21 C.F.R. § 1114.47; *see also* Ex. 19 (FDA Premarket Tobacco Product Marketing Granted Orders); Ex. 20 (Vuse Solo Power Unit TPL); Ex. 21 (Logic Regular Cartridge/Capsule Package TPL); Ex. 22 (NJOY ACE POD Rich Tobacco 5% TPL).

**Defendant's Response**:  Disputed in part. When FDA has issued MGOs, the agency has made the MGO letters, and TPL Review Memos that are adopted as the basis of the agency decisions, available on its website. *See* 2d German Decl. ¶ 8; FDA, Premarket Tobacco Product Marketing Granted Orders, https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders. *See also* 21 C.F.R. § 1114.47(c). The MGO letters and TPL Review Memos posted on the agency website have been reviewed and redacted to remove non-public information such as Confidential Commercial Information and Trade Secrets. 2d German Decl. ¶ 8. FDA does not post Discipline Review Letters underlying MGO decisions on its website, but has released them in response to FOIA requests with redactions such as for Confidential Commercial Information and Trade Secrets. *Id.*

54.     FDA also makes available the reviews the agency "considered," "reviewed," or "relied in part on" in reaching its decision. Ex. 1 (July 21, 2022 Final Response) at 2.

**Defendant's Response**: Disputed in part. When FDA denies marketing authorization for tobacco products (that is, when the agency issues Marketing Denial Orders ("MDOs")), FDA does

not routinely post MDO letters, or TPL Review Memos adopted as the basis of the agency

decisions, on its website. *See* 2d German Decl. ¶ 9; FDA, Tobacco Products Marketing Orders,

https://www.fda.gov/tobacco-products/market-and-distribute-tobacco-product/tobacco-products-

marketing-orders#Marketing%20Denial ("Marketing Denial Orders[:] FDA has publicly named only

products that the FDA or the manufacturer has confirmed to be currently marketed, due to

potential confidential commercial information (CCI) issues. Similarly, company names are included

in the MDO list below only if products from that company are currently marketed."). *See also* 21

C.F.R. § 1114.47(d); Pl.'s Ex. 27 (MDO List). However, FDA routinely makes TPL Review Memos

that are adopted as the basis of the agency decisions directly available to applicants in connection

with litigation or pursuant to a request from applicants. 2d German Decl. ¶ 9. Similarly, FDA

provides applicants with Discipline Review Memos that were considered, reviewed, or relied on in

adopted TPL Review Memos. *Id.* Also, when FDA has granted marketing authorization for tobacco

products (that is, when the agency has issued Marketing Granted Orders ("MGOs")), the agency has

made the MGO letters, and TPL Review Memos that are adopted as the basis of the agency

decisions, available on its website. *Id.* ¶ 8; FDA, Premarket Tobacco Product Marketing Granted

Orders, https://www.fda.gov/tobacco-products/premarket-tobacco-product-

applications/premarket-tobacco-product-marketing-granted-orders. *See also* 21 C.F.R. § 1114.47(c).

The MGO letters and TPL Review Memos posted on the agency website have been reviewed and

redacted to remove non-public information such as Confidential Commercial Information and

Trade Secrets. *Id.* FDA does not post Discipline Review Letters underlying MGO decisions on its

website, but has released them in response to FOIA requests with redactions such as for

Confidential Commercial Information and Trade Secrets. *Id.*

55.     The administrative record in a recent D.C. Circuit appeal filed by another ENDS

manufacturer challenging a marketing denial order includes discipline reviews, TPL, and other

internal agency communications across a range of scientific disciplines.  Ex. 23 (*Fontem US, LLC v. FDA*, No. 22-1076, Doc. No. 19560007 (D.C. Cir. July 21, 2022)) at 2, 9–11.

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

Further, and in the alternative, FDA clarifies that when it denies marketing authorization for tobacco products, FDA routinely makes TPL Review Memos that are adopted as the basis of the agency decisions—as was the case with the TPL in question in the above-cited case—directly available to applicants in connection with litigation or pursuant to requests from applicants. 2d German Decl. ¶ 9. Similarly, FDA provides applicants with Discipline Review Memos that were considered, reviewed, or relied on in adopted TPL Review Memos. *Id.*

56.     In another case, FDA made available internal agency memos revealing that the CTP Director pressured the Office of Science not to issue marketing granted orders for a menthol-flavored ENDS product manufactured by Logic.  *See R.J. Reynolds Vapor Co. v. FDA*, Case No. 23-60037, Dkt. 121-1 at 10–11 (5th Cir. Mar. 23, 2023) (Slip Op.).

**Defendant's Response**: Disputed in part. FDA does not dispute that the agency included in the administrative record in the cited action records documenting the existence of a supervisory review and discussion that occurred within CTP, which included robust internal debate and diverging initial views. *Petition for Rehearing En Banc of Order Granting Stay Pending Review*, *R.J. Reynolds Vapor Company et al. v. FDA et al.*, No. 23-60037 (5th Cir. Apr. 7, 2023), ECF No. 145 at 21 n 3. FDA disputes Plaintiff's characterization of the memos as "revealing that the CTP Director pressured the Office of Science not to issue marketing granted orders" for the product, and further

disputes the materiality of that assertion, and the entire allegation in this paragraph, to the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action"). The memos explain that "OS, on its own initiative, . . . reassessed and decided it was reasonable and consistent to treat menthol-flavored ENDS PMTAs in the same way as other non-tobacco-flavored ENDS PMTAs regarding the evidence needed to show a potential benefit to adult smokers." Pl's Ex. 24 at 3.

57.    In the first memo, the Office of Science documented its original science-based conclusion that FDA should grant marketing authorization for Logic's menthol-flavored product. Ex. 24 (10/25/2022 Cecil Memo) at 2.

**Defendant's Response**:  Disputed in part. FDA disputes Plaintiff's characterization of the memo, which did not contemporaneously describe OS's "preliminary recommendation to authorize the marketing of the products," Pl.'s Ex. 24 at 2, but instead stated, at a later point in time, that it "describes how OS's thinking on the analytical approach to applications for menthol-flavored [ENDS] developed over time," *id.* at 1. FDA further disputes the materiality of Plaintiff's assertions, and the cited memo, which is not deliberative, to the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

58.    The same memo shows the CTP Director instructed the Office of Science to treat menthol-flavored products as a disfavored category, after which the Office of Science "reassessed" and reversed its recommendation.  *Id.* at 2–3.

**Defendant's Response**: Disputed in part. FDA does not dispute that the cited memo

contains the word "reassessed." However, in context the quoted statement is that "the OCD Senior

Science Advisor shared OCD's views with OS," and subsequently "OS, *on its own initiative*, then

reassessed and decided it was reasonable and consistent to treat menthol-flavored ENDS PMTAs in

the same way as other non-tobacco-flavored ENDS PMTAs regarding the evidence needed to show

a potential benefit to adult smokers." Pl.'s Ex. 24 at 3 (emphasis added). Plaintiff's assertion

regarding "treat[ing] menthol-flavored products as a disfavored category" has no basis in the cited

memo. FDA further disputes the materiality of Plaintiff's assertions, and the cited memo, which is

not deliberative, to the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are

those facts which, under the governing substantive law, "might affect the outcome of the suit.");

Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining

the action").

      59.     A second memo confirms FDA's changing positions and documents staff concerns

about the decision-making process. Ex. 25 (10/25/2022 King Memo) at 4.

      **Defendant's Response**: Disputed. FDA disputes Plaintiff's characterization of the cited

memo, to which the Court is referred for a complete and accurate statement of its contents.

Defendants clarify, in particular, that this memo states that it "summarizes [CTP's] history and

process in developing an approach for evaluating [PMTAs] for menthol-flavored [ENDS]." Pl.'s Ex.

25, at 1. FDA further disputes the materiality of Plaintiff's assertions, and the cited memo, which is

not deliberative, to the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are

those facts which, under the governing substantive law, "might affect the outcome of the suit.");

Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining

the action").

      60.     Multiple TPL memos and the scientific discipline reviews underlying FDA's shifting

positions are part of the administrative record in Logic's appeal of the marketing denial order for its

menthol-flavored product. *See* Ex. 26 (Administrative Record in *Logic Technology L.L.C. v. FDA*, No. 22-3030, ECF 33 (3d Cir.)).

> **Defendant's Response**: Disputed in part. FDA does not dispute that there are to two TPL Review Memos in the administrative record for the above-cited case. FDA disputes Plaintiff's characterization of the memos and discipline reviews in the cited administrative record as "underlying FDA's shifting positions," and further disputes the materiality of that assertion to the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action"). As relevant to the instant FOIA suit, when FDA denies marketing authorization for tobacco products, FDA routinely makes TPL Review Memos that are adopted as the basis of the agency decisions directly available to applicants in connection with litigation or pursuant to requests from applicants. 2d German Decl. ¶ 9. Similarly, FDA provides applicants with Discipline Review Memos that were considered, reviewed, or relied on in the aforementioned TPL Review Memos. *Id.*

> Further, as FDA explained in the MDO, "in light of the unaddressed deficiencies regarding potential toxicological risks and in the interest of issuing a decision without the additional delay that further analysis would have required, FDA did not assess whether there might be additional deficiencies relating to initiation, switching, and cessation" in Plaintiff's applications, Mital Decl. Ex. 5 (MDO) at 3, and the Additional Disciplines TPL Review Memo relates to those areas in which the agency's deliberations were not completed. There was no similar limitation in the scope of the basis for FDA's decision on the applications at issue in the cited *Logic* litigation.

61.    In at least a dozen cases over the past three years, FDA has voluntarily rescinded marketing denial orders or had those orders set aside by a federal court, with FDA placing the application back in scientific review. *See* Pl.'s Ex. 27 (FDA MDO List).

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

62.    In *Al Khalifa Group v. FDA*, No. 21-71340 (9th Cir.), the administrative record includes the scientific discipline reviews and TPL memo supporting FDA's subsequently rescinded marketing denial order.  FDA did not withhold those materials based on the deliberative process privilege.  *See* Ex. 28 (Administrative Record in *Al Khalifa Group v. FDA*, No. 21-71340 (9th Cir.)).

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

Further, and in the alternative, FDA clarifies that when it denies marketing authorization for tobacco products, FDA routinely makes TPL Review Memos that are adopted as the basis of the agency decisions—as was the case with the TPL in question in the above-cited case—directly available to applicants in connection with litigation or pursuant to requests from applicants. 2d German Decl. ¶ 9. Similarly, FDA provides applicants with Discipline Review Memos that were considered, reviewed, or relied on in the aforementioned TPL Review Memos. *Id.*

63.    In *Bidi Vapor LLC v. FDA*, No. 21-13340 (11th Cir.), the administrative record includes the scientific discipline reviews and TPL memo supporting FDA's subsequently rescinded marketing denial order.  FDA did not withhold those materials based on the deliberative process privilege.  *See* Ex. 29 (Administrative Record in *Bidi Vapor LLC v. FDA*, No. 21-13340 (11th Cir.)).

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

Further, and in the alternative, FDA clarifies that when it denies marketing authorization for tobacco products, FDA routinely makes TPL Review Memos that are adopted as the basis of the agency decisions—as was the case with the TPL in question in the above-cited case—directly available to applicants in connection with litigation or pursuant to requests from applicants. 2d German Decl. ¶ 9. Similarly, FDA provides applicants with Discipline Review Memos that were considered, reviewed, or relied on in the aforementioned TPL Review Memos. *Id.*

64.     In *My Vape Order Inc. v. FDA*, No. 21-71302 (9th Cir.), the administrative record includes the scientific discipline reviews and TPL memo supporting FDA's subsequently rescinded marketing denial order.  FDA did not withhold those materials based on the deliberative process privilege.  *See* Ex. 30 (Administrative Record in *My Vape Order Inc. v. FDA*, No. 21- 71302 (9th Cir.)).

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

Further, and in the alternative, FDA clarifies that when it denies marketing authorization for tobacco products, FDA routinely makes TPL Review Memos that are adopted as the basis of the agency decisions—as was the case with the TPL in question in the above-cited case—directly available to applicants in connection with litigation or pursuant to requests from applicants. 2d

German Decl. ¶ 9. Similarly, FDA provides applicants with Discipline Review Memos that were considered, reviewed, or relied on in the aforementioned TPL Review Memos. *Id.*

65.     In *Fumizer, LLC v. FDA*, No. 21-71315 (9th Cir.), the administrative record includes the scientific discipline reviews and TPL memo supporting FDA's subsequently rescinded marketing denial order.  FDA did not withhold those materials based on the deliberative process privilege.  *See* Ex. 31 (Administrative Record in *Fumizer, LLC v. FDA*, No. 21-71315 (9th Cir.)).

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

Further, and in the alternative, FDA clarifies that when it denies marketing authorization for tobacco products, FDA routinely makes TPL Review Memos that are adopted as the basis of the agency decisions—as was the case with the TPL in question in the above-cited case—directly available to applicants in connection with litigation or pursuant to requests from applicants. 2d German Decl. ¶ 9. Similarly, FDA provides applicants with Discipline Review Memos that were considered, reviewed, or relied on in the aforementioned TPL Review Memos. *Id.*

66.     In the pharmaceuticals context, FDA "shall … refer a drug or biological product to a[n] … advisory committee for review" if the active molecule has never been approved before. *See* 21 U.S.C. § 355(s)(1).

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit, which does not implicate FDA's advisory committee procedures, nor any specific FDA advisory committee that FDA has ever convened. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which,

under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401

(stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

67.     "Advisory committees," in turn, hold proceedings that are public unless they are

expressly closed, 21 C.F.R. § 14.20(b) (4–6), with the presumption being that proceedings on a drug

application "ordinarily may not be closed," 21 C.F.R. § 14.27(b)(4).

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion that

FDA's advisory committees hold public proceedings unless a portion of the proceedings is expressly

closed, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit,

which does not implicate FDA's advisory committee procedures, nor any specific FDA advisory

committee that FDA has ever convened. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are

those facts which, under the governing substantive law, "might affect the outcome of the suit.");

Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining

the action").

FDA further disputes that the presumption is that proceedings on a drug application

"ordinarily may not be closed." 21 C.F.R. § 14.27(b)(4). FDA's regulations at 21 C.F.R. § 14.27(b)(3)

specify that "[p]ortions of meetings may ordinarily be closed if they concern the … review of trade

secrets and confidential commercial or financial information." The quoted portion of 21 C.F.R. §

14.27(b)(4) refers to "review of information on specific investigational or marketed drugs . . . that

have previously been made public."

68.     For a recent application for a birth-control drug FDA held a public advisory

committee meeting, where FDA staff knowingly provided participants with a "briefing document"

containing "assessments and/or conclusions and recommendations written by individual FDA

reviewers." *See* Ex. 32 (October 30, 2019 Advisory Committee Meeting Briefing Document).

**Defendant's Response**: Disputed, including first as to materiality to the issues presented by

the instant FOIA suit, which does not implicate FDA's advisory committee procedures, nor any specific FDA advisory committee that FDA has ever convened. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

Further, Plaintiff's asserted quotation beginning with "assessments" and its suggestion that the briefing document the advisory committee received represented only the views of "individual FDA reviewers" and not the agency itself does not appear in the cited document. To the contrary, that document characterizes *the agency's* tentative view and requests input from the advisory committee, for example, by stating, "The FDA agrees with the Applicant that… The FDA does not believe that the data show a safety advantage… The FDA appreciates your input on the benefits and risks…" Pl.'s Ex. 32 at 10-11.

69.     The briefing document criticized the drug, stating that "FDA does not believe that the data show a safety advantage," and that its pregnancy-reduction rate was "unacceptable." *Id.* at 10–11.

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit, which does not implicate FDA's advisory committee procedures, nor any specific FDA advisory committee that FDA has ever convened. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

70.     The Advisory Committee voted 14-1 to approve the drug anyway, *see* Ex. 33 (Meeting Minutes) at 6, and FDA in fact granted marketing authorization to the drug thereafter, *see* Ex. 19.

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit, which does not implicate FDA's advisory committee procedures, nor any specific FDA advisory committee that FDA has ever convened. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

Further, to the extent that Plaintiff's phrasing might suggest otherwise, FDA clarifies that, per 21 C.F.R. § 14.5(a), "[a]n advisory committee is utilized . . . to provide advice and recommendations to the Commissioner."

71.     "On July 19, 2022, the U.S. Food and Drug Commissioner Robert Califf requested that the Reagan-Udall Foundation," a nonprofit organization created by Congress, "convene an Independent Expert Panel … to conduct an evaluation of the FDA Center for Tobacco Products (CTP) with the aim of addressing immediate issues and providing recommendations for greater success in the future." *See* Ex. 40 ("Operational Evaluation of Certain Components of FDA's Tobacco Program," Reagan-Udall Foundation) ("Reagan-Udall Report") at 5.

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

72.     The resulting report wrote that "[t]he lack of clarity about CTP's direction, its priorities, and its near-term and longer-term goals and objectives, hinders CTP's ability to effectively carry out its mission," and that "[a] primary concern was the lack of clarity regarding how [FDA] is applying the [appropriate for the protection of public health] standard." *See id.* at 13, 16.

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

73.     The report recommended "[p]roviding more details in public summaries of Marketing Granted Orders, and providing summaries at regular intervals of deidentified reasons why Marketing Denial Orders were issued to provide applicants more insight into CTP's regulatory decision-making process." *Id.* at 19.

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

74.     The report further explained: "CTP must do a better job of explaining how and why it weighs the evidence, explicitly quantifying the trade-offs it is willing to accept, and distinguishing policy judgments from scientific information and determinations." *Id.* at 15; *see also id.* at 5 (recommending that CTP "do a better job explaining" its decisions to industry).

**Defendant's Response**: Disputed in part. FDA does not dispute the above assertion, but does dispute the materiality of this fact to the issues presented by the instant FOIA suit. *See, e.g., Anderson*, 477 U.S. at 248 ("Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action").

75.     The marketing denial order is publicly available such that the public can read for

itself FDA's stated basis for its decision.  Ex. 6 (MDO) at 2; *see also*

https://www.juullabsscience.com/wp-content/uploads/sites/8/2022/10/CourtesyCopy-JUUL-No-Marketing-Order-Letter-Redacted-FINAL-2022-08-08_Redacted.pdf (visited April 5, 2023).

**Defendant's Response**: Undisputed, with the clarification that Plaintiff published a redacted version of the MDO (protecting what Plaintiff deemed to be its Confidential Commercial Information and/or Trade Secret) itself, on Plaintiff's website, before FDA released a redacted copy of the MDO to any third parties. FDA does not routinely post MDO letters, or TPL Review Memos adopted as the basis of the agency decisions, on its website. *See* 2d German Decl. ¶ 9; FDA, Tobacco Products Marketing Orders, https://www.fda.gov/tobacco-products/market-and-distribute-tobacco-product/tobacco-products-marketing-orders#Marketing%20Denial ("Marketing Denial Orders[:] FDA has publicly named only products that the FDA or the manufacturer has confirmed to be currently marketed, due to potential confidential commercial information (CCI) issues. Similarly, company names are included in the MDO list below only if products from that company are currently marketed."). *Id.*; *see also* 21 C.F.R. § 1114.47(d).

## DEFENDANT'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS

37.   The Toxicology TPL Review Memo indicates, to the left of Dr. Holman's signature that it represents "Signatory Decision." 2d German Decl. ¶ 5.

38.   By contrast, the Additional Disciplines TPL Review Memo indicates to the left of Dr. Holman's signature that it represents "Supervisory OS Review." *Id.*.

39.   CTP uses "Signatory Decision" to denote the concurrence of the individual with delegated authority to make the relevant agency decision. *Id.*

40.    By contrast, "Supervisory OS Review" does not relate to delegated authority to make a final agency decision; it simply means that an individual at least one level above the document's author in the organization performed the review. *Id.*

41.    The Additional Disciplines TPL Review Memo contains no new or additional analysis of toxicological risk, beyond that made in the Toxicology TPL Review Memo—but rather only cross-references the Toxicology TPL Review Memo's discussion of those issues as needed to provide context for the analysis of other disciplines that the Additional Disciplines TPL Review Memo does contain. *Id.* ¶ 6.

42.    When FDA has issued MGOs, the agency has made the MGO letters, and TPL Review Memos that are adopted as the basis of the agency decisions, available on its website. *Id.* ¶ 8; *see* FDA, Premarket Tobacco Product Marketing Granted Orders, https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders. *See also* 21 C.F.R. § 1114.47(c).

43.    FDA does not post Discipline Review Memos underlying MGO decisions on its website, but has released such memos that were considered, reviewed, or relied on in the aforementioned TPL Review Memos in response to FOIA requests with redactions such as for Confidential Commercial Information and Trade Secrets. *See id.*; 2d German Decl. ¶ 8

44.    When FDA issues MDOs, FDA does not routinely post MDO letters, or TPL Review Memos adopted as the basis of the agency decisions, on its website. 2d German Decl. ¶ 9; *see* FDA, Tobacco Products Marketing Orders, https://www.fda.gov/tobacco-products/market-and-distribute-tobacco-product/tobacco-products-marketing-orders#Marketing%20Denial ("Marketing Denial Orders[:] FDA has publicly named only products that the FDA or the manufacturer has confirmed to be currently marketed, due to potential confidential commercial information (CCI)

issues. Similarly, company names are included in the MDO list below only if products from that company are currently marketed."). *See also* 21 C.F.R. § 1114.47(d).

      45.    However, FDA routinely makes TPL Review Memos that are adopted as the basis of the agency decisions directly available to the applicant in connection with litigation or pursuant to a request from the applicant. 2d German Decl. ¶ 9.

      46.    Similarly, FDA provides applicants with Discipline Review Memos that were considered, reviewed, or relied on in the aforementioned TPL Review Memos. *Id.*

Dated: May 11, 2023                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           MARCIA BERMAN
                                           Assistant Branch Director

                                                */s/ Antonia Konkoly*
                                           Antonia Konkoly
                                           Trial Attorney
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L St. NW
                                           Washington, DC 20005
                                           (202) 514-2395 (direct)
                                           antonia.konkoly@usdoj.gov
                                           *Counsel for the Defendant*

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
Dep't of Health and Human Services

MARK RAZA
Chief Counsel
Food and Drug Administration

WENDY S. VICENTE
Deputy Chief Counsel for Litigation

Food and Drug Administration

JULIE B. LOVAS
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration