**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JUUL LABS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:22-CV-02853-RDM |
| v. | ) |
| | ) |
| U.S. FOOD & DRUG ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**PLAINTIFF JUUL LABS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS**</u>
<u>**CROSS MOTION FOR SUMMARY JUDGMENT**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**INTRODUCTION**............................................................................................................ 1

**ARGUMENT** .................................................................................................................. 3

**I.** **FDA HAS NOT IDENTIFIED ANY FORESEEABLE HARM THAT WILL RESULT FROM DISCLOSURE.** ....................................................................... 3

    A.    FDA's Chilling-Effects Concerns Are Speculative And Repeat Arguments Vanda Rejected. ........................................................................................ 4

    B.    FDA's Concerns About Confusion Unfairly Attack JLI's Intentions. ................... 9

**II.** **THE WITHHELD DOCUMENTS ARE NOT PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE, AND FDA HAS NOT RELEASED ALL REASONABLY SEGREGABLE INFORMATION** ................... 10

    A.    The Second TPL Review Memo—And The Discipline Reviews It Incorporates—Are Not "Predecisional." ............................................................. 10

    B.    The Withheld Documents are Not "Deliberative," Or, At the Very Least, They Likely Include Reasonably Segregable Factual Information That FDA Must Disclose ................................................................................ 14

**III.** **IF THE COURT DOES NOT ORDER IMMEDIATE DISCLOSURE, IT SHOULD ORDER DISCOVERY AND INSPECT THE WITHHELD DOCUMENTS IN CAMERA.** ...................................................................... 16

**CONCLUSION** ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100Reporters LLC v. U.S. Dept. of Just.*,
  248 F. Supp. 3d 115 (D.D.C. 2017) .....................................................................17

*Allen v. CIA*,
  636 F.2d 1287 (D.C. Cir. 1980) ..........................................................................17

*Am. Civil Liberties Union v. U.S. Dep't of Def.*,
  628 F.3d 612 (D.C. Cir. 2011) ............................................................................13

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................12

*Campaign Legal Ctr. v. U.S. Dep't of Just.*,
  34 F.4th 14 (D.C. Cir. 2022) ..............................................................................13

*Ctr. for Biological Diversity v. EPA*,
  279 F. Supp. 3d 121 (D.D.C. 2017) ...............................................................14, 15

*Ctr for Investigative Reporting v. U.S. Customs & Border Prot.*,
  436 F. Supp. 3d 90 (D.D.C. 2019) ......................................................................15

*Fontem US, LLC v. FDA*,
  No. 23-1021 (D.C. Cir. Jan. 25, 2023) ................................................................12

*Grimes v. District of Columbia*,
  794 F.3d 83 (D.C. Cir. 2015) ..............................................................................16

*Internet Fin. Servs., LLC v. Law Firm of Larson-Jackson, P.C.*,
  310 F. Supp. 2d 1 (D.D.C. 2004) ..........................................................................6

*James Madison Ltd. by Hecht v. Ludwig*,
  82 F.3d 1085 (D.C. Cir. 1996) ............................................................................10

*Senate of the Commonwealth of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Just.*,
  823 F.2d 574 (D.C. Cir. 1987) ............................................................................12

*Juul Labs, Inc. v. FDA*,
  D.C. Cir. No. 22-1123, ECF No. 1952074 (June 24, 2022) ................................10

*Nat'l Ass'n of Home Builders v. Norton*,
  309 F.3d 26 (D.C. Cir. 2002) ..............................................................................14

*Parke, Davis & Co. v. Califano*,
   623 F.2d 1 (6th Cir. 1980) ...................................................................14

*Pavement Coatings Tech. Council v. U.S. Geological Survey*,
   995 F.3d 1014 (D.C. Cir. 2021) .............................................................6

*Pinson v. U.S. Dep't of Just.*,
   202 F. Supp. 3d 86 (D.D.C. 2016) .........................................................15

*Quinon v. FBI*,
   86 F.3d 1222 (D.C. Cir. 1996) ..............................................................17

*Reps. Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ...............................................................4, 9

*Scudder v. CIA*,
   25 F. Supp. 3d 19 (D.D.C. 2014) ...........................................................16

*Sierra Club v. U.S. Fish & Wildlife Serv.*,
   523 F. Supp. 3d 24 (D.D.C. 2021) .....................................................15, 16

*Sterling Drug Inc. v. Harris*,
   488 F. Supp. 1019 (S.D.N.Y. 1980) ........................................................14

*Tom Sawyer Productions, Inc v. Progressive Partners Achieving Solutions, Inc.*,
   550 F. Supp. 2d 23 (D.D.C. 2008) ...........................................................6

*Trea Senior Citizens League v. U.S. Dep't of State*,
   994 F. Supp. 2d 23 (D.D.C. 2013) ..........................................................12

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   141 S. Ct. 777 (2021) ...........................................................................11

*Vanda Pharmaceuticals, Inc. v. FDA*,
   2023 WL 2645714 (D.D.C. Mar. 27, 2023)............................................. *passim*

**Statutes**

5 U.S.C. § 552(a)(8)(A)(i)(1) ...........................................................................3

21 U.S.C. §§ 387j(c)(4)-(5)...............................................................................3

**Regulations**

21 C.F.R. § 1114.47(c)....................................................................................10

21 C.F.R. § 1114.47(c)-(d)................................................................................5

## INTRODUCTION

FDA's opposition underscores why FOIA exists in the first place—to promote transparency with respect to agency action that affects both regulated parties and the general public. Here, the agency's decision-making process was unorthodox, and its opposition to disclosure heightens the need for transparency. FDA took the unprecedented step of authoring two different TPL Review memos. It changed the signature block on the second memo apparently in the hope of shielding it from the public as predecisional. FDA then excluded the second memo from the agency's usual document repository, a decision that ensured even FDA's own FOIA officers were unaware the memo existed when responding to JLI's FOIA requests. Each of these actions suggests a decision by FDA to segregate the scientific recommendations it wants to make public from the information it would prefer to keep secret. Moreover, FDA claims it decided to deny JLI's applications before finishing its scientific review. That is the opposite of the comprehensive, holistic review the Tobacco Control Act requires, and if true, demonstrates the need for disclosure by revealing a flawed process.

At the same time that FDA fights to keep the second TPL Review memo secret, it selectively discloses parts of that document to bolster its argument. FDA now reveals who signed the second TPL Review memo (Dr. Holman), what Dr. Holman thought about the analysis in that memo (he agreed with its recommendations), and that FDA replaced the standard "Signatory Decision" signature block with a new label: "Supervisory OS Review." Mital Decl. ¶ 18; 2d German Decl. ¶ 5. We are even told the second TPL Review memo ultimately recommended denying JLI's applications, which raises the question why the reasons should remain a secret. *Id.* ¶ 7. FDA's selective invocation of the deliberative process privilege is a vivid illustration of the abusive privilege assertions Congress sought to end through the FOIA Improvement Act of 2016.

In these circumstances, the public interest favors transparency.  Disclosing the withheld materials poses no risk of harm to the agency's deliberative process.  FDA regularly makes its TPL review memos and disciplinary reviews available for other tobacco products.  JLI identified a dozen cases where FDA placed applications back in scientific review after disclosing the scientific reviews underlying its initial decision to deny those applications.  In none of those cases did FDA suggest that sharing the prior reviews undermined the ability of the agency and its scientists to fairly re-assess their prior conclusions.

FDA's other asserted harms are contrived or mischaracterize JLI's arguments.  There is no evidence that the authors of an unknown number of scientific reviews "prepared near the end of the review process" wrote those reviews knowing FDA had already decided to deny JLI's applications based on toxicology alone.  FDA Reply 9.  And FDA has no basis to accuse JLI of planning to portray the withheld materials "as the FDA's final word on their contents." *Id.* at 1.  Those documents contain the factual and scientific findings of FDA's scientific reviewers, not FDA's official position.  Courts and the general public are more than capable of appreciating that distinction.

This case thus remains on all fours with *Vanda Pharmaceuticals, Inc. v. FDA*, 2023 WL 2645714 (D.D.C. Mar. 27, 2023).  Both cases involve the same agency, the same type of underlying dispute, the same purported privilege, and the same practice of regularly disclosing agency work product.  The outcome should be the same too, and this Court can begin and end its analysis by rejecting FDA's misplaced concerns about harm.

In all events, the deliberative process privilege does not apply in the first place.  Look no further than FDA's litigation position that the reviewers who drafted the second TPL Review memo and many of the underlying discipline reviews were already aware that FDA had decided

to deny JLI's applications based on toxicology alone.  Documents drafted after a decision is already made are, by definition, not predecisional.  And they are not deliberative in any meaningful sense either.  The FDA would have the Court believe that these documents are essentially make-work projects that served no discernable purpose and were never intended to inform FDA's decision—again, a position at odds with the Tobacco Control Act's requirements of a holistic review, *see* 21 U.S.C. §§ 387j(c)(4)-(5).  These problems, combined with the arguments in JLI's opening brief, confirm the withheld documents are not ones the deliberative process privilege is supposed to protect.

FDA thus has no path to success here.  If the Court rejects FDA's unsupported assertions about when its reviewers learned the agency would deny JLI's applications based on toxicology alone, the agency cannot establish foreseeable harm.  If the Court accepts FDA's assertions, then the withheld documents are not privileged in the first place.  Either way, the Court should grant summary judgment in JLI's favor.  The Court should also issue its decision quickly.  FDA is considering an internal administrative appeal of its decision right now.  The company deserves the opportunity to respond to all of FDA's concerns at the same time—even if those concerns are, as FDA claims, only preliminary—and to convince the agency it can perform the statutorily required balancing using the full set of scientific reviews FDA already conducted.  JLI cannot do that while FDA improperly withholds most of its scientific reviews.

## ARGUMENT

## I.    FDA HAS NOT IDENTIFIED ANY FORESEEABLE HARM THAT WILL RESULT FROM DISCLOSURE.

Agencies may "withhold information … only if … disclosure would harm an interest protected by" the deliberative process privilege or another FOIA exemption.  5 U.S.C. § 552(a)(8)(A)(i)(1).  No one disputes this "distinct foreseeable harm requirement" requires FDA

to "explain how disclosure *would*—not *could*—adversely impair internal deliberations." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021). FDA repeats the same concerns about chilling effects and public confusion it offered in its opening brief, but still cannot show disclosure of the second TPL Review memo and the nineteen scientific reviews would cause either harm. FDA reviewers are career scientists who are required to fairly and objectively re-evaluate their work all the time, even if their prior conclusions were publicly disclosed. As for confusion, there is no real likelihood releasing the withheld documents would cause confusion. The second TPL Review memo apparently comes to the same conclusion as the publicly available toxicology memo. 2d German Decl. ¶ 7. JLI certainly has no intention of confusing the public about the basis for FDA's marketing denial order. The order is publicly available and its flaws— including FDA's failure to consider over 6,000 pages of toxicological data JLI submitted—are self-evident.

### A.   FDA's Chilling-Effects Concerns Are Speculative And Repeat Arguments *Vanda* Rejected.

FDA barely defends its original argument that public disclosure could discourage reviewers from revising their analysis as part of FDA's ongoing supervisory review. The argument never made sense. As FDA now concedes, over the past three years, there have been at least a dozen examples of FDA rescinding marketing denial orders and placing applications back in scientific review *after* sharing the relevant scientific discipline reviews and TPL memo with the applicant. *See* ECF 25-3 at 22-25. FDA's position casts doubt on its ability to fairly re-review these applications. *See* JLI Br. 17-18. Even in this case, the marketing denial order was ostensibly based exclusively on toxicological concerns, the toxicology reviews are at the core of the ongoing supervisory review process, and yet the key toxicology documents have already been provided to JLI. *Id.* at 8-9. If disclosure truly would compromise supervisory review or "discourage that

reviewer or others from appropriately refining or revising that analysis," Mital Decl. ¶ 23, then such harms have already occurred.

FDA tries to distinguish these examples by arguing that in each one the agency relied on the relevant reviews in its authorization or denial orders, *see* FDA Reply 9, but that is a distinction without a difference.  FDA offers no evidence a reviewer whose work the agency relied on in a marketing denial order is more likely to reconsider his or her position in a subsequent proceeding than a reviewer whose work the agency did not consider.  Instead, FDA contends that the reviewers "who worked on the withheld records would not know, at the time they created them, that their work would necessarily be made public."  *Id.*  The reviewers in each of JLI's examples were in the exact same position when they authored their reviews, as were the reviewers in *Vanda*, who likewise "[d]id not know whether or not an application w[ould] be approved when the reviews [we]re compiled."  2023 WL 2645714, at *4.  The reviewers first write the reviews, the TPL Review memo then "aggregates and assesses the contents of" those reviews, and FDA ultimately decides whether to grant or deny an application based on those recommendations.  Mital Decl. ¶¶ 10-12.

A reviewer cannot reasonably expect that a review will remain private in these circumstances.  As in *Vanda*, the reviewer does not know whether the final decision will rely on his or her analysis but does know the analysis will become public if the FDA grants marketing authorization or relies on the review in an unfavorable decision.  *See* 2023 WL 2645714, at *3-4; 21 C.F.R. § 1114.47(c)-(d).  *And FDA has released dozens of scientific discipline reviews with hundreds more available through a FOIA request*—a point JLI made in its opening brief and that FDA again does not dispute.  *See* JLI Br. 14, 17; ECF 25-3 at 17-18, 21-25.  "Disclosure cannot chill deliberations if those deliberating do not reasonably expect their deliberations to remain

private."  *Vanda*, 2023 WL 2645714, *4; *see also Pavement Coatings Tech. Council v. U.S. Geological Survey*, 995 F.3d 1014, 1023 (D.C. Cir. 2021) (when typical practice results in public disclosure, an agency "cannot meet its burden of justifying … categorical withholding").

FDA nonetheless insists that some of its scientists "had every reason to believe" FDA would not rely on their reviews as they were drafting them.  FDA Reply 1-2, 9-10.  The scientists who worked on the second TPL Review memo and an unidentified number of scientific discipline reviews "prepared near the end of the review process," according to FDA, knew as they were finalizing their drafts that the Office of Science would recommend denying JLI's applications based solely on toxicological issues.  *Id.* at 9-10.  There are several problems with this argument. FDA does not identify which reviewers were supposedly privy to the denial decision or which of the nineteen withheld scientific discipline reviews are covered by this argument.  At least eleven of those reviews were authored more than a year before the two TPL Review memos were finalized.  *See* Ex. 2 at 1-4, 7; Ex. 3 at 1.[*]

There is also no evidence supporting FDA's litigation position.  FDA has submitted four declarations from agency employees, but none of those declarations make representations about what agency scientists "had every reason to believe," whether any of the discipline review authors knew what the Office of Science would recommend, or when FDA settled on that recommendation.  The agency instead relies exclusively on attorney argument, which is no substitute for actual evidence.  *See, e.g.*, *Tom Sawyer Productions, Inc v. Progressive Partners Achieving Solutions, Inc.*, 550 F. Supp. 2d 23, 29 (D.D.C. 2008); *Internet Fin. Servs., LLC v. Law Firm of Larson-Jackson, P.C.*, 310 F. Supp. 2d 1, 4 (D.D.C. 2004).

---

[*] All exhibit citations refer to those exhibits submitted with JLI's opening brief.  *See* ECF 19.

A memo authored by Michelle Mital, the then-Acting Director of CTP, affirmatively refutes FDA's litigation stance by explaining that the decision was not made until after all the reviews were in and compiled into the two TPL review memos.  The scientist who authored the TPL Review memos did not have final say over how FDA would resolve JLI's applications.  Even within the Office of Science, the scientist needed sign-off from Matthew Holman.  Mital Decl. ¶¶ 11, 18.  According to the Mital memo, the Office of the Center Director further "advised" the Office of Science that the CTP Director "would review any conclusions reached by OS for" JLI's products "before those conclusions became a final agency decision."  Ex. 10 at 1.  The Office of Science sent the CTP Director both TPL Review memos, and the Director "initiated review of the conclusions reached by OS."  *Id.*

At that time, it was possible the Center Director could have based FDA's decision on both memos.  The Mital memo thus confirms FDA stepped right up to the edge of relying on the second TPL Review memo in its marketing denial order.  By sending the memo to the Center Director, the Office of Science indicated it was prepared to make the second TPL Review memo a public part of FDA's decision and the TPL's findings the scientific basis for that decision.  *See* Mital Decl. ¶ 18; Ex. 10 at 1.  It would not serve any purpose underlying the deliberative process privilege to permit agencies to keep documents confidential where the documents authors were comfortable sharing their conclusions publicly.  That is especially true where the Mital memo reveals the deliberations within the Office of the Center Director after the deliberative process concluded within the Office of Science.  The absence of any concern that making available the Second TPL Review memo might implicitly reveal non-public deliberations within the Office of the Center director is why the public availability of the Mital memo "bear[s] on whether the Additional Disciplines TPL Review Memo must also be made public."  FDA Reply 11.

In any event, only after the Center Director "agree[d]" that the marketing denial order should deny JLI's applications "on the basis of the toxicological deficiencies alone" was it clear that the marketing denial order would not rely on the other discipline reviews. Ex. 10 at 1. FDA's declarants never suggest the agency's scientists were still finishing their disciplinary reviews when Ms. Mital, acting as the Center Director, finalized her decision. It follows that no matter which scientific discipline reviews the Office of Science recommended FDA rely on in its marketing denial order, none of FDA's scientists *knew* those would be the only reviews relied on in the marketing denial order. The Center Director has overruled the Office of Science on other occasions. *See* JLI Br. 14-15. Perhaps even more importantly, any reviewers who genuinely believed their review memos would remain forever confidential were making speculative predictions about the future. An application denied on one ground today may be approved or denied on a different ground tomorrow.

Without any evidence that the authors of the withheld documents reasonably expected their views would remain private, FDA has no answer to *Vanda*. Like here, FDA resisted turning over its clinical and statistical reviews for a product that the agency did not approve. *See Vanda*, 2023 WL 2645714, at *1. Judge Cooper was "not convinced" disclosure would cause any harm because, again like here, "FDA currently discloses clinical and scientific reviews to the public in a variety of circumstances" and the clinical reviewers are "unaware during the review process whether their work will be made public under any of th[ose] circumstances." *Id.* at *3-4. To the extent this case differs in any meaningful way, it is only because FDA's actions here are even more extraordinary. Withholding a second TPL Review memo signed the same day as the marketing denial order— and signed using a signature block altered to support the agency's arguments for secrecy—strongly

suggests that the deliberative process privilege does not apply and accentuates the need for transparency.

**B.      FDA's Concerns About Confusion Unfairly Attack JLI's Intentions.**

FDA does not tie its concerns about confusion to specific documents and unfairly questions JLI's intentions.  JLI has no "plans to portray the withheld documents as statements of FDA's final position" and does not "intend[] to use the records to" sow "public confusion."  FDA Reply 7.  "[P]rovid[ing] a complete picture of what *FDA reviewers* thought about [JLI's] applications" or accurately describing what *FDA reviewers* wrote down is not the same as saying those views represent *FDA's official position*.  *See* FDA Reply at 7 (quoting ECF 18-1 at 3) (emphasis added).  JLI likewise crossed no lines by stating "we ought to be able to tell the public" what the withheld documents say.  FDA Reply 8 (quoting ECF 24 at 10:9-10).  FDA may prefer to keep the work of its scientists secret, but "disclosure, not secrecy, is" FOIA's "dominant objective."  *Reps. Comm. for Freedom of the Press*, 3 F.4th at 357.

FDA's apparent displeasure that JLI made the marketing denial order available on its non-commercial website dedicated to sharing information with the scientific and public-health communities does not help the agency carry its burden.  *See* FDA Reply 8.  JLI posted the order on its website without editorializing about its content so interested members of the public could read it for themselves.  JLI needed to make the marketing denial order widely available to counter FDA's misleading narrative through press releases that it denied JLI's applications to punish JLI for "play[ing] a disproportionate role in the rise in youth vaping."  Ex. 35.  FDA's press release—which is still available on FDA's website—is far more likely to confuse the public than making the requested materials available.  But the public can read the publicly available order and the Court should trust the public enough to let them draw their own conclusions.

9

*     *     *

After two briefs and four declarations, FDA has not established any harm will result from disclosing the second TPL Review memo or the scientific discipline reviews.  Further confirming the point, these documents will very likely become public eventually.  JLI's pending appeal of the marketing denial order is stayed while FDA conducts its supervisory review.  *See Juul Labs, Inc. v. FDA*, D.C. Cir. No. 22-1123, ECF No. 1952074 (June 24, 2022).  The administrative record in that appeal must include "all materials … that were before the agency at the time the decision was made," including the documents FDA refuses to turn over.  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (internal quotation marks omitted).  The two possible outcomes once FDA concludes its supervisory review (and any subsequent further scientific review) are accordingly that FDA will again deny JLI's applications, in which case the documents will become part of the administrative record on appeal, or FDA will grant the applications, in which case the documents should become public under 21 C.F.R. § 1114.47(c).  Either way, the documents will almost certainly be disclosed at the end of the review process.  Given that reality, the agency cannot establish harm from disclosing the documents to JLI now.

II.     **THE WITHHELD DOCUMENTS ARE NOT PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE, AND FDA HAS NOT RELEASED ALL REASONABLY SEGREGABLE INFORMATION.**

A.      **The Second TPL Review Memo—And The Discipline Reviews It Incorporates—Are Not "Predecisional."**

Even if FDA could meet its burden to establish foreseeable harm, the agency has not shown the requested documents are predecisional.  The relevant facts are not in dispute.  The marketing denial order and both TPL Review memos were all signed the same day.  *See* Ex. 6 at 13; Ex. 3 at 1, Ex. 2 at 7.  All three were signed by Matthew Holman, an agency official with authority "to approve or deny applications" and "to deny applications and to provide information about the

measures required to remove the application from deniable form." *See* FDA Staff Manual Guides § 1410.1103 at 1.F, 1.G; Mital Decl. ¶ 7. His signature reflects his "concur[rence] with [the] TPL['s] findings and conclusions." Mital Decl. ¶ 18.

FDA cannot answer the decisive question posed by these undisputed facts. Why would Dr. Holman sign all three documents at the same time unless, like the other two documents, the second TPL Review memo reflects the agency's "settled position" and "final view" on the issues it covers? *See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786-87 (2021). When taking final agency action, agency officials do not typically pause to review and sign predecisional documents that formed no part of the agency's final decision.

Attempting to sidestep this fundamental problem, FDA invokes an arbitrary distinction between a "Signatory Decision" and "Supervisory OS Review." The agency contends Dr. Holman signed the toxicology TPL Review memo using the label "Signatory Decision" to indicate he signed using delegated power to take final agency action, but signed the other TPL Review memo next to the label "Supervisory OS Review" because he signed that document merely in his role as a supervisor within the Office of Science. *See* FDA Reply 4 (citing 2d German Decl. ¶ 5). This distinction does not appear in any FDA rule, regulation, or guidance manual. FDA also does not point to any other TPL Dr. Holman signed as a supervisor, rather than as one of the FDA decisionmakers imbued with final decision-making authority. "Supervisory OS Review" appears to be a label FDA used solely to support its efforts to keep the contents of the second TPL Review memo secret.

Treating the label FDA puts on the signature block as dispositive elevates form over substance. The label next to Dr. Holman's signature makes no difference. The final sign-off on a TPL Review memo by an agency official with authority to grant or deny an application has "direct

and appreciable legal consequences." *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  By "signing" the second TPL review memo, Dr. Holman rendered that decision "sufficiently 'final'" for deliberative-process purposes regardless of the label next to his name.  *Trea Senior Citizens League v. U.S. Dep't of State*, 994 F. Supp. 2d 23, 35-36 (D.D.C. 2013).

To be clear, JLI is not arguing that Dr. Holman's delegated authority strips the CTP Director of her authority to "exercise oversight over" Dr. Holman.  FDA Reply 4.  The Director has stated that she has the authority to supervise everyone in the Center for Tobacco Products and, as a practical matter, could have ordered Dr. Holman not to sign the TPL Review memos.  But the Director has no power to nullify the legal consequence of the signature itself once Dr. Holman signed the memos.  JLI also does not need to prove the memo "lost its privileged status through adoption or public use."  *Id.* at 3.  FDA has already told the D.C. Circuit a signed TPL Review memo is "properly considered [] part of the agency's decision."  Oral Arg. at 44:59-45:03, *Fontem US, LLC v. FDA*, No. 23-1021 (D.C. Cir. Jan. 25, 2023).

In any event, FDA's claim that the second TPL Review memo is predecisional cannot be right for a second, even more basic reason.  The second TPL Review memo is dated June 23, 2022—one day *after* news leaked that FDA would deny JLI's applications.  *See* Ex. 2 at 7; Ex. 5.  "A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates."  *Senate of the Commonwealth of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987).  The second TPL Review memo, a document dated one day too late, falls outside this straightforward definition.

It makes no difference that proof FDA reached its decision before Dr. Holman finalized and signed the second TPL Review memo comes from *The Wall Street Journal*.  *See* FDA Reply 2-3.  FDA offers no proof that the *Journal*'s reporting is wrong, despite having "the burden of

proving" the memo is predecisional. *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).  The agency at one point suggests that the Court should defer to the date on the marketing denial order, but quickly concedes it "would not be surprising" if FDA reached a final decision "before the MDO was officially signed."  FDA Reply 3.  It likewise does not matter that FDA contends the second TPL Review memo "was obviously drafted before it was finalized and signed."  *Id*.  FDA again has the burden of proof and must do more than speculate about when the memo was drafted and whether it was finished before FDA definitively decided to deny JLI's applications.  The only evidence in the record, the *Vaughn* index FDA itself prepared, gives the document a June 23 date.  *See* Ex. 2 at 7.

JLI addressed these issues in its opening brief, but FDA's reply introduces two new problems.  *First*, FDA suggests the second TPL Review memo was drafted after FDA had already decided to deny JLI's applications "on the basis of the dispositive toxicological deficiencies" discussed in the other TPL Review memo.  FDA Reply 10.  There is no evidence this is true, but if it were, it would further confirm the second TPL Review memo is not a predecisional document.  A "predecisional document is one prepared to assist an agency decisionmaker in arriving at a decision, rather than to support a decision already made."  *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 23 (D.C. Cir. 2022) (internal quotation marks omitted).

*Second*, in truth, FDA cannot make up its mind about whether the agency considered the second TPL Review memo as part of its decision-making process.  FDA at one point states that its scientists drafted the memo "for the very purpose of informing the decision."  FDA Reply 3.  A few pages later, however, FDA says it never "contemplated" that the second TPL Review memo "would form any part of the basis for the outcome on [JLI's] applications."  *Id.* at 10.  What is the point of sending the second TPL Review memo to the Center Director if not to influence the

13

ultimate decision?  Regardless, FDA cannot meet its burden when it cannot even pick a position.

The flaws in FDA's arguments require disclosing both the second TPL Review memo and the

scientific discipline reviews the agency withheld.  FDA does not contest that if the second TPL

Review memo is not a predecisional document, neither are the scientific discipline reviews it

discusses.  *See* JLI Br. 24.

      **B.**    **The Withheld Documents are Not "Deliberative," Or, At the Very Least, They Likely Include Reasonably Segregable Factual Information That FDA Must Disclose.**

     FDA's apparent position that it never planned to consult the non-toxicology discipline

reviews or the second TPL Review memo to inform its decision also proves those documents are

not deliberative.  The deliberative process privilege protects "the processes by which policies are

formulated."  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002); *Ctr. for*

*Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 150 (D.D.C. 2017).  The privilege does not

extend to make-work projects assessing scientific issues the agency has no interest in evaluating

as part of its final decision.

     The scientific discussion in the discipline reviews would not qualify as deliberative even if

the agency did consider those reviews as part of its decision-making process.  In making this

argument, JLI has not "largely disregard[ed] FDA's description" of what those review memos

discuss.  FDA Reply 6.  JLI quoted the descriptions in the *Vaughn* index and Ms. Mital's

description of what the "reviewers in each applicable scientific discipline" are supposed to do.

Mital Decl. ¶ 10; *see also* JLI Br. 25-26.  Those descriptions confirm that the discipline reviews

reflect fact-based conclusions of FDA's scientific reviewers that are not privileged.  *See, e.g.*,

*Sterling Drug Inc. v. Harris*, 488 F. Supp. 1019, 1022 (S.D.N.Y. 1980); *Parke, Davis & Co. v.*

*Califano*, 623 F.2d 1, 6 (6th Cir. 1980).

The cases FDA relies on do not suggest otherwise.  Each one involved far more "specificity and [] detail" describing how the relevant scientific analysis reflected policy-making judgments. *Ctr for Investigative Reporting v. U.S. Customs & Border Prot.,* 436 F. Supp. 3d 90, 103 (D.D.C. 2019) (quotation marks omitted).  All FDA's declarants offer is a one-sentence statement that the reviews "contain CTP scientists' recommendations to other OS scientists, and to their superiors, regarding each individual scientist's views of the data and information that scientist reviewed." German Decl. ¶ 25.  An agency's obligation to link the scientific discussion "to an exercise of discretionary policy-making judgment," *Ctr. for Biological Diversity*, 279 F. Supp. 3d at 151, would mean little if that one-sentence statement sufficed.

FDA, at minimum, must try to segregate and disclose the purely factual information in the documents it withheld.  It cannot hide behind conclusory statements that its FOIA office conducted a "line-by-line review" of the documents and determined "it is not possible to segregate and release only factual portions."  German Decl. ¶¶ 12, 32.  "[A]n agency official's conclusory affidavit declaring that each page has been reviewed line-by-line to ensure compliance with the segregability requirement does not suffice." *Pinson v. U.S. Dep't of Just.*, 202 F. Supp. 3d 86, 107 (D.D.C. 2016); *see also Sierra Club v. U.S. Fish & Wildlife Serv.*, 523 F. Supp. 3d 24, 39 (D.D.C. 2021).

FDA does little to dispel the "red flags" JLI raised in its opening brief.  *Sierra Club*, 523 F. Supp. 3d at 39.  JLI identified several examples from the toxicology TPL Review where that document offered an extended discussion of purely factual material.  *See* JLI Br. 28-29.  FDA's response that "[o]ne purely factual paragraph from a different document … does not undermine [its] assertions" defies common sense. FDA Reply 12.  If one TPL Review memo contains lengthy, easy-to-segregate factual discussions, another TPL Review memo authored by the same person

15

likely contains similar factual details.  That is enough to "undermin[e] the presumption that [FDA]

has disclosed all reasonably segregable information" and order FDA to try again with disclosure

as the goal.  *Sierra Club*, 523 F. Supp. 3d at 39.

### III.   IF THE COURT DOES NOT ORDER IMMEDIATE DISCLOSURE, IT SHOULD ORDER DISCOVERY AND INSPECT THE WITHHELD DOCUMENTS *IN CAMERA*.

Finally, if the Court does not simply order FDA to turn over the withheld documents, it

should permit reasonable discovery and review the documents *in camera*.  JLI raised several

grounds for discovery in its opening brief.  FDA asserts its new affidavits address the concerns

"underlying [those] request[s] for discovery."  FDA Reply 14.  However, those affidavits do not

answer any of the questions JLI actually posed.  *See* JLI Br. 30.

FDA's arguments in reply raise new unanswered questions.  *See Scudder v. CIA*, 25 F.

Supp. 3d 19, 50 (D.D.C. 2014).  Those questions include what the relevant scientists knew about

FDA's plans for JLI's applications when drafting their discipline reviews and whether FDA

"contemplated" that the second TPL Review memo or the withheld disciplinary review "would

form any part of the basis for the outcome on [JLI's] applications."  FDA Reply 10.  If FDA did

decide at some point that it would not consider those documents, JLI needs to know which of the

withheld documents were not yet finished when that decision was made; a reviewer who finished

his or her review before learning FDA had decided the review would not influence its decision had

no reasonable expectation while writing the review that the document would remain confidential.

Those answers are necessary to rule in FDA's favor, but not to grant JLI's motion.  Each of these

questions, after all, reinforces FDA's failure to support many of its arguments with evidence.  *See*

*Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).

If the Court does not grant JLI's motion for summary judgment, it should also review the

withheld documents *in camera*—with particular attention to the date each document was produced

and the nature of the analysis—and order non-privileged information produced.  FDA contends its "declarations amply support" its privilege claims, FDA Reply 14-15, but those declarations are incomplete and make claims about the contents of the very documents FDA will not produce.  The Court should not accept those assertions, which are central to FDA's summary judgment arguments, without first reviewing the documents for itself.  *See Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) ("[W]hen the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents, *in camera* review may be more appropriate.").

Courts have "broad discretion" to order *in camera* review.  *100Reporters LLC v. U.S. Dept. of Just.*, 248 F. Supp. 3d 115, 166-67 (D.D.C. 2017); *see Allen v. CIA*, 636 F.2d 1287, 1298-99 (D.C. Cir. 1980) (identifying relevant factors, including "the public interest in disclosure" and the "conclusory nature" of the affidavits).  Doing so here would safeguard the strong public interest in shining a light on FDA's troubling treatment of JLI's applications without causing FDA any meaningful harm.

## CONCLUSION

The Court should grant JLI's cross motion for summary judgment, deny FDA's motion, and order disclosure of the requested materials.

Dated:  May 26, 2023                                Respectfully submitted,


                                            By:   *s/ Jason M. Wilcox*
                                                  _____

                                                  Peter A. Farrell (DC Bar No. 53608)
                                                  Jason M. Wilcox (DC Bar No. 1011415)
                                                  KIRKLAND & ELLIS LLP
                                                  1301 Pennsylvania Ave, NW
                                                  Washington, D.C. 20004
                                                  (202) 389-5000

                                                  Steven J. Lindsay (DC Bar No. 1708507)
                                                  KIRKLAND & ELLIS LLP
                                                  300 N LaSalle
                                                  Chicago, IL 60654
                                                  (312) 862-2000

                                                  Donald B. Verrilli, Jr. (DC Bar No. 420434)
                                                  MUNGER, TOLLES & OLSON LLP
                                                  601 Massachusetts Ave, NW
                                                  Washington, D.C. 20001
                                                  (213) 683-9507

                                                  *Attorneys for Plaintiff Juul Labs, Inc.*