**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JUUL LABS, INC., | ) |
| Plaintiff, | ) ) ) ) Civil Action No. 1:22-CV-02853-RDM |
| v. | ) ) |
| U.S. FOOD & DRUG ADMINISTRATION, | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF JUUL LABS, INC.'S RESPONSE TO FDA'S SUPPLEMENTAL
SUBMISSION REGARDING SUMMARY JUDGMENT**

**RESPONSE TO SUPPLEMENTAL SUBMISSION**

FDA has now submitted six declarations in this case, and yet it still cannot show that turning over the withheld documents would harm the agency's internal deliberative process. Even where the agency identifies theoretical harms from disclosure, it nowhere meets the FOIA Improvement Act's demanding test for invoking the limited deliberative process exemption: a "focused and concrete demonstration" of "how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigations*, 3 F.4th 350, 361 (D.C. Cir. 2021). Instead, FDA offers speculative concerns without any evidence agency deliberations were actually chilled when FDA publicly disclosed the same materials in more than a dozen other proceedings and without any acknowledgment that its concerns are directly at odds with the public supervisory review process that 21 U.S.C. § 10.75 contemplates. The Court should grant summary judgment in favor of JLI.

> **A.    "Public Confusion" Is No Basis For Departing From FOIA's Presumption of Disclosure In This Case.**

To start, the agency fails to concretely show why "public confusion" would harm agency deliberations. Public confusion is infertile ground for invoking the deliberative process exemption. To withhold materials under FOIA's distinct foreseeable harm requirement, FDA must establish that "disclosure would harm an interest protected by" the deliberative process privilege. 5 U.S.C. § 552(a)(8)(A)(i). Under this statutory standard, as the Court has already noted, "foreseeable harm has to go to the purpose of the privilege." 12/1/2023 Hr.'g Tr. at 7:22–8:22, 17:3–6, 23:3–10. Public confusion standing alone is not one of those purposes. Rather, the deliberative process privilege exists to "prevent injury to the quality of agency decisions," *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975), by "assur[ing] agency staff that they can provide candid opinions and recommendations . . . without fear of ridicule or reprisal," *Reps. Comm.*, 3 F.4th at 361; *see*

*also United States. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (the privilege "protect[s] agencies from being forced to operate in a fishbowl").  To rely on public confusion, FDA thus must offer some "tie" or "nexus" showing that public confusion would actually inhibit the agency's deliberating.  12/1/2023 Hr.'g Tr. at 7:22–8:22, 17:3–6, 23:3–10; *see also Vanda Pharm., Inc., v. Food and Drug Admin.,* 2023 WL 2645714, at *4 (D.D.C. Mar. 27, 2023) (rejecting public confusion, where agency did not "concretely explain" how deliberations would be impacted).

Even after submitting a third set of declarations, FDA still cannot show that public confusion would impact its deliberations here.  At best, FDA speculates that "[p]ublic misunderstanding over FDA's perspective on tobacco products, including the Agency's regulatory conclusions regarding a specific tobacco product, may make nonusers of tobacco products, including youth, more likely to use a tobacco product."  ECF No. 31-2 (Third Mital Decl.) ¶ 6.  This statement, phrased in conjectural **"may"** terms, is inadequate to show that harm **"would"** result from disclosure.  *Reps. Comm.,* 3 F.4th at 369.  Yet even setting aside that threshold problem, FDA nowhere asserts that this purported public health harm would impact its deliberations or deter agency employees from "spell[ing] out in writing" the "strengths" as well as "the pitfalls" of premarket tobacco product applications like JLI's.  *Reps. Comm.*, 3 F.4th at 361-62.  That required "nexus" is absent from its latest declarations, which is a telling omission given that the Court invited FDA to submit supplemental declarations making that connection.  12/1/2023 Hr'g Tr. at 19:18-20:11, 71:20-72:8.

The absence of any nexus here is unsurprising.  FDA has never identified a single example of public confusion impacting its deliberations in any case regarding tobacco or other products, even though documents like those requested here are commonly released with marketing denials,

marketing grants, administrative records, and even in other preliminary proceedings, such as pharmaceutical "advisory meetings" where FDA's views are intentionally put before and debated by the public, *see* ECF No. 19-1 at 17.  FDA's continuing failure to show that public confusion would impact its deliberations dooms the "public confusion" argument and eliminates that purported harm as a basis for withholding here.

### B. "Chilling" of Agency Deliberations Also Is No Basis For Departing From Disclosure.

The agency's concern that disclosure would "chill . . . presently ongoing internal deliberations" is also misplaced and is undermined, rather than supported, by the Third Mital Declaration.  ECF No. 31-2 at ¶ 8.  *Vanda Pharmaceuticals* remains highly persuasive, and this Court should reach the same conclusion here that Judge Cooper did there.

To start, FDA concedes that typical "chilling" arguments, or what FDA has referred to as a "bottom-up" theory of chilling agency deliberations, have little application in this case.  FDA admitted in the summary judgment hearing that the scientific reviewers had no expectation of confidentiality when they drafted the disciplinary review memos that JLI requested.  The answer to the question of "did the authors of these review memos at the time they were authoring th[em] . . . have an expectation that their work would remain confidential" is no.  12/1/2023 Hr.'g Tr. at 12:2–7.  That is because as in *Vanda*, their authors did not know whether their reviews would be disclosed "whenever [the PMTA] is approved," or to "defend [the] decision" for a PMTA FDA "declined to approve."  *Vanda Pharms.*, 2023 WL 2645714, at *3; *see also Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014 (D.C. Cir. 2021) (rejecting categorical withholding given commonality of disclosure).  FDA does not argue otherwise.  And while FDA asserted at the hearing that so-called "bottom up" chilling could apply to "one document here, which is the additional disciplines TPL because," in FDA's view, "the proposal was -- we think

3

you can deny this application … based on … toxicological deficiencies, and we're going to go ahead and say what we think and propose about everything else over here," 12/1/2023 Hr.'g Tr. at 12:2–13, that argument holds no water.  The second TPL authors still had no guarantee that their recommendations would be accepted—and so did not know "whether or not [the] application w[ould] be approved" anyway.  *Vanda Pharms.*, 2023 WL 2645714, at *4; *see also* ECF No. 27 at 6-8.

FDA's real argument at the hearing was instead only a "top-down" chilling theory.  FDA asserted that "it's not … a chilling of the scientists who are authoring the discipline review memos, but instead to the personnel who are conducting the presently ongoing further supervisory review." 12/1/2023 Hr.'g. Tr. 8:14–18.  But FDA's latest declarations nowhere support any top-down concern.  They do not assert that disclosure would inhibit FDA **supervisors** from doing their jobs. Instead, FDA's declaration references only the same "bottom-up" chilling theory that it has already disclaimed at the hearing.  Worse, it does so only in hypothetical terms: FDA asserts that "scrutiny *could*, for example, place undue pressure on relevant *Agency staff* to hew to . . . preliminary assessments—or, conversely, to change them."  ECF No. 31-2 at ¶8 (emphasis added).  Agency staff are not supervisors.  And regardless, such speculative "scenario[s]," *id.*, are not enough under binding Circuit precedent.  The test is **would**, *Reps. Comm.,* 3 F.4th at 369–70 not, as FDA puts it, "**reasonably likely**," or "*could*."  ECF No. 31-2 at ¶7-8 (emphasis added).  Even after this Third Mital Declaration, FDA's purported chilling harms are still only the same sort of "abstract fears" that the D.C. Circuit has flatly rejected.  *Reps. Comm.,* 3 F.4th at 369.

FDA's supervisory review argument also runs directly contrary to the regulations establishing the supervisory review process.  The supervisory review of JLI's application is being conducted pursuant to 21 C.F.R. § 10.75, a regulation FDA issued after notice-and-comment

4

rulemaking. *See, e.g.*, 44 Fed. Reg. 22323 (1979); 84 Fed. Reg. 31477 (2019). That regulation contemplates that parties may request supervisory review of an agency decision, "based on the information in the administrative file" at "the request of an interested person outside the agency." 21 C.F.R. § 10.75(a)(3), 10.75(d). These regulations contemplate reassessing files that will already have been released; that is most often how an interested outside party will know about the decision. FDA's own supervisory review process thus provides for reassessment of agency decisions by FDA supervisors even after the decision becomes public based on an administrative file that makes public the conclusions and recommendations of lower-level employees. By creating this process, FDA made a policy judgment that it could publicly re-review its work without "distorting the decision-making process" by "plac[ing] undue pressure on relevant Agency staff to hew to" or "change" the original decision. ECF No. 31-2 at ¶ 8 (Third Mital Decl.). The Court should credit FDA's position adopted through notice-and-comment rulemaking over its made-for-litigation assertions. *Cf. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

The supervisory review process is also no argument for distinguishing *Vanda*. In *Vanda*, too, the supplementary new drug "application [wa]s still pending," and FDA asserted that "the risk of chilling [was] 'particularly concerning' … because the agency may need to further deliberate on Vanda's sNDA." 2023 WL 2645714, at *1–*3. Yet Judge Cooper still correctly rejected FDA's assertions as speculative in light of the agency's existing practices: "[t]he Court [wa]s not convinced that disclosure of reviews related to" even "***pending*** sNDAs would lead to the chilling effect the agency fear[ed]," precisely because "FDA currently discloses clinical and scientific reviews to the public in a variety of circumstances." *Id.* at *3 (emphasis added). Even where FDA tried to distinguish "pending sNDAs" as somehow different, Judge Cooper recognized that

5

reviewers for those pending sNDAs still would have no expectation of confidentiality. They would expect their work to be released by the agency if the application is approved, or with a denial if their work formed part of the basis for the denial, or in an administrative record if the agency's denial decision is appealed. *Id.* at *4 (noting all these "circumstances noted above," and correctly declining to distinguish "pending applications").

The same is true here. FDA has already released the toxicology documents at the center of its ongoing supervisory review, and yet nowhere asserts that that supervisory review's deliberations have been harmed. FDA also regularly releases scientific disciplinary reviews and TPLs as part of the administrative record of appeals from marketing denial orders, with the result that when FDA voluntarily or by court order is forced to reassess its decisions on remand, the public already has access to those records. *See* JLI Cross MSJ Exs. 23, 27–31. Yet again, FDA cannot offer a single example where the public release of those records "***actually impede[d]***" its deliberations on remand. *Reps. Comm.,* 3 F.4th at 370. So many "dogs that didn't bark" provides compelling evidence that releasing the withheld documents would not have a chilling effect on the agency's ongoing deliberations.[1]

Even if the Court credits FDA's chilling-effect concerns, however, that merely affects the timing of when FDA must turn over the requested materials. FDA's concerns are temporary and will evaporate once its ongoing supervisory review concludes. Accepting FDA's position thus at most suggests the Court should enter an order compelling the agency to turn over the requested materials once the supervisory review is complete rather than commanding the agency to produce

---

[1] FDA's latest declarations also undermine the credibility of its declarants. FDA's declarants previously represented that FDA "conducted a careful page-by-page, line-by-line review" of the withheld materials and that "it is not possible to segregate and release only factual portions of the records." ECF No. 16-3 ¶¶ 12, 15, 32-35. After the Court decided to review those records *in camera*, FDA now admits it withheld responsive information that was reasonably segregable, including complete paragraphs and entire pages that required no redaction. *See* ECF 31-1 at ¶ 5.

the documents immediately. But make no mistake: FDA should turn over the requested materials without delay. None of FDA's arguments or evidence make the difficult showing required to depart from FOIA's "presumption in favor of disclosure" of agency records, *Burka v. U.S. Dep't of Health and Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).

## CONCLUSION

The Court should grant JLI's cross motion for summary judgment, deny FDA's motion, and order disclosure of the requested materials.

Dated: January 15, 2024                                                  Respectfully submitted,

By:  *s/ Jason M. Wilcox*
Peter A. Farrell (DC Bar No. 53608)
Jason M. Wilcox (DC Bar No. 1011415)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
(202) 389-5000

Steven J. Lindsay (DC Bar No. 1708507)
KIRKLAND & ELLIS LLP
300 N LaSalle
Chicago, IL 60654
(312) 862-2000

Donald B. Verrilli, Jr. (DC Bar No. 420434)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001
(213) 683-9507

*Attorneys for Plaintiff Juul Labs, Inc.*